Mineral Area Medical Center
Memorial Hospital of Bedford County
Park Medical Center
Riverside Osteopathic Hospital
Youngstown Osteopathic Hospital

**PENNSYLVANIA COLLEGE OF PODIATRIC MEDICINE**
DVAMC - Brooklyn/St. Albans
DVAMC - Coatesville
DVAMC - Northport
DVAMC - White River Junction
Elkins Park Hospital
Harris City Podiatric Surg. Res./Bellaire Hosp
Neumann Medical Center
New York Methodist Hospital
PCPM - Cooper Hospital Medical Center
PCPM - Orthopedic Residency
Sheehan Memorial Hospital
St. Francis Hospital-Mount Sinai Hospital - CT

**SCHOLL COLLEGE OF PODIATRIC MEDICINE**
Columbia Kingwood Medical Center (Houston Podiatric Foundation)
DVAMC - Black Hills Health Care System
DVAMC - Central Alabama Health Care System (Tuskegee)
DVAMC - Chicago Health Care System (Westside)
DVAMC - Minneapolis
DVAMC - North Chicago
DVAMC - Palo Alto Health Care System
DVAMC - Tampa
Lakeview Hospital
Northern Virginia Podiatric Residency Program
Riverside Osteopathic Hospital
Scholl College of Podiatric Medicine
Sinai Hospital of Baltimore
St. Mary of Nazareth Hospital Center
Vancouver Hospital
Western Pennsylvania Hospital

1

## SUMMARY INFORMATION

| | |
|---|---|
| BUSPM | Residents in school based programs receive salary and employee benefits as employees of Barry University. Residents located at other BUSPM funded residencies receive funding which is either sent directly to the program or to the resident. Fellowship grant provided to the third year resident of Hialeah Hospital only during their six-months participation at Hadassah Hospital in Jerusalem Israel. |
| CCPM | CCPM funds several different programs at different levels. DVAMC - San Francisco receives malpractice coverage for CCPM graduates. CCPM sponsored programs receive funding for stipends. Some programs also receive malpractice insurance. |
| CPMS | The PSR-24 has a stipend, all other programs are under general grant funding. Malpractice insurance is covered by the University. |
| OCPM | Stipend only. |

2

| | |
|---|---|
| PCPM | The college provides salary for all our funded residencies ($15,000). Health and malpractice insurance are also provided where necessary. |
| SCPM | These programs are as of March 15, 1997. This list is accurate as to the number of positions funded, however, the number of entry level positions may change at a particular program. Also, more programs may be added after this printing. Funding is sent to the institution, not the resident. |

3

1      77.    As noted by several screenshots of Defendant RFUMS's records,

2    Defendant admits that it has achieved performance of placement into residency by

3    Defendant RFUM's Scholl college residency programs, through the ordinary course of

4    business, by acquiring College of Podiatric Medicine accreditation specifically for

5    "Podiatric Medicine and Surgical Residency" in addition to and separate from the Doctor

6    of Podiatric Medicine accreditation:

ROSALIND FRANKLIN UNIVERSITY OF MEDICINE AND SCIENCE
ACCREDITATION SUMMARY

| Unit | Program | Accrediting Agency | Status |
|---|---|---|---|
| **Rosalind Franklin University of Medicine & Science** | | | |
| | Overall accreditation as degree granting institution – Bachelor to Doctorate | The Higher Learning Commission/North Central Association of Colleges and Schools (HLC/NCA) | Full |
| **Chicago Medical School** | | | |
| | Doctor of Medicine | Liaison Committee on Medical Education (LCME) | Accredited, on probation |
| | Continuing Medical Education | Accreditation Council for Continuing Medical Education (ACCME) | Full |
| **Dr. William M. Scholl College of Podiatric Medicine** | | | |
| | Doctor of Podiatric Medicine | Council on Podiatric Medical Education (CPME) | Full |
| | Continuing Podiatric Medical Education | Council on Podiatric Medical Education | Full |
| | | IFDPR-Licenses School to offer | Full |
| | Podiatric Medicine and Surgical Residency | CPME | Full |
| **School of Graduate and Postdoctoral Studies** | | | |
| | Medical Laboratory Immunology | Committee on Postdoctoral Education Programs | |
| | *Post-graduate Program | (CPEP) of the American College of Microbiology | Full |

9      78.    Dr. Abazari's right or privilege to a benefit, within a program or activity

10    receiving federal financial assistance, by the "placement services for program

11    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

12    20 USC §1094(a)(17).

13      79.    Dr. Abazari's right or privilege to a benefit, within a program or activity

14    receiving federal financial assistance, by the "placement services for program

15    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

16    20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

1    80.    Dr. Abazari's right or privilege to a benefit, within a program or activity

2    receiving federal financial assistance, by the "placement services for program

3    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

4    20 USC §1094(a)(21).

5    81.    Dr. Abazari's right or privilege to a benefit, within a program or activity

6    receiving federal financial assistance, by the "placement services for program

7    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

8    20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7).

9    82.    Dr. Abazari's right or privilege to a benefit, within a program or activity

10   receiving federal financial assistance, by the "placement services for program

11   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

12   20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7).

13   83.    Dr. Abazari's right or privilege to a benefit, within a program or activity

14   receiving federal financial assistance, by the "placement services for program

15   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

16   20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7).

17   84.    Dr. Abazari's right or privilege to a benefit, within a program or activity

18   receiving federal financial assistance, by the "placement services for program

19   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

20   20 USC §1094(a)(1).

21   85.    Dr. Abazari's right or privilege to a benefit, within a program or activity

22   receiving federal financial assistance, by the "placement services for program

1    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

2    20 USC §1094(a)(17).

3         86.     The Defendant State of Illinois knowingly and willingly participated in,

4    devised, and intended to devise, a scheme and plan to obtain financial aid money in the

5    amount of 272,000 dollars, with still accruing interest into the present day, from Dr.

6    Abazari, for numerous false statements stating a guarantee of placement into residency

7    for Dr. Abazari, for which it never provided or intended to provide for Dr. Abazari,

8    despite federal mandates under 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C.

9    §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC

10   §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC

11   §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC

12   §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

13        87.     Through the use of interstate wires, the State of Illinois specifically choses

14   to make these false representations and misrepresentations by use of DOE's marker, to

15   directly convey false information regarding placement services, that an instate institution

16   RFUMS is required to provide, but does not provide, and then choses to use terms

17   "Scholl College places its graduates," within the information it provides to Dr. Abazari

18   and podiatry students, because it sought to influence a student's decision to choose

19   RFUMS, residing in the State of Illinois, over other podiatry programs residing in other

20   states, and enable this institution to profit off federal aid under said false pretenses, based

21   on guarantee of benefits and services institution does not actually provide, despite

22   mandates under 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20

23   U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC

1    §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant

2    to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20

3    USC §1094(a)(7).

4         88.    The State of Illinois specifically choses these false statements for the

5    purpose of inducing Dr. Abazari to choose Defendant RFUMS's program residing in its

6    state, over other podiatry programs residing in other states, by guaranteeing benefits such

7    as residency placement, which it never intended to render to Dr. Abazari, despite

8    mandates pursuant to 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C.

9    §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC

10   §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC

11   §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC

12   §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

13        89.    As noted by a screen shot of the use of wire communications on May 24,

14   2016, the State of Illinois, by and through the Illinois Board of Higher Education, admits

15   that it was placed on notice of these placement benefit guarantees:



16

17        90.    The State of Illinois knowingly and willingly, waited until after Dr.

18   Abazari had completed 4 years in the State of Illinois, passed both board, and graduated,

19   supported its local economy through rent, living expenses, and expending 200,000 in

1    Federal subsidized and unsubsidized loan amounts, at an in-state academic facility, after

2    then abruptly deciding, on a whim, that it would not enforce placement into residency for

3    Dr. Abazari upon graduation, despite admitting to doing so, See. Abazari v. Rosalind

4    Franklin University of Medicine & Science 2015 IL App (2d) 140952, ¶4:

> ¶4    In 2003, RFUMS applied to the Illinois Board of Higher Education (IBHE) for permission
> to operate a program (Scholl College) offering the degree of "Doctor of Podiatric Medicine"
> (DPM). In its description of the proposed program, RFUMS included the statement that
> "[a]fter graduation Scholl College places its graduates in 24[-] and 36[-]month residency
> training programs." The application also stated that Scholl College expected to enroll about 90
> students each year, for a total of 360 in the 4-year program. The IBHE approved the application
> for the DPM program.

5

6    100.    The State of Illinois directly caused Dr. Abazari to incur an additional

7    $107, 340 dollars beyond the average loan debt for podiatry students at RFUMS,

8    represented by RFUMS at $162,660 upon Dr. Abazari's entrance.

9    101.    State of Illinois directly used interstate wire for its scheme to defraud, in

10    the form of a specially created and copyrighted "Illinois Higher Education Enrollment

11    and Degrees System," to convey narrowly tailored information of benefit and service

12    guarantees provided by the State of Illinois, to accomplish the State's scheme to defraud

13    Dr. Abazari of money for placement services it never intended to provide, nor enforce,

14    despite federal mandates under 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C.

15    §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC

16    §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC

17    §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC

18    §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

19    102.    State of Illinois used the interstate wire for its scheme to defraud, with the

20    special designation or appellation "Illinois Higher Education Enrollment and Degrees

21    System," in the ordinary course of business by representing "Scholl College places its

1   graduates," as of the classified type identified by DOE's certification mark for goods and

2   services "CIP Code 51.2101," and "Podiatric Medicine/Podiatry," pursuant to the

3   Lantham Act (15 U.S.C. § 1127: "certification mark"), in the same place, over the span of

4   at least 5 years, directly entailing plaintiff's course of education in Illinois.

5          103.    Dr. Abazari could only access said information through the presentation of

6   wire communications by the State of Illinois's, specially created and designated Illinois

7   Board of Higher Education transmissions leading to the data selection system and Notice

8   of Intent.

9          104.    In every possible manner herein alleged, the State of Illinois sought to

10  capitalize on Dr. Abazari's weakened physical condition, in calculated and coordinated

11  attacks, to increase physiological harm, and to overpower Dr. Abazari objections, using

12  force and inducing emotional submission—through a psychological state of learned

13  helplessness:



14

15  (Left—On or around February 7, 2016)   (Right—On or around November 14-2010)

16                        **CAUSE OF ACTION 3:**

17              **(PEONAGE 18 U.S.C. § 1581(A)—NAVIENT)**

18         105.    Dr. Abazari repeats and realleges each and every allegation contained in

19  paragraphs 1 through 104 as if fully set forth herein.

106.    Navient forced Dr. Abazari into a state of subjection to force, power, and influence, by usurping control of his student debt, and forcing to him to incur and additional $104,384.30, at a rate of $26,096.075 Per Annum, in interest charges over approximately 4 years:

Principal Balance 152,289.08 July 5, 2015; Outstanding Interest $16,160.71
Principal Balance 225,139.23 June 2, 2016; Unpaid Interest $2,540.93
Principal Balance 225,139.23 June 2, 2017; Unpaid Interest $17,524.86
Principal Balance 225,139.23 June 2, 2018; Unpaid Interest $32,554.30
Principal Balance 225,139.23 June 2, 2019; Unpaid Interest $47,694.86.

107.    Navient forced Dr. Abazari, in a state of subjection to force, power, and influence, by usurping control of his student debt, disallowing Dr. Abazari from minimizing his risk of loss, through a statutory loan discharge 20 U.S.C. §1087e(h), relentlessly billing debt until $272, 834.09, approximately $110,174.09 above and beyond the average debt of 162,660, represented to "Incoming Podiatry Students" by Defendant RFUMS "Financial Aid Office" for their Podiatry program for Dr. Abazari upon entering, despite statutory mandates pursuant to 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7):



1    108.    Navient was, and is, forcing Dr. Abazari into a duty to perform "service[e

2    his] student loan debt" through the means of none "place[ment] in a CPME approved

3    residency program," for loans under the direction, benefit, and control of Navient, to

4    satisfy his $272, 834.09 student loan debt, despite mandates pursuant to 20 USC

5    §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20

6    USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant

7    to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7);

8    20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

9    109.    As noted by Dr. Abazari's objection on November 12, 2015 via the

10   Borrower Defense, Navient knowingly and willingly forced its will upon Dr. Abazari's

11   objection:

12



**ARMIN ABAZARI--APPLICATION BORROWER"S DEFENSE TO REPAYMENT LOAN DI SCHARGE** arminabazari@ya.../Sent

Armin Abazari <arminabazari@yahoo.com> Nov 12, 2015 at 3:12 PM
To: FSAOperations@ed.gov <FSAOperations@ed.gov>

To Whom It May Concern,

If I could please, I would to submit my Application For Borrower's Defense To Repayment Loan Discharge to the United States Department of Education.

Order of Attached Files:
1) Application For Borrower's Defense To Repayment Loan Discharge
2) State Document: NOTICE OF INTENT under Oath
3) State Document: IBHE Board Action December 9, 2003 on Podiatry Degree Authorization
4) Federal Document: IPEDS checked box "Placement Services for Program Completers" 2008-2014
5) Scholl College 2008-2009 Viewbook: False and Deceptive
6) Letter to Alan Tinkleman from COTH/APMA/CPME
7) Dean of Rosalind Franklin's Podiatry College, Nancy Parsley Lobbying on Behalf of American Podiatric Medical Association
8) APMA IRS 990 FORM: This Political Organization Gave Money To Defendants, a 501(c) organization, as a "College Advisor Program Grant"
9) A picture is worth a thousand words
10) First Amended Complaint
11) Motion For Reconsideration (Petition for Rehearing)
12) Date of Enrollment
13) Degree

Sincerely,
Armin Abazari

**14 Files** 17.9MB

APPLICATION FOR BORROWER'S DEFENSE TO REPAYMENT LOAN DISCHARGE.docx
[illegible]

NOI-Podiatry.pdf
64kB

Scholl New Operating And/or Degree-Granting Authority For Independent Institutions IBHE.pdf
375kB

2008-09.pdf
217kB

2009-10.pdf
207kB

2010-11.pdf
224kB

2011-12.pdf
227kB

2012-13.pdf

228kB

**2013-14.pdf**
229kB

**2008-09 SCPM Viewbook copy.pdf**
2MB

**APMACPMECOTH memo.pdf**
52kB

**Nancy Lobbying.pdf**
411kB

**AbazariBrief (dragged).pdf**
13MB

**Degree.pdf**
189kB

110. As noted by Defendant DOE's communication records, the DOE direct assisted Navient by lulling Dr. Abazari into a false sense of security, while Navient racheted Dr. Abazari's debt, in communicating that Plaintiff's borrower defense claims were still in review, despite a 1 year and 7 months, after the November 12, 2015 submission of Borrower Defense:

From: "U.S. Department of Education" <noreply@studentloans.gov>
Date: June 19, 2017 at 11:05:35 AM PDT
To: arminabzzan@yahoo.com
Subject: Borrower Defense Claim Status Update



Dear Armin,

This email is being sent to update you on the current status of your claim for borrower defense to repayment. We are continuing to evaluate your claim but have not yet made a decision if the claim will be approved. Once a decision has been made on your claim, you will be notified of the decision. If it is determined that additional information is needed, we will reach out to request that information from you then.

If you have chosen to have your loans placed on forbearance or stop collection activity while your claim is reviewed, we will continue to notify your servicer to extend that status until your claim has been decided.

Sincerely,

U.S. Department of Education

Connect with us:

  

1

2     111.    According to Navient's mailed letter, Navient admits, that 2 years and 4

3  months after the initial complaint was filed, "[o]n March 19, 2018, we received a request

4  to place your loans  in the Borrower Defense to Repayment Forbearance while your claim

5  was reviewed":



1

2        112.    On April 7, 2016 Dr. Abazari served an open Letter of objection to Hon.

3    John B. King, Jr., Acting Secretary of Education.

4        113.    Dr. Abazari called the Office of the Secretary of Education 4 times with

5    no response on 4/25/16; 4/26/16; 5/5/16; and 5/6/16.

6        114.    On May 13, 2016 Dr. Abazari served another objection to Hon. John B.

7    King., Acting Secretary of Education.

1       115.    On January 1st 2019, Dr. Abazari served a notice of termination of

2    contract directly to Navient.

3       116.    On the 21st of January 2019, Dr. Abazari served another notification of his

4    objections to Navient.

5       117.    On the 4th of February 2019, Dr. Abazari served another notification of

6    his objections to Navient.

7       118.    On the 19th of February 2019, Dr. Abazari served another notification of

8    his objections to Navient.

9       119.    On 8th of March 2019, Dr. Abazari served another notification of his

10    objections to Navient.

11       120.    Financially destitute, and with no formal training in the law, despite Dr.

12    Abazari's numerous written objections, and calls, Dr. Abazari was helpless to stop

13    Navient from forcing its will, and continuing to force its will, an additional debt of

14    $104,384.30 from July 5, 2015 to June 2, 2019.

15       121.    Navient, with knowledge and malicious intent, placed Dr. Abazari into a

16    state of debt bondage and peonage by knowingly and willing directing federal loan

17    payments to RFUMS, when they did not provide Dr. Abazari placement into residency,

18    despite the admissions by RFUMS that "100% of graduates will be placed in a CPME

19    approved residency program" and "Graduates will be capable of servicing their student

20    loan debt," and numerous mandates pursuant to 20 USC §1094(a)(1); 20 USC

21    §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M),

22    pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC

1    §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC

2    §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7):


**William M. Scholl of Podiatric Medicine**

**Department of Medicine**

**ESSENTIAL SKILLS CLINICAL EXPERIENCE**
**Podiatric Medicine and Podiatric Orthopedics Component**
**(PMED 601 A,B,C)**


Academic Year 2008-2009
(Revised 7/2008)


**CHAIRMAN**
Philip Gianfortune, DPM

**CLINICAL EXPERIENCE COORDINATOR**
Ruth Songco-Chi, DPM
James Wrobel, DPM

**CLINICAL EXPERIENCE FACULTY**
Beth Jarrett, DPM
Debra Levinthal, DPM


3    _____


**Programmatic Outcomes**

#1    Graduates will pass the National Board of Podiatric Medical Examiners Part I
      and Part II examinations with an overall pass rate above the national average.

#2    100% of graduates will be placed in a CPME approved residency program.

#3    The College will graduate students that have the necessary knowledge, skills,
      and attitudes for entry into residency training.

#4    The College will graduate at least 90% of matriculated students.

#5    Graduates will be capable of servicing their student loan debt.

#6    The College will graduate students that understand the need for and have
      participated in community service.

4    _____

1    122.    In the clear and present fact that RFUMS withheld Dr. Abazari's Federal

2    benefit in "100%" guarantee of "be[ing] placed in a CPME approved residency

3    program," Navient continued to bill interest for federal benefits and services RFUMS did

4    not render, pursuant to 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C.

5    §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC

6    §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC

7    §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC

8    §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7):

9    Principal Balance 152,289.08 July 5, 2015 Outstanding Interest 16, 160.71
10   Principal Balance 225,139.23 June 2, 2016 Unpaid Interest 2, 540.93
11   Principal Balance 225,139.23 June 2, 2017 Unpaid Interest 17, 524.86
12   Principal Balance 225,139.23 June 2, 2018 Unpaid Interest 32,554.30
13   Principal Balance 225,139.23 June 2, 2019 Unpaid Interest 47,694.86
14
15   123.    As noted by the for forgoing screen shot of DOE's public records, Naivent

16   was placed directly on notice that the certification mark goods and services "CIP Code

17   51.2101" was directly in association with National Education Statistics

18       "[d]efinition: a program that prepares individuals for the
19       independent professional practice of podiatric medicine, involving
20       the prevention, diagnosis, and treatment of diseases, disorders, and
21       injuries to the foot and lower extremities. Includes instruction in
22       the basic medical sciences, anatomy of the lower extremity,
23       functional orthopedics, foot biomechanics, podiatric radiology,
24       dermatology, podiatric surgery, podopediatrics, sports medicine,
25       physical diagnosis, emergency medicine and traumatology,
26       practice management, and professional standards and ethics":

**ies** NATIONAL CENTER for
EDUCATION STATISTICS

# ⊪IPEDS

| 🏠 Home | 🔲 CIP Selector | ⓘ Help | ◯ Contact NCES |

**CIP 2010** (change year)          Browse   Search   Crosswalk   Resources   [ Quick CIP ⓘ ] [ ] [ Go ]

## Detail for CIP Code 51.2101                                    🖨 Print

**Title:** Podiatric Medicine/Podiatry.

**Definition:** A program that prepares individuals for the independent professional practice of podiatric medicine, involving the prevention, diagnosis, and treatment of diseases, disorders, and injuries to the foot and lower extremities. Includes instruction in the basic medical sciences, anatomy of the lower extremity, functional orthopedics, foot biomechanics, podiatric radiology, dermatology, podiatric surgery, podopediatrics, sports medicine, physical diagnosis, emergency medicine and traumatology, practice management, and professional standards and ethics.

**Action:** No Substantive Changes

| ▾ Crosswalk ⓘ | | | | | |
| --- | --- | --- | --- | --- | --- |

✓ CIP Title or Definition Changed

| CIP 2000 | | CIP 2010 | | | |
| --- | --- | --- | --- | --- | --- |
| Code | Title | Action | ✓ | Code | Title |
| 51.2101 | Podiatric Medicine/Podiatry (DPM). | − | | 51.2101 | Podiatric Medicine/Podiatry. |

| ▾ Illustrative Examples ⓘ |
| --- |

[Podiatric Medicine/Podiatry (DPM)]

124.    As noted by the forgoing screen shot of the State of Illinois's Illinois Board of Higher Education public records, Navient was again placed on notice by the State of Illinois, by the use of the DOE's certification mark for goods and services "CIP Code 51.2101," and DOE's certification mark for goods and services "Podiatric Medicine/Podiatry," pursuant to the Lantham Act (15 U.S.C. § 1127: "certification mark"), being held in association with Defendant RFUMS's podiatry program for the Dr. Abazari's enrollment period 2009:



1

2          125.    As noted by the forgoing screen shot of the State of Illinois's Illinois

3   Board of Higher Education public records, Navient was again placed on notice by the

4   State of Illinois, by the use of the DOE's certification mark for goods and services "CIP

5   Code 51.2101," and DOE's certification mark for goods and services "Podiatric

6   Medicine/Podiatry," pursuant to the Lantham Act (15 U.S.C. § 1127: "certification

7   mark"), being held in association with Defendant RFUMS's podiatry program for the Dr.

8   Abazari's enrollment period 2014:

9



1

2          126.    As noted by the forgoing screen shot of the State of Illinois's Illinois

3    Board of Higher Education public records, Navient was placed on additional notice by

4    the State of Illinois's direct admission that

5          "[a]fter graduation Scholl College places its graduates in 24 month
6          and 36 month residency training programs located across the
7          United States. Upon completion of training, podiatric physicians
8          prepare for state professional state licensure examinations as well
9          at board certification examinations":



**FINCH UNIVERSITY/THE CHICAGO MEDICAL SCHOOL - DR. WILLIAM M. SCHOLL COLLEGE OF PODIATRIC MEDICINE**

On-Campus

- Doctorate of Podiatric Medicine
- Bachelor of Science in Biological Sciences.

The Herman M. Finch University of Health Sciences/The Chicago Medical School (FUHS/CMS) has entered into an agreement with the Dr. William M. Scholl College of Podiatric Medicine involving the transfer of assets of Scholl College to FUHS/CMS as well as the physical move of Scholl College from facilities at 1001 N. Dearborn St., Chicago, Illinois to FUHS/CMS's campus located in North Chicago. The acquisition of Scholl College's assets and the facilities relocation to North Chicago with FUHS/CMS places Scholl College as the fourth college within the FUHS/CMS system.

Finch University, through the newly acquired Scholl College, will request degree authorization to grant the Doctor of Podiatric Medicine (D.P.M.) and the Bachelor of Science (B.S.) in Biological Science to students interested in entering the profession of podiatric medicine. The programs attract professional students ranging in age from 21 to the 40's from the majority of states and representatives from many ethnic and all racial groups. Curricula for the programs will remain the same as previously offered by Scholl College.

Students who are enrolled present evidence of strong preparation for professional studies. Each year approximately 80% of the students admitted possess a baccalaureate or advanced degree. In each case a candidate must complete 90 semester credit hours (135 quarter hours) of course work at an accredited college or university prior to enrollment. Candidates are required to complete the Medical College Admission Test (MCAT) prior to admission.

Scholl College expects to matriculate 90 students per year for a total enrollment of approximately 360 students. Students complete a curriculum comprised of basic science, clinical science and clerkship training. After graduation Scholl College places its graduates in 24 and 36 month residency training programs located throughout the United States. Upon completion of training, podiatric physicians prepare for state professional licensure examinations as well as board certification examinations. Scholl College has trained approximately one-third of the practicing podiatrists in the United States.

The D.P.M. program is accredited by the Council on Podiatric Medical Education of the American Podiatric Medical Association and approved by the United States Department of Education. FUHS/CMS is accredited by The Higher Learning Commission and is a member of the North Central Association of Colleges and Schools.

Persons interested in obtaining further information about this notice should contact: Margot Surridge, 3333 Green Bay Road, Chicago, Illinois. Tele. (847) 578-8594.

127.   Navient knowingly and willingly disregards said directives on RFUMS,

set by the DOE and State of Illinois, and funnels loan payments for services for a

program that it knew did not "prepare[] individuals for the independent professional

practice of podiatric medicine, involving the prevention, diagnosis, and treatment of

diseases, disorders, and injuries to the foot and lower extremities", and which did not

69

1    render  "place[ment] in a CPME approved residency program," despite numerous

2    mandates pursuant to 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C.

3    §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC

4    §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC

5    §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC

6    §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

7          128.    Navient knowingly and willingly disregards said constructive notices,

8    regarding RFUMS, set by, and admitted to, by DOE and State of Illinois, and continues

9    to force its will, by preventing Dr. Abazari from limiting his loses through discharge, in

10    billing debt it is not entitled to:

11    Principal Balance 152,289.08 July 5, 2015 Outstanding Interest 16, 160.71
12    Principal Balance 225,139.23 June 2, 2016 Unpaid Interest 2, 540.93
13    Principal Balance 225,139.23 June 2, 2017 Unpaid Interest 17, 524.86
14    Principal Balance 225,139.23 June 2, 2018 Unpaid Interest 32,554.30
15    Principal Balance 225,139.23 June 2, 2019 Unpaid Interest 47,694.86.
16
17          129.    As noted by DOE's federal public records, Navient was placed on notice

18    that the institution RFUMS provides "placement services for program completers" for the

19    period 2008-2014 through the centralized IPEDS system.

20          130.    As indicated by the forgoing screenshots, Navient was placed on notice by

21    Defendant DOE that the institution RFUMS provides "placement services for program

22    completers" for plaintiff's time of graduation from the period 2013-2014:

## National Center for Education Statistics

**IPEDS Data Center**

**Rosalind Franklin University of Medicine and Science**
**UnitID** 145558
**OPEID** 00165900
**Address** 3333 Green Bay Road, North Chicago, IL, 60064-3095
**Web Address** www.rosalindfranklin.edu/

---

**IC Header 2013-14**

Institution: Rosalind Franklin University of Medicine and Science (145558)
inovas1

**Part A - Educational Offerings**
1. Which of the following types of instruction/programs are offered by your institution? [Check one or more]

*If your institution does not offer occupational, academic or continuing professional programs, you are not expected to complete this or any other IPEDS survey.*

☐ Occupational, may lead to a certificate, degree, or other formal award

☑ Academic, leading to a certificate, degree, or diploma

☑ Continuing professional (postbaccalaureate only)

☐ Recreational or avocational (leisure) programs

☐ Adult basic or remedial instruction or high school equivalency

☐ Secondary (high school)

Institution: Rosalind Franklin University of Medicine and Science (145558)
inovas1

**1**

---

**Part C - Student Services - Distance Opportunities**
4. Which of the following selected student services are offered by your institution? [Check all that apply]

☐ Remedial services

☑ Academic/career counseling services

☐ Employment services for current students

☑ Placement services for program completers

☐ On-campus day care for children of students

☐ None of the above

**2**

---

Institution: Rosalind Franklin University of Medicine and Science (145558)       inovas1
Summary

### Institutional Characteristics Component Summary
### Academic Year Reporters

IPEDS collects important information regarding your institution. All data reported in IPEDS survey components become available in the IPEDS Data Center and appear as aggregated data in various Department of Education reports. Additionally, some of the reported data appears specifically for your institution through the College Navigator website and is included in your institution's Data Feedback Report (DFR). The purpose of this summary is to provide you an opportunity to view some of the data that, when accepted through the IPEDS quality control process, will appear on the College Navigator website and/or your DFR. College Navigator is updated approximately three months after the data collection period closes and Data Feedback Reports will be available through the Data Center and sent to your institution's CEO in November 2014.

Please review your data for accuracy. If you have questions about the data displayed below after reviewing the data reported on the survey screens, please contact the IPEDS Help Desk at: 1-877-225-2568 or ipedshelp@rti.org.

| GENERAL INFORMATION | |
|---|---|
| Mission Statement | http://www.rosalindfranklin.edu/President/MissionVision.aspx |
| Are all the programs at your institution offered completely via distance education? | No |
| Special Learning Opportunities | N/A |
| Student Services | Academic/career counseling services Placement services for program completers |
| Credit Accepted | N/A |

| PRICING INFORMATION | | Tuition | Fees |
|---|---|---|---|
| Average graduate student tuition and fees for academic year 2013-14 | | $25,735 | $330 |
| Alternative tuition plans | N/A | | |

**3**

**4**    131.    Navient knowingly and willingly disregards said public admissions by the

**5**  DOE, and directs loan payments for services that did not and do not provide "placement

**6**  services for program completers," despite mandates pursuant to 20 USC §1094(a)(1); 20

1    USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC

2    §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20

3    USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20

4    USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

5        132.    Dr. Abazari's right or privilege to a benefit, within a program or activity

6    receiving federal financial assistance, by the "placement services for program

7    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

8    20 USC §1094(a)(17).

9        133.    Dr. Abazari's right or privilege to a benefit, within a program or activity

10   receiving federal financial assistance, by the "placement services for program

11   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

12   20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

13       134.    Dr. Abazari's right or privilege to a benefit, within a program or activity

14   receiving federal financial assistance, by the "placement services for program

15   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

16   20 USC §1094(a)(21).

17       135.    Dr. Abazari's right or privilege to a benefit, within a program or activity

18   receiving federal financial assistance, by the "placement services for program

19   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

20   20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7).

21       136.    Dr. Abazari's right or privilege to a benefit, within a program or activity

22   receiving federal financial assistance, by the "placement services for program

1    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

2    20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7).

3           137.   Dr. Abazari's right or privilege to a benefit, within a program or activity

4    receiving federal financial assistance, by the "placement services for program

5    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

6    20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7).

7           138.   Dr. Abazari's right or privilege to a benefit, within a program or activity

8    receiving federal financial assistance, by the "placement services for program

9    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

10   20 USC §1094(a)(1).

11          139.   Dr. Abazari's right or privilege to a benefit, within a program or activity

12   receiving federal financial assistance, by the "placement services for program

13   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

14   20 USC §1094(a)(17).

15          140.   Navient knowingly and willingly disregards Dr. Abazari's right and

16   privilege to a benefit, within a program or activity receiving federal financial assistance,

17   which provides the entitlements "placement services for program completers," and CIP

18   Code 51.2101, by usurping Dr. Abazari's control over his debt, against his will:

19   Principal Balance 152,289.08 July 5, 2015 Outstanding Interest 16, 160.71
20   Principal Balance 225,139.23 June 2, 2016 Unpaid Interest 2, 540.93
21   Principal Balance 225,139.23 June 2, 2017 Unpaid Interest 17, 524.86
22   Principal Balance 225,139.23 June 2, 2018 Unpaid Interest 32,554.30
23   Principal Balance 225,139.23 June 2, 2019 Unpaid Interest 47,694.86.
24
25          141.   In every possible manner herein alleged, the Navient sought to capitalize

26   on Dr. Abazari's weakened physical condition, in calculated and coordinated attacks, to

1  increase physiological harm, and to overpower Dr. Abazari objections, using force and

2  inducing emotional submission—through a psychological state of learned helplessness:



3

4  (Left—On or around February 7, 2016)  (Right—On or around November 14-2010)

5  **<u>CAUSE OF ACTION 4:</u>**

6  **<u>(PEONAGE 18 U.S.C. §1581(B)—NAVIENT)</u>**

7      142.   Dr. Abazari repeats and realleges each and every allegation contained in

8  paragraphs 1 through 141 as if fully set forth herein.

9      143.   On January 1st 2019, Navient was informed that Dr. Abazari was seeking

10  legal remedy to terminate his contract citing 18 U.S.C. §1584(a)-(b) and 18 U.S.C.

11  §1593, and had directed the notice to law enforcement: Ray Hendren, Regional Inspector

12  General for Audit, DOE OIG Sacramento Regional Office; Adam Shanedling, DOE OIG

13  Western Regional Office, One World Trade Center; DOE FSA Ombudsman Group, P.O.

14  Box 1843.

15      144.   After being served on the 1st of January, 2019 with Dr. Abazari's Notice

16  of Termination of Contract citing 18 U.S.C. §1584(a)-(b) and 18 U.S.C. §1593 and

17  notification to the Office of Inspector General for the Department of Education, a law

18  enforcement branch, Navient sought on or after February 22, 2019 to interfere with and

19  prevent the enforcement 18 U.S.C. §1581, by withholding and restricting access to

records from further investigation by Dr. Abazari, as noted by the screen shot of the Navient Mailbox:

NAVIENT Department of Education Loan Servicing

My Inbox | My Account

**Correspondence Summary**

**Documents We Sent to You** provides access to correspondence that contains non-public, personal information (NPI data) which was recently referenced in an email to you. These documents will be available online at this website for 12 months.

**Documents You Sent to Us** provides access to any correspondence you or your cosigner may have provided to Navient that does not contain non-public, personal information (NPI data) such as a Driver's License or Social Security card for someone other than yourself. You can view these documents online at this website for 7 days.

If you would like to retain a permanent copy of a document, it should be saved to your computer. The documents listed below are in Adobe Reader format. If you wish to view the correspondence and have not already installed Adobe Reader, please install it first. A free copy of Adobe Reader is available for download at http://get.adobe.com/reader/otherversions/. If you have any questions or if you would like us to mail you copies of any of these documents, please contact us at (800) 722-1300.

Documents We Sent to You | Documents You Sent to Us

| DATE | MAIL SUBJECT | CORRESPONDENCE | |
|---|---|---|---|
| 22-Feb-2019 | New document ready to view! | The Customer Advocate Unit received your inquiry | PDF IMG |
| 06-Feb-2019 | New document ready to view! | The Customer Advocate Unit received your inquiry | PDF IMG |
| 22-Jan-2019 | Change in Loan Terms | Change in Terms Letter | PDF IMG |
| 20-Jan-2019 | What you need to know about your repayment | Payment Schedule Options | PDF IMG HTML |
| 20-Jan-2019 | Change in Loan Terms | Change in Terms Letter | PDF IMG |
| 10-Jan-2019 | New document ready to view! | We?re researching your request | PDF IMG |
| 10-Jan-2019 | New document ready to view! | The Customer Advocate Unit received your inquiry | PDF IMG |
| 03-Dec-2018 | Your Interest Statement is Available | Your semi-annual interest statement | PDF IMG HTML |
| 02-Jun-2018 | Quarterly Interest Statement Available | Your quarterly forbearance statement is available | PDF IMG HTML |
| 03-Apr-2018 | Quarterly Interest Statement Available | Quarterly Interest Statement | PDF IMG HTML |
| 20-Mar-2018 | New document ready to view! | Administrative Forbearance Processed | PDF IMG |
| 03-Mar-2018 | Quarterly Interest Statement Available | Your quarterly forbearance statement is available | PDF IMG HTML |

Logout

About SSL Certificates

About Us | Terms of Use | Protecting Your Privacy | Social Media Policies | Contact Us
Accessibility | About Our Ads | Site Map

© 20192019 Navient Solutions, LLC. All rights reserved. Navient and the Navient logo are the service marks of Navient Solutions, LLC. Navient Corporation and its subsidiaries, including Navient Solutions, LLC, are not sponsored by or agencies of the United States of America.

145. As noted by Screen Shots form electronic communications with Navient, Navient knowingly and willing sought to restrict access and discovery of a document transmitted on October 18, 2015:

**New document ready to view!**

arminabazari@ya.../Inbox

NAVIENT **Navient - Department of Education Loan Servicing** <CustomerService@navient.com>
To: ARMINABAZARI@YAHOO.COM

Oct 18, 2015 at 7:40 AM

NAVIENT. Department of Education
Loan Servicing

Dear ARMIN ABAZARI,

A new education loan document is available online. Please log in to your account to view
it.

Remember, by managing your loan(s) online, you have access to several convenient
features, such as:

- Pay on your account online 24/7, or sign up for monthly automatic debit.
- Read your past email correspondence with us and view loan documents we
  previously sent you.
- Update your address, phone, and email address as well as change how you want to
  receive information
- Learn more about available repayment options and how to apply.
- View and print your monthly statement and past payment history, including pending
  payments.
- Print out customized letters, such as account summary, payment history, and credit
  reference letters for your mortgage needs.
- Return documents easily by taking advantage of our Document Upload feature
  available online. Simply click on the Customer Support dropdown and select Upload
  Documents.

We appreciate the opportunity to help you navigate the path to financial success.

Sincerely,

Navient – Department of Education Loan Servicing

Please do not respond to this automated message. Emails sent to this address are not monitored.

If you haven't created an account online, click here to get started.

Please note you'll need Adobe Reader 9.0 or higher to view your document. Click here to download the latest version for free.

Make sure Navient makes it to your inbox by adding CustomerService@Navient.com as a contact. Instructions on how to add us can be found here.

Privacy | Terms of Use

© 2015 Navient Solutions, Inc. All rights reserved. Navient and the Navient logo are service marks of Navient
Solutions, Inc. Navient Corporation and its subsidiaries, including Navient Solutions, Inc., are not sponsored by or
agencies of the United States of America.

CC-14-10052  WR011ED

1

2      146.    As noted by Screen Shots from communications with Navient, Navient

3   knowingly and willing sought to restrict access and discovery of a document transmitted

4   on November 18, 2015:

5

76



**New document ready to view!**

arminabazari@ya.../Inbox

**Navient - Department of Education Loan Servicing** <CustomerService@navient.com>
To: ARMINABAZARI@YAHOO.COM

Nov 18, 2015 at 6:44 AM

NAVIENT | Department of Education Loan Servicing

Dear ARMIN ABAZARI,

A new education loan document is available online. Please log in to your account to view it.

Remember, by managing your loan(s) online, you have access to several convenient features, such as:

- Pay on your account online 24/7, or sign up for monthly automatic debit
- Read your past email correspondence with us and view loan documents we previously sent you.
- Update your address, phone, and email address as well as change how you want to receive information
- Learn more about available repayment options and how to apply.
- View and print your monthly statement and past payment history, including pending payments.
- Print out customized letters, such as account summary, payment history, and credit reference letters for your mortgage needs.
- Return documents easily by taking advantage of our Document Upload feature available online. Simply click on the Customer Support dropdown and select Upload Documents.

We appreciate the opportunity to help you navigate the path to financial success.

Sincerely,

Navient -- Department of Education Loan Servicing

U.S. Department of Education

Please do not respond to this automated message. Emails sent to this address are not monitored.

If you haven't created an account online, click here to get started.

Please note you'll need Adobe Reader 5.0 or higher to view your document. Click here to download the latest version for free.

Make sure Navient makes it to your inbox by adding CustomerService@Navient.com as a contact. Instructions on how to add us can be found here.

Privacy | Terms of Use

© 2015 Navient Solutions, Inc. All rights reserved. Navient and the Navient logo are service marks of Navient Solutions, Inc. Navient Corporation and its subsidiaries, including Navient Solutions, Inc., are not sponsored by or agencies of the United States of America.

CC-14-18652 · WR01EDD

147. As noted by screen shots from communications with Navient, Navient knowingly and willing sought to restrict access and discovery of a documents transmitted on November 18, 2016:



**New document ready to view!** arminabazari@ya.../Inbox

Navient - Department of Education Loan Servicing <CustomerService@navient.com> Nov 18, 2016 at 2:32 PM
To: ARMINABAZARI@YAHOO.COM

NAVIENT | Department of Education Loan Servicing

ARMIN ABAZARI,

A new education loan document is available online. Please log in to your account to view it.

Remember, by managing your loan(s) online, you have access to several convenient features, such as:

- Pay on your account online 24/7, or sign up for monthly Auto Pay.
- Read your past email correspondence with us and view loan documents we previously sent you.
- Update your address, phone, and email address as well as change how you want to receive information.
- Learn more about available repayment options and how to apply.
- View and print your monthly statement and past payment history, including pending payments.
- Print out customized letters, such as account summary, payment history, and credit reference letters for your mortgage needs.
- Return documents easily by using the Document Upload feature on Navient.com.

We appreciate the opportunity to help you navigate the path to financial success.

Sincerely,

Navient -- Department of Education Loan Servicing

U.S. Department of Education

Please do not respond to this automated message. Emails sent to this address are not monitored.

If you haven't created an account online, click here to get started.

Please note you'll need Adobe Reader 5.0 or higher to view your document. Click here to download the latest version for free.

Make sure Navient makes it to your inbox by adding CustomerService@Navient.com as a contact. Get instructions on how to add us to your contacts.

Privacy | Terms of Use

© 2013 - 2016 Navient Solutions, Inc. All rights reserved. Navient and the Navient logo are service marks of Navient Solutions, Inc. Navient Corporation and its subsidiaries, including Navient Solutions, Inc., are not sponsored by or agencies of the United States of America.

WRC11ED

148. As noted by Screen Shots from communications with Navient, Navient knowingly and willing sought to restrict access and discovery of a document transmitted on January 26, 2017:



**New document ready to view!** arminabazari@ya.../Inbox

**Navient - Department of Education Loan Servicing** <CustomerService@navient.com> Jan 26, 2017 at 7:21 AM
To: ARMINABAZARI@YAHOO.COM

NAVIENT | Department of Education Loan Servicing

**To view all information regarding this notification, log in to your Navient inbox.**

**ARMIN ABAZARI, a new education loan document is available online.**

Please log in to your account to view it.

**Manage your account online at Navient.com.**

LOG IN

It's tax season!
Your Form 1098-E is now available.

Visit us at Navient.com/My1098-E to learn more.

¹Form 1098-E is a Student Loan Interest Statement. For borrowers who have paid $600 or more in eligible student loan interest during the calendar year, the IRS requires us to issue this form to you. Although you may not receive a Form 1098-E for lower amounts, you may still be able to deduct the eligible interest you paid. Consult your tax advisor if you have questions.

Please do not respond to this automated message. Emails sent to this address are not monitored.

Please note you'll need Adobe Reader 5.0 or higher to view your document. Download the latest version of Adobe Reader for free.

Make sure Navient makes it to your inbox by adding CustomerService@Navient.com as a contact. Get instructions on how to add us to your contacts

Privacy | Terms of Use

© 2016 Navient Solutions, Inc. All rights reserved. Navient and the Navient logo are registered service marks of Navient Solutions, Inc. Navient Corporation and its subsidiaries, including Navient Solutions, Inc., are not sponsored by or agencies of the United States of America.

WR011 ED

v4-1 CC-16-14219

149. As noted by screen shots of communications with Navient, Navient knowingly and willing sought to restrict access and discovery of a document transmitted on November 2, 2017:



1

2          150.     Navient directly prevents access and discovery of documents to withhold

3    information and communications made to Dr. Abazari, in furtherance of its intent to

4    interfere with or obstruct enforcement of 18 U.S.C. §1581, for violation of numerous

5    mandates pursuant to 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C.

6    §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC

7    §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC

8    §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC

9    §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

10         151.     Dr. Abazari's right or privilege to a benefit, within a program or activity

11   receiving federal financial assistance, by the "placement services for program

12   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

13   20 USC §1094(a)(17).

1    152.    Dr. Abazari's right or privilege to a benefit, within a program or activity

2    receiving federal financial assistance, by the "placement services for program

3    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

4    20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

5    153.    Dr. Abazari's right or privilege to a benefit, within a program or activity

6    receiving federal financial assistance, by the "placement services for program

7    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

8    20 USC §1094(a)(21).

9    154.    Dr. Abazari's right or privilege to a benefit, within a program or activity

10   receiving federal financial assistance, by the "placement services for program

11   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

12   20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7).

13   155.    Dr. Abazari's right or privilege to a benefit, within a program or activity

14   receiving federal financial assistance, by the "placement services for program

15   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

16   20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7).

17   156.    Dr. Abazari's right or privilege to a benefit, within a program or activity

18   receiving federal financial assistance, by the "placement services for program

19   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

20   20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7).

21   157.    Dr. Abazari's right or privilege to a benefit, within a program or activity

22   receiving federal financial assistance, by the "placement services for program

1   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

2   20 USC §1094(a)(1).

3        158.   Dr. Abazari's right or privilege to a benefit, within a program or activity

4   receiving federal financial assistance, by the "placement services for program

5   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

6   20 USC §1094(a)(17).

7        159.   Navient knowingly and willingly disregards the public admissions by the

8   Defendant DOE, and forces Dr. Abazari to incur more debt against his will:

9   Principal Balance 152,289.08 July 5, 2015 Outstanding Interest 16, 160.71
10  Principal Balance 225,139.23 June 2, 2016 Unpaid Interest 2, 540.93
11  Principal Balance 225,139.23 June 2, 2017 Unpaid Interest 17, 524.86
12  Principal Balance 225,139.23 June 2, 2018 Unpaid Interest 32,554.30
13  Principal Balance 225,139.23 June 2, 2019 Unpaid Interest 47,694.86.
14
15       160.   In every possible manner herein alleged, the Navient sought to capitalize

16  on Dr. Abazari's weakened physical condition, in calculated and coordinated attacks, to

17  increase physiological harm, and to overpower Dr. Abazari objections, using force and

18  inducing emotional submission—through a psychological state of learned helplessness:



19

20  (Left—On or around February 7, 2016)   (Right—On or around November 14-2010)

21  //

22  //

23  //

1          <u>**CAUSE OF ACTION 5:**</u>

<u>**(SALE INTO INVOLUNTARY SERVITUDE 18 U.S.C. §1584(A)—DOE**</u>)

2          161.    Dr. Abazari repeats and realleges each and every allegation contained in

3    paragraphs 1 through 160 as if fully set forth herein.

4          162.    As admitted to by Sallie Mae within the mailed communication on

5    4/07/12, "the U.S. Department of Education (the Department)...asked [SallieMae] to

6    service [Dr. Abazari's] loan(s) for [him]":



SallieMae® | Department of Education Loan Services
www.SallieMae.com
PO BOX 9635
WILKES-BARRE PA 18773-9635

(888) 722-1269

0001- 120408 0408 005315 010527 000001/000003 000000
ARMIN ABAZARI
14 NATIONAL PL
IRVINE CA 92602-0703

Account Number: [redacted]

Dear ARMIN ABAZARI: 04/07/12

We're writing to you as the new servicer of your federal student loan(s) listed below. The owner of this loan(s), the U.S. Department of Education (the Department), has asked us to service your loan(s) for you. We're pleased to do so. On behalf of the Department, Sallie Mae will be taking care of servicing your loan(s) for you, processing payments and deferments. You can be assured that your loan terms will remain the same.

In light of this change, there are a few things you need to know:

1. **Managing your account online**
   We encourage you to manage your U.S. Department of Education loan(s) online at SallieMae.com. You can manage your loan(s) by logging into your account at SallieMae.com and clicking on the Departement of Education tab, register, or check to see if you already have a user ID.

   We're pleased to provide you with the convenient option to use the same user ID and password to register that you may already have for Sallie Mae's website. Please note, if Sallie Mae - Department of Education Loan Services is already servicing any of your other federal loan(s), then we've already added your newly serviced loan(s) to your online account for you.

   Visit SallieMae.com to view loan details and manage your account, in addition to making electronic payments on all your Sallie Mae - serviced loans.

2. **Submitting your payments**
   Payments received by your previous lender/servicer will be forwarded to us for 45 days after the date of this letter. Any forwarded payments will be posted to your account retroactively effective the date your prior servicer received them, so any payments your prior servicer receives on a timely basis (for the next 45 days) will be considered received on time by us.

**Loan Information** *If you have questions or concerns about your account, write to us at the address provided above.*
The loans listed below are the loans referred to in this letter.

| LOAN DATE | ORIGINAL LOAN AMOUNT | OUTSTANDING PRINCIPAL | INTEREST RATE | LOAN PROGRAM |
|---|---|---|---|---|
| * 05/25/11 | $ 18,381.00 | $ 18,381.00 | 7.900 | DLGPLUS |

PHONE (800) 722-1300 • FAX (866) 266-0178 • TDD/TTY (877) 713-3833 SallieMae.com
Para comunicarse en Español con 'Atencion al Cliente', llame gratis al 1-800-722-1300, y marque el numero correspondiente.
RXM SYSTEM 000 LWL11

163. As admitted to by Navient, through its communication with Dr. Abazari on August 7, 2014, Sallie Mae formed Naivent and Navient became "[Dr. Abazari's] servicer of federal loans":



An update about your student loans

**Sallie Mae® – Department of Education Loan Services is now Navient℠ – Department of Education Loan Servicing.**

This past spring, Sallie Mae became two companies—Sallie Mae and Navient. Because of the loan(s) you have, you'll become a Navient customer starting this fall. Rest assured your loan(s) has not been sold.

**Who is Navient?**
Although our name is new, for more than 40 years we learned, evolved and led in loan management. Navient will be your servicer for federal loans, including Department of Education loans. As Navient, we're proud to help you navigate the path to financial success and we're here to help you successfully manage and repay your loans, which we'll continue to service on behalf of the U.S. Department of Education.

We've worked to make this transition as easy as possible for you. As a result, there will be no change to:

- Our phone numbers and addresses

- Terms, conditions and benefits of your existing loans

**What to expect this fall**
As a Navient customer you'll go to Navient.com to view, manage, and repay your loans, using the same login information that you've always used. Bookmark Navient.com today for future use.

If you're currently not required to make payments on your loan(s), there's nothing else you need to do. If you're already making payments, please review the information below for simple changes to make:

| If you currently pay through... | Here's what you'll need to do... |
|---|---|
| Our auto debit program | • There's nothing you need to do. We'll take care of it for you. <br><br> (The withdrawals from your bank account will soon reflect Navient) |
| An online bill pay service (such as your bank's bill pay service or other entity that sends payments) | • Log in to the website you use to send payments. <br><br> • Update our payee information with the name Navient. All other information can stay the same. |
| Our website | • Starting this fall, you'll make payments on Navient.com <br><br> • Bookmark Navient.com today for future use. |
| A personal check | • Write your check out to Navient. |

1

2      164.    Navient was and is forcing Dr. Abazari into a duty to perform "service[e

3   his] student loan debt" through the means of none "place[ment] in a CPME approved

4   residency program," for loans under the direction, benefit, and control of Navient, to

5   satisfy his $272,834.09 student loan debt.

6      165.    Defendant DOE knowingly and willingly holds or sells Dr. Abazari into a

7   condition of involuntary servitude and debt bondage by endorsing Navient's actions in

8   forcing Dr. Abazari into a state of subjection to force, power, and influence, in usurping

9   control of his student debt and causing him to incur $104,384.30, at a rate of $26,096.075

10   Per Annum, in interest charges over approximately 4 years, despite numerous mandates

11   pursuant to 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20

85

1    U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC

2    §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant

3    to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20

4    USC §1094(a)(7):

5    Principal Balance 152,289.08 July 5, 2015; Outstanding Interest $16,160.71
6    Principal Balance 225,139.23 June 2, 2016; Unpaid Interest $2,540.93
7    Principal Balance 225,139.23 June 2, 2017; Unpaid Interest $17,524.86
8    Principal Balance 225,139.23 June 2, 2018; Unpaid Interest $32,554.30
9    Principal Balance 225,139.23 June 2, 2019; Unpaid Interest $47,694.86.
10
11           166.    Dr. Abazari placed the DOE on express notice of this fact through the

12   citation of "State Document: NOTICE OF INTENT under Oath" and "Federal

13   Document: IPEDS checked box 'Placement Services for Program Completers' 2008-

14   20014," pursuant to mandates of 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C.

15   §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC

16   §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC

17   §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC

18   §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7):



**ARMIN ABAZARI--APPLICATION BORROWER"S DEFENSE TO REPAYMENT LOAN DISCHARGE**

Armin Abazari <arminabazari@yahoo.com>
To: FSAOperations@ed.gov <FSAOperations@ed.gov>

Nov 12, 2016 at 3:12 PM

To Whom It May Concern,

If I could please, I would to submit my Application For Borrower's Defense To Repayment Loan Discharge to the United States Department of Education.

Order of Attached Files:
1) Application For Borrower's Defense To Repayment Loan Discharge
2) State Document: NOTICE OF INTENT under Oath
3) State Document: IBHE Board Action December 9, 2003 on Podiatry Degree Authorization
4) Federal Document: IPEDS checked box "Placement Services for Program Completers" 2008-2014
5) Scholl College 2008-2009 Viewbook: False and Deceptive
6) Letter to Alan Tinkleman from COTH/APMA/CPME
7) Dean of Rosalind Franklin's Podiatry College, Nancy Parsley Lobbying on Behalf of American Podiatric Medical Association
8) APMA IRS 990 FORM: This Political Organization Gave Money To Defendants, a 501(c) organization, as a "College Advisor Program Grant"
9) A picture is worth a thousand words
10) First Amended Complaint
11) Motion For Reconsideration (Petition for Rehearing)
12) Date of Enrollment
13) Degree

Sincerely,
Armin Abazari

**14 Files** 17.9MB

APPLICATION FOR BORROWER'S DEFENSE TO REPAYMENT LOAN DISCHARGE.docx
198kB

NOI-Podiatry.pdf
64kB

Scholl New Operating And/or Degree-Granting Authority For Independent Institutions IBHE.pdf
375kB

2008-09.pdf
217kB

2009-10.pdf
257kB

2010-11.pdf
224kB

2011-12.pdf
227kB

2012-13.pdf
228kB

**2013-14.pdf**
229kB

**2008-09 SCPM Viewbook copy.pdf**
2MB

**APMACPMECOTH memo.pdf**
52kB

**Nancy Lobbying.pdf**
411kB

**AbazariBrief (dragged).pdf**
13MB

**Degree.pdf**
189kB

167. As communicated by the DOE, DOE admits that 1 year and 7 months later, "we are continuing to evaluate your claim":

From: "U.S. Department of Education" <no-reply@studentloans.gov>
Date: June 19, 2017 at 11:05:35 AM PDT
To: arminabylon@yahoo.com
Subject: Borrower Defense Claim Status Update



Federal **Student** Aid
An OFFICE of the U.S. DEPARTMENT of EDUCATION

Dear Armin,

This email is being sent to update you on the current status of your claim for
borrower defense to repayment. We are continuing to evaluate your claim but
have not yet made a decision if the claim will be approved. Once a decision
has been made on your claim, you will be notified of the decision. If it is
determined that additional information is needed, we will reach out to request
that information from you then.

If you have chosen to have your loans placed on forbearance or stop collection
activity while your claim is reviewed, we will continue to notify your servicer to
extend that status until your claim has been decided.

Sincerely,

U.S. Department of Education

Connect with us:



1

2        168.   As noted by the for forgoing screen shot of DOE's public records, DOE

3   publically admits through its specially created National Education Statistics that it was

4   lending federal loans specifically and only for

5        "a program that prepares individuals for the independent professional practice of
6        podiatric medicine, involving the prevention, diagnosis, and treatment of diseases,
7        disorders, and injuries to the foot and lower extremities":



8

1    169.   As noted by DOE's federal public records, Defendant DOE expressly

2  admits that RFUMS provides "placement services for program completers" for the period

3  2008-2014.

4    170.   As indicated by the forgoing screenshots, Defendant DOE expressly

5  admits that the institution RFUMS provides "placement services for program completers"

6  specifically for plaintiff's time of graduation from the period 2013-2014:

# National Center for Education Statistics

## IPEDS Data Center

**Rosalind Franklin University of Medicine and Science**

| UnitID | 145558 |
|---|---|
| OPEID | 00165900 |
| Address | 3333 Green Bay Road, North Chicago, IL, 60064-3095 |
| Web Address | www.rosalindfranklin.edu/ |

| IC Header 2013-14 |
|---|
| Institution: Rosalind Franklin University of Medicine and Science (145558) inovas1 |

**Part A - Educational Offerings**
**1. Which of the following types of instruction/programs are offered by your institution? [Check one or more]**

*If your institution does not offer occupational, academic or continuing professional programs, you are not expected to complete this or any other IPEDS survey.*

☐ Occupational, may lead to a certificate, degree, or other formal award

☑ Academic, leading to a certificate, degree, or diploma

☑ Continuing professional (postbaccalaureate only)

☐ Recreational or avocational (leisure) programs

☐ Adult basic or remedial instruction or high school equivalency

☐ Secondary (high school)

Institution: Rosalind Franklin University of Medicine and Science (145558) inovas1

7

8

**Part C - Student Services - Distance Opportunities**
**4. Which of the following selected student services are offered by your institution? [Check all that apply]**

- ☐ Remedial services
- ☑ Academic/career counseling services
- ☐ Employment services for current students
- ☑ Placement services for program completers
- ☐ On-campus day care for children of students
- ☐ None of the above

1

| Institution: Rosalind Franklin University of Medicine and Science (145558) | Inovas1 |
|---|---|

Summary

## Institutional Characteristics Component Summary
## Academic Year Reporters

IPEDS collects important information regarding your institution. All data reported in IPEDS survey components become available in the IPEDS Data Center and appear as aggregated data in various Department of Education reports. Additionally, some of the reported data appears specifically for your institution through the College Navigator website and is included in your institution's Data Feedback Report (DFR). The purpose of this summary is to provide you an opportunity to view some of the data that, when accepted through the IPEDS quality control process, will appear on the College Navigator website and/or your DFR. College Navigator is updated approximately three months after the data collection period closes and Data Feedback Reports will be available through the Data Center and sent to your institution's CEO in November 2014.

Please review your data for accuracy. If you have questions about the data displayed below after reviewing the data reported on the survey screens, please contact the IPEDS Help Desk at: 1-877-225-2568 or ipedshelp@rti.org.

| GENERAL INFORMATION | |
|---|---|
| Mission Statement | http://www.rosalindfranklin.edu/President/MissionVision.aspx |
| Are all the programs at your institution offered completely via distance education? | No |
| Special Learning Opportunities | N/A |
| Student Services | Academic/career counseling services<br>Placement services for program completers |
| Credit Accepted | N/A |

| PRICING INFORMATION | | |
|---|---|---|
| | Tuition | Fees |
| Average graduate student tuition and fees for academic year 2013-14 | $25,735 | $330 |
| Alternative tuition plans | N/A | |

2

3    171.    Dr. Abazari's right or privilege to a benefit, within a program or activity

4    receiving federal financial assistance, by the "placement services for program

5    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

6    20 USC §1094(a)(17).

7    172.    Dr. Abazari's right or privilege to a benefit, within a program or activity

8    receiving federal financial assistance, by the "placement services for program

1   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

2   20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

3       173.   Dr. Abazari's right or privilege to a benefit, within a program or activity

4   receiving federal financial assistance, by the "placement services for program

5   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

6   20 USC §1094(a)(21).

7       174.   Dr. Abazari's right or privilege to a benefit, within a program or activity

8   receiving federal financial assistance, by the "placement services for program

9   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

10   20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7).

11      175.   Dr. Abazari's right or privilege to a benefit, within a program or activity

12   receiving federal financial assistance, by the "placement services for program

13   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

14   20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7).

15      176.   Dr. Abazari's right or privilege to a benefit, within a program or activity

16   receiving federal financial assistance, by the "placement services for program

17   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

18   20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7).

19      177.   Dr. Abazari's right or privilege to a benefit, within a program or activity

20   receiving federal financial assistance, by the "placement services for program

21   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

22   20 USC §1094(a)(1).

23

1    178.    Dr. Abazari's right or privilege to a benefit, within a program or activity

2  receiving federal financial assistance, by the "placement services for program

3  completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

4  20 USC §1094(a)(17).

5    179.    In the clear and present fact of the DOE's own admissions in the IPEDS

6  records and CIP Code 51.2101, the DOE knowingly and willingly holds or sells Dr.

7  Abazari into involuntary servitude by endorsing Navient's unlawful actions in forcing Dr.

8  Abazari into a duty to perform "service[e his] student loan debt" through the means of

9  none "place[ment] in a CPME approved residency program," for loans under the

10  direction, benefit, and control of Navient and DOE, to satisfy his $272, 834.09 student

11  loan debt, for services not rendered to Dr. Abazari under mandates of 20 USC

12  §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20

13  USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant

14  to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7);

15  20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

16    180.    In every possible manner herein alleged, the DOE sought to capitalize on

17  Dr. Abazari's weakened physical condition, in calculated and coordinated attacks, to

18  increase physiological harm, and to overpower Dr. Abazari objections, using force and

19  inducing emotional submission—through a psychological state of learned helplessness:



20

1   (Left—On or around February 7, 2016)   (Right—On or around November 14-2010)

2   <u>**CAUSE OF ACTION 6:**</u>

3   <u>**(SALE INTO INVOLUNTARY SERVITUDE 18 U.S.C. §1584(A)—STATE OF**</u>

4   <u>**ILLINOIS)**</u>

5   181.   Dr. Abazari repeats and realleges each and every allegation contained in

6   paragraphs 1 through 180 as if fully set forth herein.

7   182.   State of Illinois was, and is, forcing Dr. Abazari into a duty to perform

8   "service[e his] student loan debt" through the means of none "place[ment] in a CPME

9   approved residency program," for Federal Stafford Subsidized, Federal Stafford

10   Unsubsidized, Federal Grad Plus under the direction, benefit, and control of Navient and

11   DOE, to satisfy his $272, 834.09 student loan debt.

12   183.   The State of Illinois knowingly and willingly holds or sells Dr. Abazari

13   into a condition of involuntary servitude and debt bondage by endorsing Navient's

14   actions in forcing Dr. Abazari into a state of subjection to force, power, and influence by

15   usurping control of his student debt and forcing to him to incur $104,384.30, at a rate of

16   $26,096.075 per year, in interest charges over approximately 4 years:

17   Principal Balance 152,289.08 July 5, 2015; Outstanding Interest $16,160.71
18   Principal Balance 225,139.23 June 2, 2016; Unpaid Interest $2,540.93
19   Principal Balance 225,139.23 June 2, 2017; Unpaid Interest $17,524.86
20   Principal Balance 225,139.23 June 2, 2018; Unpaid Interest $32,554.30
21   Principal Balance 225,139.23 June 2, 2019; Unpaid Interest $47,694.86.
22
23   184.   The State of Illinois admits that RFUMS is required to produced

24   "a program that prepares individuals for the independent
25   professional practice of podiatric medicine, involving the
26   prevention, diagnosis, and treatment of diseases, disorders, and
27   injuries to the foot and lower extremities"
28

1    by specifically placing the DOE's certification mark for goods and services "CIP Code

2    51.2101" and DOE's certification mark for goods and services "Podiatric

3    Medicine/Podiatry," pursuant to the Lantham Act (15 U.S.C. § 1127: "certification

4    mark"), in public association with Defendant RFUMS's podiatry program for the Dr.

5    Abazari's enrollment period 2009, pursuant to mandates set forth or in accordance with

6    20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e

7    (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J),

8    pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC

9    §1094(a)(7); 20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC

10   §1094(a)(7):



11

12        185.   State of Illinois admits that Defendant RFUMS is required to produced

1        "a program that prepares individuals for the independent
2        professional practice of podiatric medicine, involving the
3        prevention, diagnosis, and treatment of diseases, disorders, and
4        injuries to the foot and lower extremities"
5
6  by specifically placing the DOE's certification mark for goods and services "CIP Code

7  51.2101" and DOE's certification mark for goods and services "Podiatric

8  Medicine/Podiatry," pursuant to the Lantham Act (15 U.S.C. § 1127: "certification

9  mark"), in public association with Defendant RFUMS's podiatry program for the Dr.

10  Abazari's enrollment period 2014, pursuant to mandates set forth or in accordance with

11  20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e

12  (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J),

13  pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC

14  §1094(a)(7); 20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC

15  §1094(a)(7):



16

1      186.    The State of Illinois admits that

2      "[a]fter graduation Scholl College places its graduates in 24 month

3      and 36 month residency training programs located across the

4      United States. Upon completion of training, podiatric physicians

5      prepare for state professional state licensure examinations as well

6      at board certification examinations":



**FINCH UNIVERSITY/THE CHICAGO MEDICAL SCHOOL - DR. WILLIAM M. SCHOLL COLLEGE OF PODIATRIC MEDICINE**

On-Campus

- Doctorate of Podiatric Medicine
- Bachelor of Science in Biological Sciences

The Herman M. Finch University of Health Sciences/The Chicago Medical School (FUHS/CMS) has entered into an agreement with the Dr. William M. Scholl College of Podiatric Medicine involving the transfer of assets of Scholl College to FUHS/CMS as well as the physical move of Scholl College from facilities at 1001 N. Dearborn St., Chicago, Illinois to FUHS/CMS's campus located in North Chicago. The acquisition of Scholl College's assets and the facilities relocation to North Chicago with FUHS/CMS places Scholl College as the fourth college within the FUHS/CMS system.

Finch University, through the newly acquired Scholl College, will request degree authorization to grant the Doctor of Podiatric Medicine (D.P.M.) and the Bachelor of Science (B.S.) in Biological Science to students interested in entering the profession of podiatric medicine. The programs attract professional students ranging in age from 21 to the 40's from the majority of states and representatives from many ethnic and all racial groups. Curricula for the programs will remain the same as previously offered by Scholl College.

Students who are enrolled present evidence of strong preparation for professional studies. Each year approximately 80% of the students admitted possess a baccalaureate or advanced degree. In each case a candidate must complete 90 semester credit hours (135 quarter hours) of course work at an accredited college or university prior to enrollment. Candidates are required to complete the Medical College Admission Test (MCAT) prior to admission.

Scholl College expects to matriculate 90 students per year for a total enrollment of approximately 360 students. Students complete a curriculum comprised of basic science, clinical science and clerkship training. After graduation Scholl College places its graduates in 24 and 36 month residency training programs located throughout the United States. Upon completion of training, podiatric physicians prepare for state professional licensure examinations as well as board certification examinations. Scholl College has trained approximately one-third of the practicing podiatrists in the United States.

The D.P.M. program is accredited by the Council on Podiatric Medical Education of the American Podiatric Medical Association and approved by the United States Department of Education. FUHS/CMS is accredited by The Higher Learning Commission and is a member of the North Central Association of Colleges and Schools.

Persons interested in obtaining further information about this notice should contact: Margot Surridge, 3333 Green Bay Road, Chicago, Illinois. Tele. (847) 578-8594.



7

1   187.   Dr. Abazari's right or privilege to a benefit, within a program or activity

2   receiving federal financial assistance, by the "placement services for program

3   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

4   20 USC §1094(a)(17).

5   188.   Dr. Abazari's right or privilege to a benefit, within a program or activity

6   receiving federal financial assistance, by the "placement services for program

7   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

8   20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

9   189.   Dr. Abazari's right or privilege to a benefit, within a program or activity

10  receiving federal financial assistance, by the "placement services for program

11  completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

12  20 USC §1094(a)(21).

13  190.   Dr. Abazari's right or privilege to a benefit, within a program or activity

14  receiving federal financial assistance, by the "placement services for program

15  completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

16  20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7).

17  191.   Dr. Abazari's right or privilege to a benefit, within a program or activity

18  receiving federal financial assistance, by the "placement services for program

19  completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

20  20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7).

21  192.   Dr. Abazari's right or privilege to a benefit, within a program or activity

22  receiving federal financial assistance, by the "placement services for program

1    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

2    20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7).

3        193.    Dr. Abazari's right or privilege to a benefit, within a program or activity

4    receiving federal financial assistance, by the "placement services for program

5    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

6    20 USC §1094(a)(1).

7        194.    Dr. Abazari's right or privilege to a benefit, within a program or activity

8    receiving federal financial assistance, by the "placement services for program

9    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

10   20 USC §1094(a)(17).

11       195.    In the clear and present fact of the DOE's own admissions within the

12   IPEDS records and CIP Code 51.2101, the State of Illinois knowingly and willingly holds

13   or sells Dr. Abazari into involuntary servitude by endorsing Navient's unlawful actions in

14   forcing Dr. Abazari into a duty to perform "service[e his] student loan debt" through the

15   means of none "place[ment] in a CPME approved residency program," for loans under

16   the direction, benefit, and control of Navient and DOE, to satisfy his $272, 834.09

17   student loan debt, despite numerous mandates set forth or in accordance with 20 USC

18   §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20

19   USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant

20   to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7);

21   20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

22       196.    In every possible manner herein alleged, the State of Illinois sought to

23   capitalize on Dr. Abazari's weakened physical condition, in calculated and coordinated

1   attacks, to increase physiological harm, and to overpower Dr. Abazari objections, using

2   force and inducing emotional submission—through a psychological state of learned

3   helplessness:

 

4

5   (Left—On or around February 7, 2016)   (Right—On or around November 14-2010)

6   **CAUSE OF ACTION 7:**

7   **(WIRE FRAUD 18 U.S.C. §1341—RFUMS)**

8     197. Dr. Abazari repeats and realleges each and every allegation contained in

9   paragraphs 1 through 196 as if fully set forth herein.

10     198. RFUMS acted with a scheme and plan to defraud Dr. Abazari of Federal

11   Stafford Subsidized, Federal Stafford Unsubsidized, Federal Grad Plus loan monies by

12   making false guarantees that "100% of graduates will be placed in a CPME approved

13   residency program" and "Graduates will be capable of servicing their student loan debt."

14     199. RFUMS transmitted to students through the use of interstate wire

15   communications, from the period of 2008-2012, through 16 of its faculty members, on at

16   least 6 separate occasions, express statements of "100% of graduates will be placed in a

17   CPME approved residency program," despite statutory mandates under 20 USC

18   §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20

19   USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant

1    to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7);

2    20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

3        200.    As noted within two screen shots of Defendant RFUMS Applied

4    Biomechanics Clinical Capstone syllabus, taught by Dr. Beth Jarrett, Dr. David Kibrit,

5    Mr. Ryan Cruz, Dr. Neil Horsley, Mr. Steve Kim, and Dr. Bijan Najafi, transmitted to

6    students through the use of interstate wire communications, Defendant RFUMS makes

7    the false statement "100% of graduates will be placed in a CPME approved residency

8    program" through the use of interstate wire transmissions:

9