

**Applied Biomechanics Capstone Clinical Experience (PAPB705)**

**Syllabus**

**Department of Applied Biomechanics**
*Dr. William M. Scholl College of Podiatric Medicine*

**2011 - 2012 ACADEMIC YEAR**

Co-Course Coordinators:
Beth Jarrett, DPM, C.Ped.
G704A, Ext. 8415
Beth.Jarrett@rosalindfranklin.edu
Office hours: M,W,F noon-1:00pm

David Kibrit, DPM
Ext. 8448
David.Kibrit@rosalindfranklin.edu
Office hours: By appointment only

Administrative Assistant: Linda Miranda
Ext. 8412
Linda.Miranda@rosalindfranklin.edu

Instructional Staff:
Ryan Crews
Neil Horsley
Steve Kim
Bijan Najafi

March 8, 2011

1 ───────────────────────────────────

**Programmatic Outcomes**

#1   Graduates will pass the National Board of Podiatric Medical Examiners
     Part I and Part II examinations.

#2   Graduates will pass the Clinical Competency Exam

#3   100% of graduates will be placed in a CPME approved residency program.

#4   The College will graduate students that have the necessary knowledge,
     skills, and attitudes for entry into residency training.

2    #5   The College will graduate at least 90% of matriculated students.

3        201.    As noted within two screen shots of Defendant RFUMS Principals of

4   Podiatric Radiology syllabus, taught by Mr. Casimir Strugielski, Dr. Robert Baron, Dr.

5   Daniel Evans, Dr. Adam Fleischer, transmitted to students through the use of interstate

1    wire communications, Defendant RFUMS make the false statement "Graduates will be

2    capable of servicing their student loan debt."

3

# PRAD 601 A+B
# Principles of Podiatric
# Radiology

*Dr. William M. Scholl College of Podiatric Medicine*
*Department of Radiology*

# 2009 Academic Year

**Casimir Strugielski, BS, RT(R), ASRT**
*Course Coordinator and Instructor of Record*
*Office: Clinics Rosalind Franklin University of Medicine and Science*
*Phone: 847-578-8435*
*Hours: Monday-Friday by appointment (contact Ms. Ulrich x8432)*

**Lecturers:**
**Dr. Robert Baron**
**Dr. Daniel Evans**
**Dr. Adam Fleischer**

4    ―――――――――――――――――――――――――――

**PROGRAMMATIC OUTCOMES:**

1. Graduates will pass the National Board of Podiatric Medical Examiners Part I and Part II examinations with an overall pass rate above the national average.
2. 100% of graduates will be placed in a CPME approved residency program.
3. The College will graduate students that have the necessary knowledge, skills, and attitudes for entry into residency training.
4. The College will graduate at least 90% of matriculated students.
5. Graduates will be capable of servicing their student loan debt.
6. The College will graduate students that understand the need for and have participated in community service.

5    ―――――――――――――――――――――――――――

6        202.    Dr. Abazari's right or privilege to a benefit, within a program or activity

7    receiving federal financial assistance, by the "placement services for program

8    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

9    20 USC §1094(a)(17).

10        203.    Dr. Abazari's right or privilege to a benefit, within a program or activity

11    receiving federal financial assistance, by the "placement services for program

1    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

2    20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

3          204.    Dr. Abazari's right or privilege to a benefit, within a program or activity

4    receiving federal financial assistance, by the "placement services for program

5    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

6    20 USC §1094(a)(21).

7          205.    Dr. Abazari's right or privilege to a benefit, within a program or activity

8    receiving federal financial assistance, by the "placement services for program

9    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

10    20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7).

11          206.    Dr. Abazari's right or privilege to a benefit, within a program or activity

12    receiving federal financial assistance, by the "placement services for program

13    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

14    20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7).

15          207.    Dr. Abazari's right or privilege to a benefit, within a program or activity

16    receiving federal financial assistance, by the "placement services for program

17    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

18    20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7).

19          208.    Dr. Abazari's right or privilege to a benefit, within a program or activity

20    receiving federal financial assistance, by the "placement services for program

21    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

22    20 USC §1094(a)(1).

1    209.    Dr. Abazari's right or privilege to a benefit, within a program or activity

2    receiving federal financial assistance, by the "placement services for program

3    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

4    20 USC §1094(a)(17).

5    210.    Defendant RFUMS knowingly and willingly made the statement "100% of

6    graduates will be placed in a CPME approved residency program" at least six different

7    times from 2008-2012 through the use of interstate wires, while directly denying Dr.

8    Abazari's right or privilege to a benefit, within a program or activity receiving federal

9    financial assistance, by the "placement services for program completers," and CIP Code

10   51.2101.

11   211.    Defendant RFUMS knowingly and willingly made statement "Graduates

12   will be capable of servicing their student loan debt" at least five different times through

13   the use of interstate wires, while directly denying Dr. Abazari's right or privilege to a

14   benefit, within a program or activity receiving federal financial assistance, by the

15   "placement services for program completers," and CIP Code 51.2101,

16   212.    Dr. Abazari was denied said benefits and services of "100% of graduates

17   will be placed in a CPME approved residency program," "Graduates will be capable of

18   servicing their student loan debt," while still being charged for those services, despite

19   numerous mandates under 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C.

20   §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC

21   §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC

22   §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC

23   §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

1  213.  RFUMS directly prevents and obstructs Dr. Abazari "capab[ility] of

2  servicing [his] student loan debt," while Dr. Abazari is still being charged on said loans—

3  now $272, 834.09:

4  Principal Balance 152,289.08 July 5, 2015; Outstanding Interest $16,160.71
5  Principal Balance 225,139.23 June 2, 2016; Unpaid Interest $2,540.93
6  Principal Balance 225,139.23 June 2, 2017; Unpaid Interest $17,524.86
7  Principal Balance 225,139.23 June 2, 2018; Unpaid Interest $32,554.30
8  Principal Balance 225,139.23 June 2, 2019; Unpaid Interest $47,694.86.
9
10  214.  RFUMS knowingly and willingly prevents and obstructs Dr. Abazari

11  "capab[ility] of servicing [his] student loan debt," by causing Dr. Abazari to incure

12  $110,174.09 above and beyond the average debt of 162,660 represented to "Incoming

13  Podiatry Students" by Defendant RFUMS "Financial Aid Office" for their Podiatry

14  program for Dr. Abazari upon entering:



15

16  215.  Dr. Abazari was actually victimized by Defendant RFUMS false statement

17  "100% of graduates will be placed in a CPME approved residency program" and

18  "Graduates will be capable of servicing their student loan debt," where Defendant

19  RFUMS failed to place Dr. Abazari in residency and he resultantly compiled $272,000 in

20  student loan debt, despite numerous mandates set forth or in accordance with 20 USC

21  §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20

22  USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant

1    to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7);

2    20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

3         216.   As noted by a screen shot from an email communication by Defendant

4    RFUMS, at least seventeen other students from Defendant RFUMS were actually

5    victimized by Defendant RFUMS false statements:

> **From:** Nancy Bryant <nancy.bryant@rosalindfranklin.edu>
> **Date:** March 26, 2013 at 8:15:19 AM PDT
> **To:** "Abazari, Armin" <armin.abazari@my.rfums.org>, "Campbell, Thomas3"
> <thomas.campbell@my.rfums.org>, "Castelein, Bryant" <bryant.castelein@my.rfums.org>,
> "Ciotola, Nicholas" <Nicholas.Ciotola@my.rfums.org>, "Delara, Marc3"
> <marc.delara@my.rfums.org>, "Deutsch, Gloria3" <gloria.deutsch@my.rfums.org>, "Domaas,
> Mark3" <mark.domaas@my.rfums.org>, "Hall, Samuel3" <samuel.hall@my.rfums.org>, "Hare,
> Daniel" <daniel.hare@my.rfums.org>, "Hussain, Syed3" <syed3.hussain@my.rfums.org>,
> "Kapila, Tania" <tania.kapila@my.rfums.org>, "Kramer, Nathan3"
> <nathan.kramer@my.rfums.org>, "Landers, Sabrina" <sabrina.landers@my.rfums.org>,
> "Luczkowski, Ernest Paul" <ernest.luczkowski@my.rfums.org>, "Musser, Bret3"
> <bret.musser@my.rfums.org>, "Richason, Jessica3" <jessica.richason@my.rfums.org>,
> "Schroeder, Christopher" <c.schroeder@my.rfums.org>, "Valabov, Jacob"
> <jacob.valabov@my.rfums.org>
> **Subject: Updated Preceptorship Information**
>
> Hello,
>
> Just a fyi...
>
> AAPPM updated their preceptorship info (attached).
>
> Also, Weil Foot & Ankle is accepting preceptor applications. If you are interested contact Harriet
> Kass hkass@weil4feet.com or 847.627.4962.

6

7         217.   As noted by a screen shot from an email communication Dr. Usman

8    Akram, at least ten of Defendant actually victimized by RFUMS, sought the advice of

9    counsel against RFUMS:

On Fri, Jun 28, 2013 at 12:11 PM, Usman Akram <utakram@gmail.com> wrote:
Hello again,

I communicated with Dr. Kansky recently.  He was meeting with two lawyers this week regarding the residency issue.

He also reported that ten people had contacted him from Scholl.

I urge the rest of you to contact him as well.

His email is: larry.kansky@gmail.com

Thanks and have a great weekend,

Usman Akram, DPM

Confidentiality Notice: DO NOT read, copy or disseminate this communication unless you are the intended addressee. This e-mail communication (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C Sections 2510-2521, contains confidential and/or privileged information intended only for the addressee. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender immediately via email to that you have received the communication in error. Please, delete it and any and all copies.

218.   Defendant RFUMS, with evil intent, specifically choses to package the false statements by the use of words "PROGRAMMATIC OUTCOMES," in all capital letters, screaming at students to grab their attention in the "OUTCOMES" they will be guaranteed—using "100%" for assurance—and should anticipate upon graduation.

219.   As noted by Screen Shots from 29, 2010 email wire communication, RFUMS systematically and with calculated effect, by and through the creation of specially created mass email system to targets students "SCPM20013," of which Dr. Abazari was a part, to lull students such as Dr. Abazari into a false sense of security by directing them to ""TRUST THE SYSTEM, TRUST YOUR FACULTY" (noting same pattern of capital letters emphasizing screaming) and "[faculty] will not mislead us" ("mislead" employing specific use of a legal term of art "mislead") and "when someone tell you to do something, simply do it":

From: **Class Officers SCPM 2013** <co-scpm2013@rfums.org>
Date: Wed, Sep 29, 2010 at 9:37 AM
Subject: CLASS UPDATES
To: SCPM2013 <SCPM2013@rosalindfranklin.edu>

Hello Everyone:

Attached to this email is a group of updates regarding the issues that were brought up in the last class meeting. Please read it and if you have any questions, please feel free to contact me.

Have a wonderful day!

Brian

**1 File**   16.7kB

Letter to the Class.docx
17kB

1

     a. There was one comment that was mentioned in each of the meetings that I attended over the past week; TRUST THE SYSTEM, TRUST YOUR FACULTY. This school has been around longer than any of us have been alive and is now the leading school for podiatric medical education. They must be doing something right, and we need to trust that they are doing everything in order to make us the best physicians that we can be. There will be challenges and they will make us work for it, but they will not mislead us or deny us of any information that is essential to our education. Therefore, when someone tells you to do something, simply do it, knowing that in some way, it will make you a better doctor.

2

3      220.     Defendant RFUMS were successful in its defrauding Dr. Abazari of his of

4   $200,000 in tuition, while not providing "100% of graduates will be placed in a CPME

5   approved residency program, " nor "Graduates will be capable of servicing their student

6   loan debt" for Dr. Abazari.

7      221.     Defendant RFUMS knowingly and willingly used interstate wires to

8   further their scheme to defraud Dr. Abazari and other students by allowing them the

9   specific ability to dispense syllabi in large volumes to students, containing the

10  misrepresentations, over the course of many years, while maintaining control over the

11  source to delete traces of the record.

12      222.    In every possible manner herein alleged, the RFUMS sought to capitalize

13  on Dr. Abazari's weakened physical condition, in calculated and coordinated attacks, to

1   increase physiological harm, and to overpower Dr. Abazari objections, using force and

2   inducing emotional submission—through a psychological state of learned helplessness:

3   

4   (Left—On or around February 7, 2016 )   (Right—On or around November 14-2010)

5   **CAUSE OF ACTION 8:**

6   **(WIRE FRAUD 18 U.S.C. §1341—RFUMS)**

7        223.    Dr. Abazari repeats and realleges each and every allegation contained in

8   paragraphs 1 through 222 as if fully set forth herein.

9        224.    Defendant acted with a scheme and plan to defraud Dr. Abazari by

10   extracting Federal Stafford Subsidized, Federal Stafford Unsubsidized, Federal Grad

11   Plus, loan money for the federal benefit

12        "a program that prepares individuals for the independent
13        professional practice of podiatric medicine, involving the
14        prevention, diagnosis, and treatment of diseases, disorders, and
15        injuries to the foot and lower extremities"
16
17   that it did not render.

18        225.    Defendant acted with a scheme and plan to defraud Dr. Abazari of Federal

19   Stafford Subsidized, Federal Stafford Unsubsidized, Federal Grad Plus, loan money for

20   the federal benefit of a "placement services for program completers" that it did not intend

21   to render, in the clear and present fact of statutory obligations: 20 USC §1094(a)(1); 20

22   USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC

23   §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20

USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

226. Defendant RFUMS admits and was aware that Dr. Abazari monies were federal monies by invoking the Family Education Rights & Privacy Act ("FERPA"), 20 U.S.C. 1232(g), regulations 34 CFR Part 99," upon a request for records by Dr. Abazari:

ROSALIND FRANKLIN UNIVERSITY
OF MEDICINE AND SCIENCE

**Authorization to Release Student Information**

**Return to:**
**Rosalind Franklin University of Medicine and Science**
**Registrar**
**3333 Green Bay Road**
**North Chicago, IL 60064**
**Phone (847) 578-3228 • Fax (847) 775-6559**

The non-directory information in your student educational record is confidential and protected by the Family Educational Rights & Privacy Act (FERPA). FERPA is also known as the Buckley Amendment, Statute 20 U.S.C. 1232(g), regulations 34 CFR Part 99. We cannot release certain information to another person without your written authorization. This form will allow our office to release specific information about you to the person(s) you designate below. For more information on the Federal Education Rights and Privacy Act, visit the Federal Department of Education: www.ed.gov/policy/gen/reg/ferpa/index.html

Name: Armin Abazari Date: 9/11/13
Program of Study: Podiatry
RFU ID: 463321
old ID number

**I authorize the Registrar to release information regarding the following:**

■ Entire Academic Record ■ Specific Information all 2009 signed enrollment agreem and/or contracts given to students to sign during orientation week 2009 specificly for grad class 2013

**To the person or agency listed below:**

| Name | Relationship | Address |
|---|---|---|
| Armin Abazari | Himself | 14 national place, Irvine, Ca |
| | | |

**Note**

- The third party must know the student's name, student ID, and current address
- Only limited information will be given over the telephone regardless if the Authorization to Release Information form is submitted

**I understand this authorization will remain in effect until I request, in writing or in person, that it be nullified.**

Signature: [signature] Date: 9/11/13

**Termination of Authorization to Release Student Information**

☐ I hereby revoke the Authorization to Release Information form on file with the Registrar.

Signature: ______ Date: ______

---

227. As noted by screen shots of electronic records, Defendant RFUMS had the intent to defraud Dr. Abazari in the not providing

"a program that prepares individuals for the independent professional practice of podiatric medicine, involving the

1          prevention, diagnosis, and treatment of diseases, disorders, and
2          injuries to the foot and lower extremities"
3
4   and not providing "placement services for program completers" to Dr. Abazari, in the

5   clear and present fact that they have funded residency positions, as noted by electronic

6   records:

7

# COLLEGE FUNDED RESIDENCIES
# TRAINING YEAR 1997-1998

**Dr. William Scholl College of Podiatric Medicine**

| Name of Program | Address | Director | Total # of Approved Positions | Total # Positions Funded by Your College |
|---|---|---|---|---|
| Colombia Kingwood Medical Center (Houston Podiatric Foundation) | 22999 U.S. Highway 59 Kingwood, TX 77339 | Randal Lepow, DPM | 5 – RPR 1 – PSR-12 4 – PSR-24 | 1 – RPR |
| DVAMC – Black Hills Health Care System | 113 Comanche Road Fort Meade, SD 57741 | Judd Sparagon, DPM | 4 – RPR | 1 – RPR |
| DVAMC – Central Alabama Health Care System (Tuskegee) | 2400 Hospital Road Surgical Service Pod (112B) Tuskegee, AL 36083 | Joel Brustein, DPM | 4 – RPR | 4 – RPR |
| DVAMC – Chicago Health Care System (Westside) | 820 S. Damen Avenue Chicago, IL 60680 | John Grady, DPM | 2 – RPR 1 – PSR-24 | 1 – RPR |
| DVAMC – Minneapolis | One Veterans Drive (112P) Minneapolis, MN 55417 | Greg Rifleman, DPM | 4 – POR | 1 – POR |
| DVAMC – North Chicago | Podiatry Unit (112) 3001 Greenbay Road North Chicago, IL 60064 | William Chagares, DPM | 4 – PPMR 1 – PSR-12 | 1 – PPMR |
| DVAMC – Palo Alto Health Care System | 3801 Miranda Avenue (112) Palo Alto, CA 94304 | Wilfred Laine, DPM | 5 – RPR 4 – PSR-12 | 2 – RPR |
| DVAMC – Tampa | 13000 Bruce B. Down Blvd. Tampa, FL 33612 | James Black, DPM, PhD | 7 – RPR | 3 – RPR |
| Lakeview Hospital | 10010 West Bluemound Rd Milwaukee, WI 53226 | Louis Lapow, DPM | 1 – PSR-12 | 1 – PSR-12 |
| Northern Virginia Podiatric Residency Program | 601 S. Carlin Spring Road Arlington, VA 22204 | Stephen Stern, DPM | 2 – PSR-24 | 1 – PSR-24 |
| Riverside Osteopathic Hospital | 150 Truax Street Trenton, MI 48183 | Victoria Anton-Athens, DPM | 1 – POR | 1 – POR |
| Scholl College of Podiatric Medicine | 1001 N. Dearborn Chicago, IL 60610 | Richard Pulla, DPM | 6 – RPR | 6 – RPR |
| Sinai Hospital Of Baltimore | 2401 W. Belvedere Baltimore, MD 21215 | David Cohen, DPM | 1 – PSR-12 | 1 – PSR-12 |
| St. Mary of Nazareth Hospital Center | 2233 West Division Street Chicago, IL 60622 | Thomas Kiely, DPM | 1 – RPR 1 – PSR-12 | 1 – RPR 1 – PSR-12 |
| Vancouver Hospital | 855 W. 12th Avenue Vancouver, British Colombia Canada V5Z 1M9 | Albert Mollica, DPM | 2 – PSR-12 | 1 – PSR-12 |
| Western Pennsylvania Hospital | 4800 Friendship Avenue Pittsburgh, PA 15224 | Alan Catanzariti, DPM | 3 – PSR-24 | 1 – PSR-24 |

1 _____

2        228.    As noted by screen shots of electronic records, Defendant RFUMS had the

3  intent to defraud Dr. Abazari in not providing

4        "a program that prepares individuals for the independent

5        professional practice of podiatric medicine, involving the

1    prevention, diagnosis, and treatment of diseases, disorders, and
2    injuries to the foot and lower extremities"
3
4  and not providing "placement services for program completers" to Dr. Abazari because

5  they have funded residencies positions at Columbia Kingwood Medical Center, 7

6  DVAMC hospitals, Lakeview Hospital, Northern Virginia Podiatric Residency Program,

7  Riverside Osteopathic Hospital, Scholl College of Podiatric Medicine, Sinai Hospital of

8  Baltimore, St. Mary of Nazareth Hospital Center, Vancouver Hospital, and Western

9  Pennsylvania Hospital:

### ROSTER OF RESIDENCY PROGRAMS BY SCHOOL

**BARRY UNIVERSITY SCHOOL OF PODIATRIC MEDICINE**
BUSPM - POR Program
BUSPM/Cedars Medical Center - PPMR
BUSPM/Cedars Medical Center - PSR-12
Decatur Hospital
Des Moines General Hospital
Doxey-Hatch Medical Center
DVAMC - Brockton-West Roxbury
DVAMC - Miami
DVAMC - New York, NY
DVAMC - North Chicago
DVAMC - Northport, NY
DVAMC - Tampa
DVAMC - West Palm Beach
Lee County Center for Foot & Ankle Surgery
Memorial Same Day - West
Palmetto General Hospital
Westchester General Hospital

**CALIFORNIA COLLEGE OF PODIATRIC MEDICINE**
CCPM - LAC/USC Medical Center
CCPM - Pacific Coast Hospital - POR
CCPM - Pacific Coast Hospital - PPMR
CCPM - Pacific Coast Hospital - PSR-24
Columbia Kingwood Medical Center (Houston Podiatric Foundation)
Community Hospital Medical Center
DVAMC - Loma Linda
DVAMC - Manhattan
DVAMC - Phoenix
DVAMC - San Francisco
DVAMC - Tucson

**COLLEGE OF PODIATRIC MEDICINE AND SURGERY**
CPMS - Orthopedic Program
CPMS - Primary Care Program
CPMS - Surgical Program

**OHIO COLLEGE OF PODIATRIC MEDICINE**
Community General Hospital
Doxey-Hatch Medical Center
Dunlap Memorial Hospital
DVAMC - Chillicothe
DVAMC - Denver
DVAMC - East Orange
DVAMC - Huntington
DVAMC - Lebanon
DVAMC - Richmond
DVAMC - Tampa
Harvard Community
Hu Hu Kam Memorial
Jewish Hospital of Cinncinati
Kaiser Permanente Medical Center
Kennedy Hospital System

10

113

Mineral Area Medical Center
Memorial Hospital of Bedford County
Park Medical Center
Riverside Osteopathic Hospital
Youngstown Osteopathic Hospital

**PENNSYLVANIA COLLEGE OF PODIATRIC MEDICINE**
DVAMC - Brooklyn/St. Albans
DVAMC - Coatesville
DVAMC - Northport
DVAMC - White River Junction
Elkins Park Hospital
Harris City Podiatric Surg. Res./Bellaire Hosp
Neumann Medical Center
New York Methodist Hospital
PCPM - Cooper Hospital Medical Center
PCPM - Orthopedic Residency
Sheehan Memorial Hospital
St. Francis Hospital-Mount Sinai Hospital - CT

**SCHOLL COLLEGE OF PODIATRIC MEDICINE**
Columbia Kingwood Medical Center (Houston Podiatric Foundation)
DVAMC - Black Hills Health Care System
DVAMC - Central Alabama Health Care System (Tuskegee)
DVAMC - Chicago Health Care System (Westside)
DVAMC - Minneapolis
DVAMC - North Chicago
DVAMC - Palo Alto Health Care System
DVAMC - Tampa
Lakeview Hospital
Northern Virginia Podiatric Residency Program
Riverside Osteopathic Hospital
Scholl College of Podiatric Medicine
Sinai Hospital of Baltimore
St. Mary of Nazareth Hospital Center
Vancouver Hospital
Western Pennsylvania Hospital

1

## SUMMARY INFORMATION

| | |
|---|---|
| BUSPM | Residents in school based programs receive salary and employee benefits as employees of Barry University. Residents located at other BUSPM funded residencies receive funding which is either sent directly to the program or to the resident. Fellowship grant provided to the third year resident of Hialeah Hospital only during their six-months participation at Hadassah Hospital in Jerusalem Israel. |
| CCPM | CCPM funds several different programs at different levels. DVAMC - San Francisco receives malpractice coverage for CCPM graduates. CCPM sponsored programs receive funding for stipends. Some programs also receive malpractice insurance. |
| CPMS | The PSR-24 has a stipend, all other programs are under general grant funding. Malpractice insurance is covered by the University. |
| OCPM | Stipend only. |

2

| | |
|---|---|
| PCPM | The college provides salary for all our funded residencies ($15,000). Health and malpractice insurance are also provided where necessary. |
| SCPM | These programs are as of March 15, 1997. This list is accurate as to the number of positions funded, however, the number of entry level positions may change at a particular program. Also, more programs may be added after this printing. Funding is sent to the institution, not the resident. |

3

4

1    229.    As noted by several screenshots of Defendant RFUMS's records,

2   Defendant RFUMS had the intent to defraud Dr. Abazari in not providing

3        "a program that prepares individuals for the independent professional practice of
4        podiatric medicine, involving the prevention, diagnosis, and treatment of diseases,
5        disorders, and injuries to the foot and lower extremities"
6
7   and not provide "placement services for program completers" to Dr. Abazari because

8   they acquired accreditation specifically for "Podiatric Medicine and Surgical Residency"

9   in addition to and separate from their Doctor of Podiatric Medicine accreditation:

ROSALIND FRANKLIN UNIVERSITY OF MEDICINE AND SCIENCE
ACCREDITATION SUMMARY

| Unit | Program | Accrediting Agency | Status |
|---|---|---|---|
| **Rosalind Franklin University of Medicine & Science** | | | |
| | Overall accreditation as degree granting institution – Bachelor to Doctorate | The Higher Learning Commission/North Central Association of Colleges and Schools (HLC/NCA) | Full |
| **Chicago Medical School** | | | |
| | Doctor of Medicine | Liaison Committee on Medical Education (LCME) | Accredited, on probation |
| | Continuing Medical Education | Accreditation Council for Continuing Medical Education (ACCME) | Full |
| **Dr. William M. Scholl College of Podiatric Medicine** | | | |
| | Doctor of Podiatric Medicine | Council on Podiatric Medical Education (CPME) | Full |
| | Continuing Podiatric Medical Education | Council on Podiatric Medical Education | Full |
| | | IFDPR–Licenses School to offer | Full |
| | Podiatric Medicine and Surgical Residency | CPME | Full |
| **School of Graduate and Postdoctoral Studies** | | | |
| | Medical Laboratory Immunology | Committee on Postdoctoral Education Programs | |
| | *Post-graduate Program | (CPEP) of the American College of Microbiology | Full |

12    230.    As noted by screen shots of electronic records, Defendant RFUMS had the

13   intent to defraud Dr. Abazari in the not providing

14        "a program that prepares individuals for the independent
15        professional practice of podiatric medicine, involving the
16        prevention, diagnosis, and treatment of diseases, disorders, and
17        injuries to the foot and lower extremities"
18
19   and not providing "placement services for program completers" to Dr. Abazari, despite

20   admitting from 2008-2012, through 16 of its faculty members, on at least 6 separate

21   occasions, the express statement "100% of graduates will be placed in a CPME approved

1   residency program," and despite mandates set forth or in accordance with 20 USC

2   §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20

3   USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant

4   to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7);

5   20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

6          231.   As noted within two screen shots of Defendant RFUMS Applied

7   Biomechanics Clinical Capstone syllabus, taught by Dr. Beth Jarrett, Dr. David Kibrit,

8   Mr. Ryan Cruz, Dr. Neil Horsley, Mr. Steve Kim, and Dr. Bijan Najafi, transmitted to

9   students through the use of interstate wire communications, Defendant RFUMS makes

10  the false statement "100% of graduates will be placed in a CPME approved residency

11  program" through the use of interstate wire transmissions:

12



**Applied Biomechanics Capstone Clinical Experience (PAPB705)**

**Syllabus**

**Department of Applied Biomechanics**
*Dr. William M. Scholl College of Podiatric Medicine*

**2011 - 2012 ACADEMIC YEAR**

Co-Course Coordinators:
Beth Jarrett, DPM, C.Ped.
G704A, Ext. 8415
Beth.Jarrett@rosalindfranklin.edu
Office hours: M,W,F noon-1:00pm

David Kibrit, DPM
Ext. 8448
David.Kibrit@rosalindfranklin.edu
Office hours: By appointment only

Administrative Assistant:  Linda Miranda
Ext. 8412
Linda.Miranda@rosalindfranklin.edu

Instructional Staff:
Ryan Crews
Neil Horsley
Steve Kim
Bijan Najafi

March 8, 2011

1 _____

**Programmatic Outcomes**

#1     Graduates will pass the National Board of Podiatric Medical Examiners
       Part I and Part II examinations.

#2     Graduates will pass the Clinical Competency Exam

#3     100% of graduates will be placed in a CPME approved residency program.

#4     The College will graduate students that have the necessary knowledge,
       skills, and attitudes for entry into residency training.

2      #5     The College will graduate at least 90% of matriculated students.

3          232.    Dr. Abazari's right or privilege to a benefit, within a program or activity

4    receiving federal financial assistance, by the "placement services for program

1    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

2    20 USC §1094(a)(17).

3          233.    Dr. Abazari's right or privilege to a benefit, within a program or activity

4    receiving federal financial assistance, by the "placement services for program

5    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

6    20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

7          234.    Dr. Abazari's right or privilege to a benefit, within a program or activity

8    receiving federal financial assistance, by the "placement services for program

9    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

10    20 USC §1094(a)(21).

11          235.    Dr. Abazari's right or privilege to a benefit, within a program or activity

12    receiving federal financial assistance, by the "placement services for program

13    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

14    20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7).

15          236.    Dr. Abazari's right or privilege to a benefit, within a program or activity

16    receiving federal financial assistance, by the "placement services for program

17    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

18    20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7).

19          237.    Dr. Abazari's right or privilege to a benefit, within a program or activity

20    receiving federal financial assistance, by the "placement services for program

21    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

22    20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7).

1       238.   Dr. Abazari's right or privilege to a benefit, within a program or activity

2   receiving federal financial assistance, by the "placement services for program

3   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

4   20 USC §1094(a)(1).

5       239.   Dr. Abazari's right or privilege to a benefit, within a program or activity

6   receiving federal financial assistance, by the "placement services for program

7   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

8   20 USC §1094(a)(17).

9       240.   As noted by screen shot of Defendant RFUMS communication from

10   November 2, 2009, Defendants specifically used interstate wire to transmit and acquire

11   Federal Stafford Subsidized, Federal Stafford Unsubsidized, Federal Grad Plus, loan

12   monies:



13

14

1     241.   As noted by screen shot of Defendant RFUMS communication from

2  February 26, 2010, Defendants specifically used interstate wire to transmit and acquire

3  Federal Stafford Subsidized, Federal Stafford Unsubsidized, Federal Grad Plus, loan

4  monies:



**E-Check Payment Advice**

From:  student.services@rosalindfranklin.e

To:  arminabazari@yahoo.com

Rosalind Franklin University

*DO NOT REPLY TO THE "FROM" ADDRESS ABOVE*

Dear Mr. Armin Abazari, At 12:01am on the next business day, a direct payment will be credited to the bank account you specified when you signed up for direct deposit. Please check with your financial institution to verify receipt before writing checks or attempting withdrawals.

If you have any questions, DO NOT REPLY to this email. If you are a STUDENT, please send an email to student.services@rosalindfranklin.edu If you are STAFF or an outside vendor, please send an email to the Business Office at thomas.buns@rosalindfranklin.edu

Routing Number   : 071000013
Bank Account Number: ****4469
E-Check Number   : E0013771
E-Check Date     : 02/26/10
E-Check Amount   : 3,544.72

Account Credit Bal Refun        3,544.72
                    Total:      3,544.72

5

6     242.   As noted by screen shot of Defendant RFUMS communication from

7  February 28, 2011, Defendants specifically used interstate wire to transmit and acquire

8  Federal Stafford Subsidized, Federal Stafford Unsubsidized, Federal Grad Plus, loan

9  monies:

**E-Check Payment Advice**

From:   student.services@rosalindfranklin.e

To:   arminabazari@yahoo.com

Rosalind Franklin University

"DO NOT REPLY TO THE "FROM" ADDRESS ABOVE"

Dear Mr. Armin Abazari, A direct payment will be processed today to
the bank account you specified when you signed up for direct
deposit. Depending on which bank you use, it will take between one
and three business days for this payment to actually get credited to
your account. Please check with your financial institution to verify
receipt before writing checks or attempting withdrawals.

If you have any questions, DO NOT REPLY to this email. If you are a
STUDENT, please send an email to
student.services@rosalindfranklin.edu If you are STAFF or an outside
vendor, please send an email to the Business Office at
thomas.buns@rosalindfranklin.edu

Routing Number   : 071000013
Bank Account Number; ****4469
E-Check Number   : E0019728
E-Check Date   : 02/28/11
E-Check Amount   : 3,488.00

Account Credit Bal Refun           3,488.00
Total:   3,488.00

1

2        243.    As noted by screen shot of Defendant RFUMS communication from

3   February 13, 2012, Defendants specifically used interstate wire to transmit and acquire

4   Federal Stafford Subsidized, Federal Stafford Unsubsidized, Federal Grad Plus, loan

5   monies:

**E-Check Payment Advice**

From:   student.services@rosalindfranklin.e

To:   arminabazari@yahoo.com

Rosalind Franklin University

"DO NOT REPLY TO THE "FROM" ADDRESS ABOVE"

Dear Mr. Armin Abazari, A direct payment will be processed today to
the bank account you specified when you signed up for direct deposit.
Depending on which bank you use, it will take between one and three
business days for this payment to actually get credited to your
account. Please check with your financial institution to verify
receipt before writing checks or attempting withdrawals.

If you have any questions, DO NOT REPLY to this email. If you are a
STUDENT, please send an email to
student.services@rosalindfranklin.edu If you are STAFF or an outside
vendor, please send an email to the Business Office at
thomas.buns@rosalindfranklin.edu

Routing Number   : 071000013
Bank Account Number: ****4469
E-Check Number   : E0024938
E-Check Date   : 02/13/12
E-Check Amount   : 1,556.00

Cash Advance              1,556.00
Total:   1,556.00

6

121

244.    Defendant RFUMS knowingly and willingly extracted 200,000 from Dr.

Abazari Federal Stafford Subsidized, Federal Stafford Unsubsidized, Federal Grad Plus,

loan money for a federal benefit

> "a program that prepares individuals for the independent
> professional practice of podiatric medicine, involving the
> prevention, diagnosis, and treatment of diseases, disorders, and
> injuries to the foot and lower extremities"

that they did not render under mandates set forth or in accordance with 20 USC

§1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20

USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant

to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7);

20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

245.    Defendant RFUMS knowingly and willingly acquired Dr. Abazari's

Federal Stafford Subsidized, Federal Stafford Unsubsidized, Federal Grad Plus, loan

money while knowing it would not provide the federal benefit of "placement services for

program completers," despite statutory mandates pursuant to 20 USC §1094(a)(1); 20

USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC

§1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20

USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20

USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

246.    RFUMS directly has and continues to impair Dr. Abazari's ability to

"service" his rapidly rising student loan debt of $272,834.09:

Principal Balance 152,289.08 July 5, 2015; Outstanding Interest $16,160.71
Principal Balance 225,139.23 June 2, 2016; Unpaid Interest $2,540.93
Principal Balance 225,139.23 June 2, 2017; Unpaid Interest $17,524.86
Principal Balance 225,139.23 June 2, 2018; Unpaid Interest $32,554.30
Principal Balance 225,139.23 June 2, 2019; Unpaid Interest $47,694.86.

1
2       247.    RFUMS Scheme to defraud has actually caused Dr. Abazari to accumulate

3   approximately $110,174.09, and rising, in debt above and beyond the average debt of

4   $162,660 represented to "Incoming Podiatry Students" by Defendant RFUMS "Financial

5   Aid Office" for their Podiatry program for Dr. Abazari upon entering:



6

7       248.    Dr. Abazari was actually victimized as a result of Defendant RFUMS

8   having knowingly and willingly acquired Dr. Abazari of Federal Stafford Subsidized,

9   Federal Stafford Unsubsidized, Federal Grad Plus, loan money for a federal benefit

10          "a program that prepares individuals for the independent
11          professional practice of podiatric medicine, involving the
12          prevention, diagnosis, and treatment of diseases, disorders, and
13          injuries to the foot and lower extremities"
14
15  they agreed to provide, and charged for, but did not provide upon graduation.

16      249.    Dr. Abazari was actually victimized by Defendant RFUMS knowingly and

17  willingly having acquired Federal Stafford Subsidized, Federal Stafford Unsubsidized,

18  Federal Grad Plus, loan money for a federal benefit "placement services for program

19  completers" RFUMS agreed to provide, and charged for, but did not provide upon

20  graduation.

1    250.   As noted by a screen shot from an email communication by Defendant

2    RFUMS, at least seventeen other students from Defendant RFUMS were actually

3    victimized by Defendant RFUMS failure to provide placement:

> **From:** Nancy Bryant <nancy.bryant@rosalindfranklin.edu>
> **Date:** March 26, 2013 at 8:15:19 AM PDT
> **To:** "Abazari, Armin" <armin.abazari@my.rfums.org>, "Campbell, Thomas3"
> <thomas.campbell@my.rfums.org>, "Castelein, Bryant" <bryant.castelein@my.rfums.org>,
> "Ciotola, Nicholas" <Nicholas.Ciotola@my.rfums.org>, "Delara, Marc3"
> <marc.delara@my.rfums.org>, "Deutsch, Gloria3" <gloria.deutsch@my.rfums.org>, "Domaas,
> Mark3" <mark.domaas@my.rfums.org>, "Hall, Samuel3" <samuel.hall@my.rfums.org>, "Hare,
> Daniel" <daniel.hare@my.rfums.org>, "Hussain, Syed3" <syed3.hussain@my.rfums.org>,
> "Kapila, Tania" <tania.kapila@my.rfums.org>, "Kramer, Nathan3"
> <nathan.kramer@my.rfums.org>, "Landers, Sabrina" <sabrina.landers@my.rfums.org>,
> "Luczkowski, Ernest Paul" <ernest.luczkowski@my.rfums.org>, "Musser, Bret3"
> <bret.musser@my.rfums.org>, "Richason, Jessica3" <jessica.richason@my.rfums.org>,
> "Schroeder, Christopher" <c.schroeder@my.rfums.org>, "Valabov, Jacob"
> <jacob.valabov@my.rfums.org>
> **Subject: Updated Preceptorship Information**
>
> Hello,
>
> Just a fyi...
>
> AAPPM updated their preceptorship info (attached).
>
> Also, Weil Foot & Ankle is accepting preceptor applications. If you are interested contact Harriet
> Kass hkass@weil4feet.com or 847.627.4962.

4

5    251.   As noted by a screen shot from an email communication Dr. Usman

6    Akram, at least ten of those victimized by RFUMS sought legal council against

7    Defendant RFUMS:

On Fri, Jun 28, 2013 at 12:11 PM, Usman Akram <utakram@gmail.com> wrote:

Hello again,

I communicated with Dr. Kansky recently.  He was meeting with two lawyers this week regarding the residency issue.

He also reported that ten people had contacted him from Scholl.

I urge the rest of you to contact him as well.

His email is: larry.kansky@gmail.com

Thanks and have a great weekend,

Usman Akram, DPM

Confidentiality Notice: DO NOT read, copy or disseminate this communication unless you are the intended addressee. This e-mail communication (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C Sections 2510-2521, contains confidential and/or privileged information intended only for the addressee. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender immediately via email to that you have received the communication in error. Please, delete it and any and all copies.

252.   As noted by Screen Shots from 29, 2010 email wire communication from SCPM 2013 President, Defendant RFUMS, used Student Officers to lull students into false sense of security and to not question Defendant RFUMS, while it extracted tuition payments—emphasized by the use of capital letters, to "TRUST THE SYSTEM, TRUST YOUR FACULTY", and assurance to Dr. Abazari and others that "[Defendant RFUMS] will not mislead us or deny us any information that is essential to our education", and expressly stating that when told "to do something, simply do it":

From: Class Officers SCPM 2013 <co-scpm2013@rfums.org>
Date: Wed, Sep 29, 2010 at 9:37 AM
Subject: CLASS UPDATES
To: SCPM2013 <SCPM2013@rosalindfranklin.edu>

Hello Everyone:

Attached to this email is a group of updates regarding the issues that were brought up in the last class meeting. Please read it and if you have any questions, please feel free to contact me.

Have a wonderful day!

Brian

1 File    16.7kB

Letter to the Class.docx
17kB

     a.   There was one comment that was mentioned in each of the meetings that I attended over the past week; TRUST THE SYSTEM, TRUST YOUR FACULTY. This school has been around longer than any of us have been alive and is now the leading school for podiatric medical education. They must be doing something right, and we need to trust that they are doing everything in order to make us the best physicians that we can be. There will be challenges and they will make us work for it, but they will not mislead us or deny us of any information that is essential to our education. Therefore, when someone tells you to do something, simply do it, knowing that in some way, it will make you a better doctor.

253.    Defendant RFUMS were successful in its defrauding Dr. Abazari of his full tuition money of $200,000 from Federal Stafford Subsidized, Federal Stafford Unsubsidized, Federal Grad Plus for the benefit

"a program that prepares individuals for the independent professional practice of podiatric medicine, involving the prevention, diagnosis, and treatment of diseases, disorders, and injuries to the foot and lower extremities"

and "placement services for program completers" that they did not provide pursuant to mandates set forth or in accordance with 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

254.    Defendant RFUMS knowingly and willingly used interstate wires to further their scheme to funnel Federal Stafford Subsidized, Federal Stafford Unsubsidized, Federal Grad Plus in Dr. Abazari's name for federal benefits and services they never provided pursuant to mandates set forth or in accordance with 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant

1   to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7);

2   20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

3   255.   In every possible manner herein alleged, the RFUMS sought to capitalize

4   on Dr. Abazari's weakened physical condition, in calculated and coordinated attacks, to

5   increase physiological harm, and to overpower Dr. Abazari objections, using force and

6   inducing emotional submission—through a psychological state of learned helplessness:



7

8   (Left—On or around February 7, 2016)   (Right—On or around November 14-2010)

9   **<u>CAUSE OF ACTION 9:</u>**

10   **<u>(WIRE FRAUD 18 U.S.C. §1341—APMA)</u>**

11   256.   Dr. Abazari repeats and realleges each and every allegation contained in

12   paragraphs 1 through 255 as if fully set forth herein.

13   257.   Defendant American Podiatric Medical Association ("APMA") devised

14   and participated in a scheme and plan to defraud Podiatry students of money for

15   residency placement benefits and services, that would be charged for, but never offered.

16   258.   Screen shot from an article published by Podiatry Today on November

17   2000 called "Are The Colleges In A Crises Situation?" by Stefanie Small, APMA and

18   colleges of Podiatric Medicine, with knowledge and intent, devised a "game plan to beef

19   of enrollment numbers":

In fact, as this issue went to press, the American Podiatric Medical Association (APMA) was set to hold a weekend of meetings at the end of October with representatives from the seven colleges, students and health care advisors from colleges around the country. The goal of the meetings was to come up with a game plan to beef up the enrollment numbers, according to Christian Robertozzi, DPM, chairman of the recruitment subcommittee for the APMA.

259.    As noted by screen shot from an article published by Podiatry Today on November 2000 called "Are The Colleges In A Crises Situation?", by Stefanie Small, in effort to figure out "What Students Will Pay", the APMA with knowledge and intent assisted and facilitated the operation by having "conducted an online survey", using interstate wires, to "help the colleges recruit more students":

**What Students Will Pay**

The American Podiatric Medical Association recently conducted an online survey to learn about how and when podiatric physicians choose to go into the field. The results will be used by the Recruitment Subcommittee of the Education Committee of the APMA to help in developing a plan to help the colleges recruit more students.

260.    As noted by a screen shot of the American Colleges of Podiatric Medicine records, the APMA and colleges of podiatric medicine acted with intent to defraud podiatry students, by devising and participating in a plan to acquire money in exchange for residency placement they would not offer, where the APMA in conjunction with other organizations created an ad hoc Committee on the Balance between Graduates and Residency Positions" ("Balance Committee") in 2004 to assess the "correlation between the number of podiatric school graduates and the number of qualified podiatric residency positions" as result of the "expected shortfall....of available residency positions":

**AACPM ad hoc Committee on the Balance between Graduates and Residency Positions
"Balance Committee"**

In August 2004, The American Association of Colleges of Podiatric Medicine (AACPM) Board of Directors established an ad hoc Committee of the Board to assess the correlation between the number of podiatric school graduates and the number of qualified podiatric residency positions. The charge to the Committee is to "collect data, analyze class size and enrollments and approved residency positions for the purposes of recommending strategies to ensure that there are enough entry-level residency positions for each graduating podiatric medical student."

In July 2010, the Committee's charge was expanded to include the establishment of a comprehensive strategy for a cohesive approach to residency development.  AACPM began seeking a National Residency Development Facilitator dedicated to establishing sufficient residency positions for graduates of the Colleges of Podiatric Medicine.  In June 2011, Edwin Wolf, DPM was hired to spearhead this project and remains focused on, but not limited to:

- Erasing the expected shortfall and raise the number of available residency positions to 110% of the graduating class numbers
- Opening up new sites within hospitals with established residency programs other than podiatry and/or in health science centers
- developing a core of mentors able to provide insight and perspective on the process of development and added value of a podiatric residency to hospital administrators.

There are a tremendous amount of resources and support for anyone who may be interested in starting a residency, improving their current residency program, or simply wanting to help with this initiative.  Please reach out to the following contacts:

National Residency Facilitator:  Edwin Wolf, DPM, at ewolf@aacpm.org or call (212) 874-0609.

Colleges of Podiatric Medicine:
http://www.aacpm.org/pdf\Institutional_Residency_Development_Contacts.pdf

CPME:
http://www.cpme.org/residencies/content.cfm?ItemNumber=2424&&navItemNumber=2244

APMA:  http://www.apma.org/education/content.cfm?ItemNumber=1357&navItemNumber=560

1

2          261.     APMA, in conjunction with RFUMS, "expected shortfall....of available

3    residency positions," by directly contacting Dr. Abazari through surveys, which were

4    then sent to the Residency Balance Committee:

**APMSA**

To: SCPM2012,  SCPM2013
* Reminder: Residency Survey Responses Needed *

September 30, 2010  12:03 PM

Inbox - Google

SCPM 2012 and 2013:

For those that have not done so already, please complete the following survey today. We would like at least 20 more responses before sending our results to the
Residency Balance Committee.

http://www.surveymonkey.com/s/986VSYZ

**APMSA**

1

2          262.     As noted by a screen shot of the APMA's records, APMA had the intent to

3    defraud podiatry students, where the Board of Trustee's of the APMA, went to and

4    sought assistance from the White House, in charge of the United States Department of

5    Education, and material support, in furtherance of their scheme and plan to defraud

6    podiatry students, of money for benefits and service of residency placement that knew the

7    Colleges would charge for, and not provide upon graduation:



Members of the Board of Trustees of the American Podiatric Medical Association enjoyed a private meeting
with President Bill Clinton at the White House during sessions at APMA's recent annual meeting in
Washington, DC. **FRONT ROW**, from left: Sheldon Willens, DPM, Hollywood, Florida, retiring president;
Marc D. Lenet, DPM, Baltimore, president; Mr. Clinton; and Christian A. Robertozzi, DPM, Newton, New
Jersey. **MIDDLE ROW**, from left: Robert D. Sowell, DPM, Oklahoma City; Theresa Conroy, DPM,
Philadelphia, treasurer; David Schofield, DPM, Elmira, New York; and Werner Strupp, JD, Washington, DC,
APMA general counsel. **BACK ROW**, from left: Richard B. Viehe, DPM, Santa Ana, California; Ronald S.
Lepow, DPM, Houston, vice president; Terence B. Albright, DPM, Chicago, president elect; H. F. Brown, III,
DPM, Little Rock, Arkansas, past president; J. D. Ferritto, Jr., DPM, Grove City, Ohio; Lloyd S. Smith, DPM,
Newton Center, Massachusetts; and Harold B. Glickman, DPM, Washington, DC.

8

1    263.    As noted by screen shots of Mid-winter 2005 meeting minutes and

2    Sponsored by the APMA Board of Trustees, the American Podiatric Medicine Student

3    Association ("APMSA") admits—and APMA then adopts this admission—that the

4    APMA caused "efforts in the area of promotion and marketing of the podiatric medical

5    profession [that] made a significant impact on reinvigorating student interest in pursuing

6    careers in podiatric medicine":

<u>APMSA MID-WINTER MEETING</u>
February 24-26, 2005
SANFRANCISCO, CA

*I. OPENING PROTOCOL*
    A.  **CALL TO ORDER/OPENING STATEMENTS**: President Penney called the meeting to order at 6:05pm.
    B.  **INTRODUCTION OF MEMBERS AND ROLL CALL (215-218)**: All were in attendance except Patrick Hall and Matt Sorenson.
    C.  **PRESENTATION OF NEW DELEGATES TO THE HOUSE**
    D.  **ADDITIONS TO AGENDA**: See NEW BUSINESS.
    E.  **SCHEDULE OF MEETINGS (6)**
    F.  **CONSTITUTION AND BYLAWS (7-15)**
    G.  **PROCEDURES MANUAL (16-33)**
    H.  **RESOLUTIONS (34-40)**
    I.  **SHORT TERM GOALS (41-42)**

7

**DD. REVISIST RESOLUTION MAX05 – MR. MINARA (165 DD):** Mr. Minara MOVES that the APMSA cosponsor APMA Resolution MAX05 (POLICY) ENROLLMENTS IN RELATION TO TWO-YEAR RESIDENCY POSITIONS.

**Whereas;** The APMA House of Delegates is on record that a minimum requirement of two (2) years of Graduate Medical Education (GME) be required for board eligibility or qualification (see Resolution No. 58-95);

**Whereas;** The recognized certifying boards have implemented the two-year residency requirement;

**Whereas;** The APMA House of Delegates also is on record that the colleges of podiatric medicine coordinate class size so as to reflect the number of available residency positions (see Resolution No. 4-96);

**Whereas;** The efforts of APMA over the past three and one-half years in the area of promotion and marketing of the podiatric medical profession is having a significant impact on reinvigorating student interest in pursuing careers in podiatric medicine;

**Whereas;** The student applicant pool is showing clear signs of recovering to the levels in place in the early 1990s and, as a result, the number of graduates likely will soon return to former levels;

**Whereas;** The number of available two-year residency positions began to retrench during the years when enrollments were lower and the number of graduates declined;

**Whereas;** The Council on Podiatric Medical Education has specific policies and procedures for colleges to seek authorization to increase their enrollments, requiring colleges to seek prior approval before increasing the maximum number of students to be matriculated in the first-year class in a given year; and

**Whereas;** The Council informs each college of its maximum number of students to be matriculated in the first-year class taking into consideration the current teaching capabilities of the college;

**Resolved;** That the House of Delegates reconfirms Resolution No. 4-96, reminding the colleges of podiatric medicine of their conjoint ethical and moral responsibilities to coordinate class size so as to reflect the number of available two-year residency positions; and

**Resolved;** That the House of Delegates supports the policies and procedures of the Council on Podiatric Medical Education which ensure that colleges of podiatric medicine limit their enrollments to authorized numbers and require that proposed increases be justified by current teaching capabilities.

**SPONSORED BY:** APMA BOARD OF TRUSTEES
**FINANCIAL IMPACT:** $0

**SECONDED. CARRIED.**

264.     As noted by screen shots from Defendant APMA, acting in furtherance of the scheme to defraud Podiatry students, by knowingly and willingly publishing a false and misleading Workforce Study on December 2007 and disseminating it through the use of interstate wires:

**Podiatric Medicine Workforce Study**

**December 2007**

Prepared by

Center for Health Workforce Studies
School of Public Health, University at Albany
7 University Place, B334
Rensselaer, NY 12144
518-402-0250

1

## Preface

This report was prepared to provide insights about the future of the podiatric medicine profession to the leadership of the American Podiatric Medicine Association (APMA). Its primary focus is on the results of a number of statistical models that estimate the future supply of and demand for podiatric physicians in the United States. In addition, it provides a variety of historical data on the profession which were the findings of a number of interim analyses performed to support the design of the projection models. A separate report has been prepared to document the methods used in the projection models.

This report was prepared by staff of the Center for Health Workforce Studies at the School of Public Health, University at Albany, State University of New York. The principal investigator was Paul Wing, the deputy director of the Center. He was assisted in the study by Gaetano Forte, senior associate, and Mark Dionne, assistant director at the Center. The project was supported by a contract with the APMA.

The assistance of the APMA project officer, Dr. James Christina, is gratefully acknowledged. The advice of a formal project advisory committee is also acknowledged. Much of the data used in the projection models originated in earlier APMA surveys and studies.

Questions about the project or the report can be directed to Dr. Wing at 518-402-0250, or via e-mail at pow01@health.state.ny.us.

2

3    265.    As noted by screen shots of the APMA's Workforce Study, Defendant

4  APMA acted with intent and in furtherance of an enrollment scheme and plan to defraud

5  podiatry students, of money and placement benefits, by devising the actual plans for the

6  fraud—"Planned Expansion," "Planned Expansion plus 10% one-time increase in 2012,"

7  "Planned Expansion plus 10% increase plus one additional DPM school in 2017,"

1     "Planned Expansion plus 10% increase plus additional schools in 2017 and 2021," –that

2     would provide structure on how podiatry schools were to effectuate defrauding Podiatry

3     students money for benefits in residency placement they would not provide, pursuant to

4     mandates set forth or in accordance with 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18

5     U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20

6     USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC

7     §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC

8     §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7):

**Supply and Demand Forecasts for Podiatric Physicians**

This report summarizes the results of statistical forecasting models to estimate the impact on the supply of podiatric physicians of five different scenarios of the production of new podiatric physicians, all of which are adjusted for attrition. It also presents a number of projections of demographic and illness trends that are related to the demand for podiatric medicine services.

The five scenarios examine different options for future production of DPMs by the podiatric medicine schools in the U.S. Each is summarized briefly below.

*Scenario 1: Status Quo*

This scenario assumes current production levels continue into the future. It incorporates a modest increase in graduations out to 2010 expected as a result of actual enrollment and applicant increases in recent years. This increase levels off in 2010 at 486 grads per year (adjusted for attrition), the last year for which there are reliable estimates of the actual total class size.

*Scenario 2: Planned Expansion (new school at Pomona, CA)*

Scenario 2 is the same as Scenario 1, but adds the planned DPM school in Pomona, CA. Its first graduating class is expected in 2013, and it will produce about 50 DPM graduates per year after that. Thus, this forecast adds 50 DPMs annually to the supply starting in 2013. The total number of DPM graduates per year in the U.S. from 2013 on under this scenario will be 536.

*Scenario 3: Planned Expansion plus 10% one-time increase in 2012*

Scenario 3 is the same as Scenario 2, but in addition it includes a one-time permanent 10% increase in DPM grads for all existing schools beginning in 2012 (the earliest an immediate increase in class size could actually impact graduations). The total number of graduates per year from 2013 on under this scenario will be 590.

*Scenario 4: Planned Expansion plus 10% increase plus one additional DPM school in 2017*

Scenario 4 has the same specifications as Scenario 3, but also adds an additional school that would graduate its first class in 2017. The class size for the new school is 55 (the median class size at current schools). The total number of graduates per year from 2017 on under this scenario will be 645.

*Scenario 5: Planned Expansion plus 10% increase plus additional schools in 2017 and 2021*

Scenario 5 has the same specifications as Scenario 4, and also adds another new school that graduates its first class in 2021. The graduating class for this new school is also 55. The total number of graduates per year from 2021 on under this scenario will be 700. This number is slightly larger than the peak historical production of 680 that occurred in 1995-96.

The production of new DPM graduates under each of the five scenarios is shown graphically in Figure 2. Achieving these production levels assumes that student demand for entry into podiatric medicine will be sufficient to fill all of the approved programs.

Figure 3 presents estimates of the supply of DPMs per 100,000 population in the U.S. under the five different scenarios. The figure also shows "standardized" projections of four different factors thought to be especially relevant to the demand for foot-related health services, including total population, the percentage of the population age 65 and older, the percentage of the population that is obese, and the percentage of the population with diabetes.

2

9

1      266.   Defendant APMA devised its plans with the intent to further target and

2  attack minority students, like Dr. Abazari, as an Iranian Shia Muslim:

**Demographic Characteristics**

Table 2 shows that podiatric physicians in 2000 were predominantly male (approximately 74%) and non-Hispanic White (approximately 85%). Graduates of podiatric medical programs in the 1999-2000 academic year, however, showed greater diversity than the profession as a whole. There were slightly more women (30.4%) among graduates, and substantially more minorities. Only 69% of podiatry graduates in 1999-2000 were non-Hispanic White, while 16% were Asian or Pacific Islander and 7% were Black/African-American. Hispanics/Latinos, who made up 12.6% of the U.S. population in 2000, constituted only 3% of podiatry graduates in that year.

**Table 2. Podiatric Physicians and Podiatry Graduates, Sex & Race/Ethnicity, U.S., 2000**

| Demographic Category | Podiatric physicians 2000 | Podiatry Grads, '99-'00 | U.S. Pop, 2000 |
|---|---|---|---|
| Female | 26.0% | 30.4% | 51.2% |
| Non-Hispanic White | 85.0% | 68.7% | 69.4% |
| Black/ African-American | * | 6.9% | 11.8% |
| American Indian/ Alaska Native | * | 0.0% | 0.6% |
| Asian & Pacific Islander | * | 15.6% | 3.8% |
| Hispanic/ Latino | * | 3.0% | 12.6% |

3

4      267.   In furtheraud of a scheme to defraud podiatry students, the APMA

5  created a specially designed forum through the use of interstate wires, called the APMA

6  CEO Forum, "a blog by APMA Executive Director and CEO Glenn B. Gastwirth, DPM."

7      268.   As noted by a screen shot "a blog by APMA Executive Director and CEO

8  Glenn B. Gastwirth, DPM", Defendant APMA was placed on notice of "not accepting

9  more students than residency slots...for the immediate crises" by Mr. Roody Samami on

10  September 1, 2010:

**Roody Saminni says:**
September 1, 2010 at 5:57 pm

How about requiring school, residency and conferences to have course / lectures on starting a residency for the longterm crisis? How about for the short-term crisis creating an interim for residency or somehow for a student's hometown podiatrist, or even within the school clinic starting a program for "6th year" students? Another long-term goal would be to require a certain number of residencies per graduation of podiatrists, or per hospital. The state / local podiatries could also be required to get involved. And, how about between all the schools not graduating more students than residency slots also for the immediate crisis?

**Glenn Gastwirth, DPM says:**
September 7, 2010 at 9:46 am

Dr. Samini, thank you for your thoughtful suggestions! This sort of constructive thinking is what we need most in a challenging situation such as this. I encourage you to continue to engage in the residency genesis dialogue.

1

2      269.    As per the APMA CEO forum site, on May 22, 2011 Ron Barron stated:

3      "The AACPM site shows the class of 2014 is actually larger by 41
4      than the class of 2013. I have never heard a reasonable explanation
5      as to why the colleges are matriculating more students than ever!!
6      It is nothing less than criminal to pocket millions of dollars from
7      students, without knowing that each of them will be able to receive
8      a residency upon graduating."
9
10     270.    As per the APMA CEO forum blog, on December 20, 2010, the APMA

11     knowingly and willingly tried to lull students into false sense of security in making the

12     statement:

13     "APMA recognizes the potential severity of this situation in the
14     short term, although we are uncertain that there would be residency
15     position shortages for 2013 graduates....As I'm sure you are aware,
16     the council has frozen class sizes at all the accredited colleges of
17     podiatric medicine."
18
19     271.    As per a unplaced podiatric graduate from KSCPM, published in the PM

20     news stated on 7/31/2013, the APMA sought to quall student inquiry so they distract

21     attention away from the colleges enrollment scam:

22     "A classmate of mine commented on a blog of the
23     APMA's Dr. Gastwirth in 2011 – voicing concerns
24     about a residency shortage and the disconnect
25     between the colleges, the APMA and the CPME
26     concerning the large numbers of students

136

1   matriculating. My colleague expressed fears of
2   there being as many as 100 too few residency spots
3   by 2013 (incredibly prophetic as time would show),
4   to which Dr. Gastwirth replied that it was unknown
5   whether there would be any shortage of residency
6   spots for the class of 2013. This thread has since
7   been removed from the APMA website."
8
9   272.   Defendant APMA knowingly and willingly, and with intent to defraud

10   students, designed and used this sophisticated "blog" on an specially created interstate

11   wire website, so that, in furtherance of a scheme and plan to defraud podiatry students,

12   make false and misrepresentations and then later remove and destroy all or most

13   evidentiary traces of criminal intent, planning, conspiracy, and overt acts, from the

14   control and domain of defrauded students and investigating agencies alike.

15   273.   As noted by the forgoing chart, the Podiatry Schools actually performed

16   APMA's plan to defraud students, whereby Podiatry enrollments markedly increased

17   from 475, from pre-APMA Workforce study levels, to 687, for post-Workforce study

18   levels:

| Podiatry Year | Total Enrollment Number At Colleges |
|---|---|
| 2000-2001 | 475 |
| 2006-2007 | 647 |
| 2007-2008 | 666 |
| 2008-2009 | 626 |
| 2009-2010 | 687 |

19

20   274.   For Dr. Abazari's time of enrollment in 2009, The Podiatry Schools

21   actually acted out the APMA's plan to defraud students, where Podiatry enrolled 687

1    students into the podiatry colleges when only 496 residency positions were available or in

2    existence.

3          275.    The APMA in conjunction with RFUMS, created and adopted a new

4    residency system which required "fewer case number requirements in the new model as

5    opposed to the old model," to generate more substandard residency positions to hide the

6    number of graduates left unplaced by the rigged shortage of residencies:

> **Beth Jarrett**                                    September 24, 2012  8:35 AM
> To:  d-scpm2014@rosalindfranklin.edu,   d-scpm2013@rosalindfranklin.edu         Details
> PMS vs PMSR programs
>
> Hello all-
> I am still getting some questions about the residency types.  Remember that the "PMS" model (PMS24 or PMS36) is the old model.  The PMSR (PMSR or PMSR/RRA) is the new model.  All programs will have converted to the new model by July 1, 2013.  Most PMS24 programs will convert to PMSR programs.  Nearly all PMS36 programs will convert to the PMSR/RRA (or PMSR with CERT) programs.  The only difference between a PMS 36 and a PMSR with RRA is a change in the medicine and biomechanics requirements, as well as slightly **fewer** case number requirements in the new model as opposed to the old model.
> Let me know if you have any questions.
> Dr. Jarrett

7

8          276.    As noted by screenshots from a published article, the APMA admits

9    knowledge and awareness of the issue of "availability of podiatric residencies" and

10   "enough spots for students who are graduating":

### APMA's Vision for the Future– Podiatry's Success

*Podiatrists are eager to discuss the APMA's role as the specialty's leader and chief advocate. Executive Director, Glenn B. Gastwirth, DPM tells us where he and the organization stand on the issues.*

**By Miles Z. Epstein, Editor-in-Chief**

11



1

**Q. Is the availability of podiatric residencies an issue?**
**A.** There are currently enough slots for students who are graduating from schools of podiatric medicine. There are fewer applicants to the colleges, which may be reflected later on. Surpluses in residency positions may exist in the future as fewer students attend the colleges. (See "In the News," p. 14).

2

3          277.     As represented by Defendant RFUMS in its own publication on October

4      29, 2009, Defendant RFUMS actually acted on the APMA's plan by creating record

5      enrollment for plaintiff's enrollment period in 2009:

From: **Ulbricht, Walter** <walter.ulbricht@rosalindfranklin.edu>
Date: Thu, Oct 29, 2009 at 11:19 AM
Subject: October 2009 FYI e-Message -- News and Information for the Campus Community
To: Faculty <Faculty@rosalindfranklin.edu>, Staff <Staff@rosalindfranklin.edu>, Students <Students@rosalindfranklin.edu>



ROSALIND FRANKLIN UNIVERSITY
OF MEDICINE AND SCIENCE
**FYI e-Message**
News and Information for the Rosalind Franklin University
of Medicine and Science Community

October 29, 2009                                          Issue 22

6

139

ROSALIND FRANKLIN UNIVERSITY
OF MEDICINE AND SCIENCE

! Chicago Medical School
! College of Health Professions
! Dr. William M. Scholl College
  of Podiatric Medicine
! School of Graduate
  and Postdoctoral Studies

A National Leader in

Interprofessional Medical
and Healthcare Education
LIFE IN DISCOVERY



Rosalind Franklin University has
achieved record enrollment growth.

278.     As noted by a screen shot from an email communication by Defendant

RFUMS, from RFUMS's institution, at least seventeen students and Dr. Abazari were

actually victimized by Defendant RFUMS's failure to provide placement despite having

paid full tuition, and despite mandates set forth or in accordance with 20 USC

§1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20

USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant

to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7);

20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7):

**From:** Nancy Bryant <nancy.bryant@rosalindfranklin.edu>
**Date:** March 26, 2013 at 8:15:19 AM PDT
**To:** "Abazari, Armin" <armin.abazari@my.rfums.org>, "Campbell, Thomas3" <thomas.campbell@my.rfums.org>, "Castelein, Bryant" <bryant.castelein@my.rfums.org>, "Ciotola, Nicholas" <Nicholas.Ciotola@my.rfums.org>, "Delara, Marc3" <marc.delara@my.rfums.org>, "Deutsch, Gloria3" <gloria.deutsch@my.rfums.org>, "Domaas, Mark3" <mark.domaas@my.rfums.org>, "Hall, Samuel3" <samuel.hall@my.rfums.org>, "Hare, Daniel" <daniel.hare@my.rfums.org>, "Hussain, Syed3" <syed3.hussain@my.rfums.org>, "Kapila, Tania" <tania.kapila@my.rfums.org>, "Kramer, Nathan3" <nathan.kramer@my.rfums.org>, "Landers, Sabrina" <sabrina.landers@my.rfums.org>, "Luczkowski, Ernest Paul" <ernest.luczkowski@my.rfums.org>, "Musser, Bret3" <bret.musser@my.rfums.org>, "Richason, Jessica3" <jessica.richason@my.rfums.org>, "Schroeder, Christopher" <c.schroeder@my.rfums.org>, "Valabov, Jacob" <jacob.valabov@my.rfums.org>
**Subject: Updated Preceptorship Information**


Hello,

Just a fyi...

AAPPM updated their preceptorship info (attached).

Also, Weil Foot & Ankle is accepting preceptor applications. If you are interested contact Harriet Kass hkass@weil4feet.com or 847.627.4962.

1

2        279.    As noted by a screen shot from an email communication by Dr. Usman

3   Akram, at least ten of those students sought legal counsel against Defendant RFUMS:

On Fri, Jun 28, 2013 at 12:11 PM, Usman Akram <utakram@gmail.com> wrote:
   Hello again,

   I communicated with Dr. Kansky recently.  He was meeting with two lawyers this week regarding the residency issue.

   He also reported that ten people had contacted him from Scholl.

   I urge the rest of you to contact him as well.

   His email is: larry.kansky@gmail.com

   Thanks and have a great weekend,

   Usman Akram, DPM

   Confidentiality Notice: DO NOT read, copy or disseminate this communication unless you are the intended addressee. This e-mail communication (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C Sections 2510-2521, contains confidential and/or privileged information intended only for the addressee. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender immediately via email to that you have received the communication in error. Please, delete it and any and all copies.

4

5        280.    As admitted by Defendant RFUMS, by and through faculty and professor,

6   Dr. Darrell Latva, at least 86 students were actually victimized nationally:

07/03/2013

**RESPONSES /COMMENTS (RESIDENCY SHORTAGE CRISIS) - PART 1A**

RE: Unmatched Residency Placements Currently Stand at 86

From: Darrell Latva, DPM

Sacred Heart Hospital in Chicago closed yesterday amid a federal probe, which included one podiatrist. I believe we had a program there. I guess we add those residents to the 86.

Darrell Latva, DPM, Chicago, IL, darrell.latva@rosalindfranklin.edu

1

2      281.    Due to the APMA's action to defraud Dr. Abazari and podiatry students,

3   Defendant APMA directly has, and continues to, impair Dr. Abazari's ability to service

4   his rapidly rising student loan debt of $272,834.09, as noted by Navient's records:

5   Principal Balance 152,289.08 July 5, 2015; Outstanding Interest $16,160.71
6   Principal Balance 225,139.23 June 2, 2016; Unpaid Interest $2,540.93
7   Principal Balance 225,139.23 June 2, 2017; Unpaid Interest $17,524.86
8   Principal Balance 225,139.23 June 2, 2018; Unpaid Interest $32,554.30
9   Principal Balance 225,139.23 June 2, 2019; Unpaid Interest $47,694.86.
10
11      282.    As a result of Defendant APMA's scheme to defraud, Dr. Abazari has and

12   continues to accumulate debt, approximately $110,174.09 above and beyond the average

13   debt of $162,660 represented to "Incoming Podiatry Students" by Defendant RFUMS

14   "Financial Aid Office" for their Podiatry program upon entering in 2009:



15

142

1      283.    The APMA was successful in defrauding Dr. Abazari and 86 podiatry

2   graduates of their tuition money of approximately $200,000, while directly denying, and

3   continuing to deny, facilitating actions in a plan for schools to charge for benefits and

4   service of placement into residency, which they do not render, despite mandates set forth

5   or in accordance with 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C.

6   §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC

7   §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC

8   §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC

9   §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

10     284.    Defendant APMA knowingly and willingly specifically used interstate

11   wires in furtherance of their schemes to funnel tuition money out of Dr. Abazari and

12   other podiatry students, while reprieving them of benefits and services of residency

13   placement.

14     285.    In every possible manner herein alleged, the APMA sought to capitalize

15   on Dr. Abazari's weakened physical condition, in calculated and coordinated attacks, to

16   increase physiological harm, and to overpower Dr. Abazari objections, using force and

17   inducing emotional submission—through a psychological state of learned helplessness:



18

19   (Left—On or around February 7, 2016)   (Right—On or around November 14-2010)

20          //

1                               **CAUSE OF ACTION 10:**

2                               **(RICO 18 U.S.C. §1962(c))**

3       286.    Dr. Abazari repeats and realleges each and every allegation contained in

4 paragraphs 1 through 285 as if fully set forth herein.

5       287.    Navient, RFUMS, and APMA are herein alleged to be three separate and

6 distinct entities.

7       288.    DOE and State of Illinois are herein alleged to be two separate and distinct

8 government entities.

9       289.    Navient, Department of Education, State of Illinois, RFUMS, and APMA

10 conducted the affairs of a union, group, association and joint venture—for the purpose of

11 charging for benefits and services it doesn't provide—through a pattern of racketeering

12 activity: a violation of or attempted violation of 18 U.S.C. §1341 performed by DOE; a

13 violation of or attempted violation of 18 U.S.C. §1341 performed by the State of Illinois;

14 a violation of or attempted 18 U.S.C. §1581(A) performed by Navient; a violation of or

15 attempted violation of 18 U.S.C. §1581(B) performed by Navient; a violation of or

16 attempted violation of 18 U.S.C. §1584(A) performed by DOE; a violation of or

17 attempted violation of 18 U.S.C. §1584(A) performed by the State of Illinois; a violation

18 of attempted violation of 18 U.S.C. §1341 performed by RFUMS; a violation of or

19 attempted violation of 18 U.S.C. §1341 performed by RFUMS; a violation of or

20 attempted violation of 18 U.S.C. §1341 performed by APMA.

21       290.    The violation of or attempted violation of 18 U.S.C. §1341 performed by

22 DOE, the violation of or attempted violation of 18 U.S.C. §1341 performed by the State

23 of Illinois, the violation of or attempted violation 18 U.S.C. §1581(A) performed by

1    Navient, the violation of or attempted violation of 18 U.S.C. §1581(B) performed by

2    Navient, the violation of or attempted violation of 18 U.S.C. §1584(A) performed by

3    DOE, the violation of or attempted violation of 18 U.S.C. §1584(A) performed by the

4    State of Illinois, the violation of or attempted violation of 18 U.S.C. §1341 performed by

5    RFUMS, the violation of or attempted violation of 18 U.S.C. §1341 performed by

6    RFUMS, the violation of or attempted violation of 18 U.S.C. §1341 performed by

7    APMA,  were all acts in furtherance of a union, group, association, and joint venture

8    operating for the common purpose of unlawfully extracting money, by charging for

9    benefits and services not rendered.

10    291.    Navient, Department of Education, State of Illinois, RFUMS, APMA,

11    operated the enterprise —to charge for benefits and services it doesn't provide—as a

12    manager managed liability Corporation (LLC).

13    292.    Navient, Department of Education, State of Illinois, RFUMS, APMA,

14    divided the work in the operation of the enterprise —to charge for benefits and services it

15    doesn't provide—where the State of Illinois serves as manager and State compliance

16    officer; Department of Education serves as manager and Federal compliance officer, and

17    lender of funds; APMA serves as manager of department of marketing and planning;

18    Navient is manager of billing and accounting; and RFUMS is manager of facility

19    operations.

20    293.    Navient, Department of Education, State of Illinois, RFUMS, APMA,

21    formed their union, group, association and joint venture for the secondary purpose of

22    selling and distributing subprime student loan obligations, lacking in educational benefits,

1    services, and quality, contained in prime educational loan obligations, having the

2    guaranteed benefits, services, and quality.

3        294.    Without any one link in the enterprise —to charge for benefits and

4    services it doesn't provide—performed by Navient, Department of Education, State of

5    Illinois, RFUMS, APMA, in divided operations, the enterprise could not function to

6    direct and reach its purpose, beyond the State of Illinois's borders, across five States, into

7    the State of California, to victimize Dr. Abazari, as a resident of the State of California:

> **From:** "Meinhardt, Mandy" <Mandy.Meinhardt@rosalindfranklin.edu>
> **To:** Armin Abazari <arminabazari@yahoo.com>
> **Cc:** "Young, Kimberly J." <Kimberly.Young@rosalindfranklin.edu>
> **Sent:** Monday, November 24, 2008 8:16 AM
> **Subject:** RE: Armin Abazari-Scholl Inquiry ( Hello Mandy)
>
> Hi Armin,
>
> I am happy to extend your due date for Scholl College. If your interview at CSPM is on 12-5, why don't you let us know by the end of the following week - December 12, 2008. If you have any questions between now and then, please let me know.
>
> As for your scholarship, all decisions made by the Scholarship Committee are final. We believe Scholl College offers the best educational experience available to podiatry students and provide outstanding services to help you manage your debt after graduation. Last year, Scholl College had a 0% default rate for student loans and our 10-year average is 0.3%. This is well below the national average of approximately 4-5% for medical school students. Scholl offers the largest scholarship program of all podiatric medical colleges. Last year we awarded in excess of $600,000 for students in their 2nd,3rd and 4th years of study with us.
>
> Please let me know if you have any other questions!
> Best,
> Mandy

8

9        295.    Without any one link in the enterprise —to charge for benefits and

10    services it doesn't provide—performed by Navient, Department of Education, State of

11    Illinois, RFUMS, APMA, in divided operations, the enterprise could not function to

12    direct and reach its purpose, beyond the State of Illinois's borders, across five States, into

13    the State of California, to victimize Dr. Abazari, as a resident of the State of California:

> **Armin Abazari-Monday Interview Barry University**    arminabazari@ya.../Sent
>
>  **Armin Abazari** <arminabazari@yahoo.com>    Nov 29, 2008 at 9:34 PM
> To: Rodriguez, Amy E <AERodriguez@mail.barry.edu>
>
> Good Evening  Mr. Marc Weiner,
>
> I appreciate the interview invite that Barry has offered me. I recieved acceptances from both Chicago and Philidelphia Pod schools but I was still very intersted in visiting Barry's School of Podiatric Medicine and Surgery. Unfortunately however I cannot afford to travel outside of California at this time due to financial bindings. I am certain that Barry provides a quality education for its students and I am sadened that I cannot make the trip. I appreciate your time and consideration.
>
> Best,
> Armin Abazari

14

1    296.    The enterprise has entered into operations on or around 2000 and remains

2    currently in operation.

3    297.    The enterprise has and continues to charge and acquire benefits from Dr.

4    Abazari's loan interests that are accruing and compounding.

5    298.    As represented by Defendant RFUMS's website, Defendant RFUMS

6    admits that "[a]ccreditation is an indication of public approbation, attesting to the quality

7    of the podiatric medical education program and the continued commitment of the

8    institution to support the educational program":



9

10    299.    As published in RFUMS's catalog 2009-2010, the State of Illinois,

11    through its Illinois Board of Higher Education, approved the podiatry program at

12    RFUMS:

**ACCREDITATION**
Rosalind Franklin University of Medicine and Science receives its degree-granting authority from the Illinois Board of Higher Education and is accredited through the North Central Association of Colleges and Schools.

North Central Association of Colleges and Schools
Higher Learning Commission
30 North LaSalle Street, Suite 2400
800.621.7440
312.263.0456



Additionally, the Dr. William M. Scholl College of Podiatric Medicine is accredited by the Council on Podiatric Medical Education of the American Podiatric Medical Association. The College is approved by the Illinois Board of Higher Education and by the Illinois State Approving Agency for Veterans' Education.

300.     The State of Illinois role in the enterprise is to manufacture and direct accreditation compliance for Defendant RFUMS's podiatry program, in the clear and present fact, the RFUMS charges students, such as Dr. Abazari full tuition without rendering the benefit of "a program that prepares individuals for the independent professional practice of podiatric medicine, involving the prevention, diagnosis, and treatment of diseases, disorders, and injuries to the foot and lower extremities."

301.     The State of Illinois's role in the enterprise is to manufacture and direct accreditation compliance for Defendant RFUMS's podiatry program, in the clear and present fact, the RFUMS charges students, such as Dr. Abazari full tuition without rendering the benefit of "placement services for program completers."

302.     Dr. Abazari's right or privilege to a benefit, within a program or activity receiving federal financial assistance, by the "placement services for program completers," and CIP Code 51.2101, has been expressly secured to him under mandate of 20 USC §1094(a)(17).

303.     Dr. Abazari's right or privilege to a benefit, within a program or activity receiving federal financial assistance, by the "placement services for program

1    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

2    20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

3         304.    Dr. Abazari's right or privilege to a benefit, within a program or activity

4    receiving federal financial assistance, by the "placement services for program

5    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

6    20 USC §1094(a)(21).

7         305.    Dr. Abazari's right or privilege to a benefit, within a program or activity

8    receiving federal financial assistance, by the "placement services for program

9    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

10   20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7).

11        306.    Dr. Abazari's right or privilege to a benefit, within a program or activity

12   receiving federal financial assistance, by the "placement services for program

13   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

14   20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7).

15        307.    Dr. Abazari's right or privilege to a benefit, within a program or activity

16   receiving federal financial assistance, by the "placement services for program

17   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

18   20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7).

19        308.    Dr. Abazari's right or privilege to a benefit, within a program or activity

20   receiving federal financial assistance, by the "placement services for program

21   completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

22   20 USC §1094(a)(1).

1    309.    Dr. Abazari's right or privilege to a benefit, within a program or activity

2    receiving federal financial assistance, by the "placement services for program

3    completers," and CIP Code 51.2101, has been expressly secured to him under mandate of

4    20 USC §1094(a)(17).

5    310.    The State of Illinois fabricates IBHE compliance of RFUMS's podiatry

6    program so that the enterprise can be able to misrepresent and masquerade as the "quality

7    of the podiatric medical education program and the continued commitment of the

8    institution to support the educational program," by expressly admitting in Abazari v.

9    Rosalind Franklin University of Medicine & Science 2015 IL App (2d) 140952, ¶4:

   ¶4    In 2003, RFUMS applied to the Illinois Board of Higher Education (IBHE) for permission
   to operate a program (Scholl College) offering the degree of "Doctor of Podiatric Medicine"
   (DPM). In its description of the proposed program, RFUMS included the statement that
   "[a]fter graduation Scholl College places its graduates in 24[-] and 36[-]month residency
   training programs." The application also stated that Scholl College expected to enroll about 90
   students each year, for a total of 360 in the 4-year program. The IBHE approved the application
10 for the DPM program.

11    311.    The State of Illinois manufactures and directs accreditation compliance for

12    Defendant RFUMS's podiatry program for the enterprise "Scholl College of Podiatric

13    Medicine" so that the enterprise could operate and reap profit for the economy of Illinois.

14    312.    The Department of Education's role in the enterprise is to manufacture

15    adherence of Defendant RFUMS's podiatry program to federal standards, in the clear and

16    present fact, RFUMS charges Dr. Abazari, and numerous others, full tuition but does not

17    provide said students the benefit of "a program that prepares individuals for the

18    independent professional practice of podiatric medicine, involving the prevention,

19    diagnosis, and treatment of diseases, disorders, and injuries to the foot and lower

20    extremities."