1    614.    RFUMS specifically chose the false pretense of "100% of graduates will

2    be placed in a CPME approved residency program" and "Graduates will be capable of

3    servicing their student loan debt", based on statutory mandates pursuant to 20 USC

4    §1094(a)(1), 20 USC §1094(a)(17), 18 U.S.C. §245(b)(1)(E), 20 U.S.C. §1087e (h), 20

5    USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(J), pursuant

6    to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7),

7    20 USC §1094(a)(21), 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7), in order

8    to reflect "placement services for program completers" and CIP code 51.2101, so that it

9    could further influence Dr. Abazari and other students selection of their podiatry

10    program.

11                        **CAUSE OF ACTION 15:**

12                **(WIRE FRAUD 18 U.S.C. §1341—NAVIENT and DOE)**

13    615.    Dr. Abazari repeats and realleges each and every allegation contained in

14    paragraphs 1 through 614 as if fully set forth herein.

15    616.    Navient and DOE devised a scheme defraud Dr. Abazari by distributing,

16    dispensing, transacting, and generating Stafford Subsidized and Unsubsidized, Direct

17    Subsidized and Unsubsidized $200,000 in loan debt, lacking the expressly represented

18    federal benefits "placement services for program completers" and CIP code 51.2101 for

19    Dr. Abazari, so that Dr. Abazari would not be "capable of servicing [his] loan debt."

20    617.    Naivent and DOE devised an additional scheme to defraud Dr. Abazari by

21    sponsoring RFUMS's misrepresentations of the "quality of the podiatric medical

22    education program and the continued commitment of the institution to support the

23    educational program" it provides, in the distributing, dispensing, transacting, and

1    generating of Stafford Subsidized and Unsubsidized, Direct Subsidized and Unsubsidized

2    loans for RFUMS's podiatry scam.

3        618.    Navient and DOE devised an additional scheme to prevent the Dr. Abazari

4    from controlling his risk of loss by distributing , dispensing, transacting, and generating

5    Stafford Subsidized and Unsubsidized, Direct Subsidized and Unsubsidized $200,000 in

6    loan debt, lacking the expressly represented federal benefits "placement services for

7    program completers" and CIP code 51.2101 for Dr. Abazari, despite statutory mandates

8    20 USC §1094(a)(1), 20 USC §1094(a)(17), 18 U.S.C. §245(b)(1)(E), 20 U.S.C. §1087e

9    (h), 20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(J),

10    pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC

11    §1094(a)(7), 20 USC §1094(a)(21), 20 USC §1092(a)(1)(R), pursuant to 20 USC

12    §1094(a)(7).

13        619.    Pursuant to the auspices of governing federal regulation, 20 USC

14    §1094(a)(1), 20 USC §1094(a)(17), 18 U.S.C. §245(b)(1)(E), 20 U.S.C. §1087e (h), 20

15    USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(J), pursuant

16    to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7),

17    20 USC §1094(a)(21), 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7), the

18    DOE created, owns, and operates the Public Records IPEDS Data Collection System:

19



IPEDS 2015-16 Data Collection System

IPEDS Help Desk
(877) 225-2568
ipedshelp@rti.org

NCES National Center for Education Statistics

OMB NO. 1850-0582 : Approval Expires 12/31/2016

User ID | Password | LOGIN

## Fall

COMPONENTS
Institutional Characteristics
Completions
12-month Enrollment

KEYHOLDERS: Closed (Closed Oct 14)
COORDINATORS: Closed (Closed Oct 28)

## Winter

COMPONENTS
Student Financial Aid
Graduation Rates
200% Graduation Rates
Admissions
Outcome Measures

KEYHOLDERS: Closed (Closed Feb 10)
COORDINATORS: Closed (Closed Feb 24)

## Spring

COMPONENTS
Fall Enrollment
Finance
Human Resources
Academic Libraries

KEYHOLDERS: Closed (Closed Apr 06)
COORDINATORS: Closed (Closed Apr 20)

### Reporting Resources

Access resources that will help with successful submission.

### Registration

The 2015-16 data collection cycle opens August 5, 2015. The surveys available for completion as of that date include:

- ✔ Registration
- ✔ Institution Identification
- ✔ Report Mapping (if applicable)
- ✔ IC Header

Keyholders should be registered prior to August 26. The CEO of any institution without a registered Keyholder by that date will be contacted by the IPEDS Help Desk so that a one may be appointed. The Keyholder may be changed at any time during the collection cycle.

The IPEDS Help Desk is available by (877) 225-2568 or ipedshelp@rti.org to answer any questions you may have.

### Data Submission Requirement

The completion of all IPEDS surveys, in a timely and accurate manner, is mandatory for all institutions that participate or are applicants for participation in any Federal financial assistance program authorized by Title IV of the Higher Education Act of 1965, as amended. The completion of the surveys is mandated by 20 USC 1094, Section 487(a)(17).

The collection and reporting of racial/ethnic data are mandatory for all institutions that receive, are applicants for, or expect to be applicants for Federal financial assistance as defined in the Department of Education (ED) regulations implementing Title VI of the Civil Rights Act of 1964 (34 CFR 100.13), or defined in any ED regulations implementing Title IX of the Education Amendments of 1972. The collection of racial/ethnic data in vocational programs is mandated by Section 421(a)(1) of the Carl D. Perkins Vocational Education Act.

The reporting of racial/ethnic and gender data for institutional staff on the Human Resources component is also mandated by P.L. 88-352, Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 (29 CFR 1602, subparts O, P, and Q), in odd-numbered years (i.e., 2007-08, 2009-10, etc.), for institutions with fifteen (15) or more full-time employees.

For those institutions not required to complete this survey on the basis of the above requirements, completion is voluntary and authorized by P.L. 103-382, National Education Statistics Act of 1994, Sec. 404(a).

IPEDS data are not collected under a pledge of confidentiality.

U.S. Department of Education

Software Provider Resources | Use of Cookies | Section 508 Compliance
Browsers Supported | Troubleshooting | NCES Privacy Policy

620. Interstate wires were specifically used by the DOE in furtherance of and as a part of each scheme to defraud, as the DOE specially created, owned, and operated the Public Records IPEDS Data Collection System, under the direct auspices of federal mandate, 20 USC §1094(a)(1), 20 USC §1094(a)(17), 18 U.S.C. §245(b)(1)(E), 20 U.S.C. §1087e (h), 20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7), 20 USC §1094(a)(21), 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7), but chose said specifically designated wires to convey false and fraudulent information to lull students into a false sense of security that RFUMS provides

1    "placement services for program completers" and CIP code 51.2101, when RFUMS did

2    or does not provide said services to students.

3        621.    Navient participated directly in furtherance of the scheme to defraud by

4    using interstate wires to specifically communicate and transact loans pursuant to the DOE

5    actions of creating, owning, and operating the Public Records IPEDS Data Collection

6    System, under the direct auspices of federal mandate, 20 USC §1094(a)(1), 20 USC

7    §1094(a)(17), 18 U.S.C. §245(b)(1)(E), 20 U.S.C. §1087e (h), 20 USC §1092(a)(1)(M),

8    pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(J), pursuant to 20 USC

9    §1094(a)(7), 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7), 20 USC

10   §1094(a)(21), 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

11       622.    The deliberate choice and selection in the presentation of false information

12   of "placement services for program completers" and CIP code 51.2101, pursuant to

13   statutory mandate, 20 USC §1094(a)(1), 20 USC §1094(a)(17), 18 U.S.C. §245(b)(1)(E),

14   20 U.S.C. §1087e (h), 20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7), 20 USC

15   §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(G)(i)-(ii), pursuant

16   to 20 USC §1094(a)(7), 20 USC §1094(a)(21), 20 USC §1092(a)(1)(R), pursuant to 20

17   USC §1094(a)(7), was necessary and foreseeable in the execution of each scheme to

18   defraud perpetrated by DOE and Navient.

19       623.    Pursuant to the auspices of governing federal regulation, 20 USC

20   §1094(a)(1), 20 USC §1094(a)(17), 18 U.S.C. §245(b)(1)(E), 20 U.S.C. §1087e (h), 20

21   USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(J), pursuant

22   to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7),

23   20 USC §1094(a)(21), 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7), the

1   DOE holds out to the public and admits the benefit of the program or activity receiving

2   federal financial assistance, as provided for by RFUMS, as "placement services for

3   program completers," for the period 2008-2014:

**National Center for Education Statistics**

IPEDS Data Center

**Rosalind Franklin University of Medicine and Science**
UnitID        145558
OPEID         00165900
Address       3333 Green Bay Road, North Chicago, IL, 60064-3095
Web Address   www.rosalindfranklin.edu/

| Institutional Characteristics 2009-10 |
|---|

Institution: Rosalind Franklin University of Medicine and Science (145558)

**Part A - Educational Offerings**

1. Which of the following types of instruction/programs are offered by your institution? (Check one or more)
*If your institution does not offer occupational, academic or continuing professional programs, you are not expected to complete this or any other IPEDS survey.*

☐ Occupational, may lead to a certificate, degree, or other formal award
☑ Academic, leading to a certificate, degree, or diploma
☑ Continuing professional (postbaccalaureate only)
☐ Recreational or avocational (leisure) programs
☐ Adult basic or remedial instruction or high school equivalency
☐ Secondary (high school)

Institution: Rosalind Franklin University of Medicine and Science (145558)

**Part A - Mission Statement**

2. Provide the institution's mission statement or a web address (URL) where the mission statement can be found. Typed statements are limited to 2,000 characters or less. The mission statement will be available to the public on College Navigator.

Mission Statement URL:     http://www.rosalindfran
                           Please begin URL with "http://" or "https://"

Mission Statement
[                    ]

Institution: Rosalind Franklin University of Medicine and Science (145558)

4   **Part B - Organization - Control and Level**

5



- Credit for life experiences
- Advanced placement (AP) credits
- None of the above

**6. What types of special learning opportunities are offered by your institution? [Check all that apply]**

- Distance learning opportunities (e-learning)
- ROTC
  - Army
  - Navy
  - Air Force
- Study abroad
- Weekend/evening college
- Teacher certification (below the postsecondary level)
  - Students can complete their preparation in certain areas of specialization
  - Students must complete their preparation at another institution for certain areas of specialization
  - This institution is approved by the state for the initial certification or licensure of teachers
- None of the above

Institution: Rosalind Franklin University of Medicine and Science (145558)

**Part C - Admission Requirements and Services - Student Services**
**7. If your institution grants a bachelor's degree or higher but does not offer a full 4-year program of study at the undergraduate level, how many years of completed college-level work are required for entrance?**

Number of years: Two

**8. Which of the following selected student services are offered by your institution? [Check all that apply]**

- Remedial services
- Academic/career counseling services
- Employment services for current students
- Placement services for program completers
- On-campus day care for children of students
- None of the above

**9. Does your institution have its own library or are you financially supporting a shared library with another postsecondary education institution?**

624. Pursuant to the auspices of governing federal regulation, 20 USC §1094(a)(1), 20 USC §1094(a)(17), 18 U.S.C. §245(b)(1)(E), 20 U.S.C. §1087e (h), 20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7), 20 USC §1094(a)(21), 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7), the DOE holds out to the public and admits the benefit of the program or activity receiving federal financial assistance, as provided for by RFUMS, as "placement services for program completers," for the period 2008-2014:

# National Center for Education Statistics

## IPEDS Data Center

**Rosalind Franklin University of Medicine and Science**
**UnitID** 145558
**OPEID** 00145900
**Address** 3333 Green Bay Road, North Chicago, IL, 60064-3095
**Web Address** www.rosalindfranklin.edu/

IC Header 2013-14

Institution: Rosalind Franklin University of Medicine and Science (145558)
Inovas1

**Part A - Educational Offerings**
1. Which of the following types of instruction/programs are offered by your institution? [Check one or more]

*If your institution does not offer occupational, academic or continuing professional programs, you are not expected to complete this or any other IPEDS survey.*

- [ ] Occupational, may lead to a certificate, degree, or other formal award
- [x] Academic, leading to a certificate, degree, or diploma
- [ ] Continuing professional (postbaccalaureate only)
- [ ] Recreational or avocational (leisure) programs
- [ ] Adult basic or remedial instruction or high school equivalency
- [ ] Secondary (high school)

Institution: Rosalind Franklin University of Medicine and Science (145558)
Inovas1

**Part B - Organization - Control and Levels**
1. What is your institutional control or affiliation?

*Be sure to select the correct control for your institution. Errors on this question have an impact throughout the IPEDS surveys, in federal reporting, in net price groupings, and on your institutions appearance to students. If you reported incorrectly in a previous year, please contact the Help Desk at 877.225.2568 to correct the error.*

- ( ) Public - Select primary and/or secondary controls below
  - Primary control          Secondary control (if applicable)
  - [Select One]             [Select One]
- ( ) Private for-profit
- (•) Private not-for-profit independent (no religious affiliation)
- ( ) Private not-for-profit religious affiliation - Select affiliation below
  - [Select One]

1

---

Institution: Rosalind Franklin University of Medicine and Science (145558)
Inovas1

**Part C - Student Services - Distance Opportunities**
4. Which of the following selected student services are offered by your institution? [Check all that apply]

- [ ] Remedial services
- [x] Academic/career counseling services
- [ ] Employment services for current students
- [x] Placement services for program completers
- [ ] On-campus day care for children of students
- [ ] None of the above

5. Does your institution have its own library or are you financially supporting a shared library with another postsecondary education institution?

- (•) Have our own library
- ( ) Do not have our own library but contribute financial support to a shared library
- ( ) Neither of the above

6. Indicate whether or not any of the following alternative tuition plans are offered by your institution.

- (•) No
- ( ) Yes
  - [ ] Tuition guarantee
  - [ ] Prepaid tuition plan
  - [ ] Tuition payment plan
  - [ ] Other (specify in box below)

7. Please indicate at what level(s) your institution offers distance education opportunities (courses and/or programs).

- [ ] Undergraduate
- [x] Graduate
- [ ] The institution does not offer distance education opportunities

You may use the space below to provide context for the data you've reported above. These context notes will be posted on the College Navigator website, and should be written to be understood by students and parents.

[                    ]

2

Select One

Institution: Rosalind Franklin University of Medicine and Science (145558)                                        HUV061
Summary
**Institutional Characteristics Component Summary**
**Academic Year Reporters**

IPEDS collects important information regarding your institution. All data reported in IPEDS survey components become available
in the IPEDS Data Center and appear as aggregated data in various Department of Education reports. Additionally, some of the
reported data appears specifically for your institution through the College Navigator website and is included in your institution's
Data Feedback Report (DFR). The purpose of this summary is to provide you an opportunity to view some of the data that,
when accepted through the IPEDS quality control process, will appear on the College Navigator website and/or your DFR.
College Navigator is updated approximately three months after the data collection period closes and Data Feedback Reports will
be available through the Data Center and sent to your institution's CEO in November 2014.

Please review your data for accuracy. If you have questions about the data displayed below after reviewing the data reported on
the survey screens, please contact the IPEDS Help Desk at: 1-877-225-2568 or ipedshelp@rti.org.

| GENERAL INFORMATION | |
|---|---|
| Mission Statement | http://www.rosalindfranklin.edu/President/MissionVision.aspx |
| Are all the programs at your institution offered completely via distance education? | No |
| Special Learning Opportunities | N/A |
| Student Services | Academic/career counseling services<br>Placement services for program completers |
| Credit Accepted | N/A |

| PRICING INFORMATION | | Tuition | Fees |
|---|---|---|---|
| Average graduate student tuition and fees for academic year 2013-14 | | $25,735 | $330 |
| Alternative tuition plans | | N/A | |

625.    Pursuant to the auspices of governing federal regulation, 20 USC §1094(a)(1), 20 USC §1094(a)(17), 18 U.S.C. §245(b)(1)(E), 20 U.S.C. §1087e (h), 20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7), 20 USC §1094(a)(21), 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7), the DOE holds out to the public and admits the benefit of the program or activity receiving federal financial assistance, provided for by RFUMS, as a "CIP Code 51.2101," "for the period 2008-2014,

> "a program that prepares individuals for the independent
> professional practice of podiatric medicine, involving the
> prevention, diagnosis, and treatment of diseases, disorders, and
> injuries to the foot and lower extremities. Includes instruction in
> the basic medical sciences, anatomy of the lower extremity,
> functional orthopedics, foot biomechanics, podiatric radiology,
> dermatology, podiatric surgery, podopediatrics, sports medicine,
> physical diagnosis, emergency medicine and traumatology,
> practice management, and professional standards and ethics":



1

2        626.    Upon graduation RFUMS did not perform its guarantee of "100% of

3    graduates will be placed in a CPME approved residency program" and "Graduates will be

4    capable of servicing their student loan debt," which actually resulted in at least seventeen

5    of cheated students losing money from RFUMS:

> **From:** Nancy Bryant <nancy.bryant@rosalindfranklin.edu>
> **Date:** March 26, 2013 at 8:15:19 AM PDT
> **To:** "Abazari, Armin" <armin.abazari@my.rfums.org>, "Campbell, Thomas3"
> <thomas.campbell@my.rfums.org>, "Castelein, Bryant" <bryant.castelein@my.rfums.org>,
> "Ciotola, Nicholas" <Nicholas.Ciotola@my.rfums.org>, "Delara, Marc3"
> <marc.delara@my.rfums.org>, "Deutsch, Gloria3" <gloria.deutsch@my.rfums.org>, "Domaas,
> Mark3" <mark.domaas@my.rfums.org>, "Hall, Samuel3" <samuel.hall@my.rfums.org>, "Hare,
> Daniel" <daniel.hare@my.rfums.org>, "Hussain, Syed3" <syed3.hussain@my.rfums.org>,
> "Kapila, Tania" <tania.kapila@my.rfums.org>, "Kramer, Nathan3"
> <nathan.kramer@my.rfums.org>, "Landers, Sabrina" <sabrina.landers@my.rfums.org>,
> "Luczkowski, Ernest Paul" <ernest.luczkowski@my.rfums.org>, "Musser, Bret3"
> <bret.musser@my.rfums.org>, "Richason, Jessica3" <jessica.richason@my.rfums.org>,
> "Schroeder, Christopher" <c.schroeder@my.rfums.org>, "Valabov, Jacob"
> <jacob.valabov@my.rfums.org>
> **Subject: Updated Preceptorship Information**
>
> Hello,
>
> Just a fyi...
>
> AAPPM updated their preceptorship info (attached).
>
> Also, Weil Foot & Ankle is accepting preceptor applications. If you are interested contact Harriet
> Kass hkass@weil4feet.com or 847.627.4962.

6

7

1    627.   Upon graduation RFUMS did not perform its guarantee of "100% of

2    graduates will be placed in a CPME approved residency program" and "Graduates will be

3    capable of servicing their student loan debt" and actually resulted in at least ten of those

4    cheated students who lost money to then seek legal council against Defendant RFUMS:

> On Fri, Jun 28, 2013 at 12:11 PM, Usman Akram <utakram@gmail.com> wrote:
> Hello again,
>
> I communicated with Dr. Kansky recently.  He was meeting with two lawyers this week regarding the residency issue.
>
> He also reported that ten people had contacted him from Scholl.
>
> I urge the rest of you to contact him as well.
>
> His email is: larry.kansky@gmail.com
>
> Thanks and have a great weekend,
>
> Usman Akram, DPM
>
> Confidentiality Notice: DO NOT read, copy or disseminate this communication unless you are the intended addressee. This e-mail communication (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C Sections 2510-2521, contains confidential and/or privileged information intended only for the addressee. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender immediately via email to that you have received the communication in error. Please, delete it and any and all copies.

5

6    628.   As admitted by Defendant RFUMS, by and through faculty and professor,

7    Dr. Darrell Latva, actually resulted in at least 86 students nationally being cheated to

8    lose money:

> 07/03/2013
>
> RESPONSES /COMMENTS (RESIDENCY SHORTAGE CRISIS) - PART 1A
>
> RE: Unmatched Residency Placements Currently Stand at 86
>
> From: Darrell Latva, DPM
>
> Sacred Heart Hospital in Chicago closed yesterday amid a federal probe, which included one podiatrist. I believe we had a program there. I guess we add those residents to the 86.

9    Darrell Latva, DPM, Chicago, IL,

10    629.   Navient and DOE had the intent and willingness to engage in a scheme to

11    defraud Dr. Abazari by distributing, dispensing, transacting, and generating Stafford

12    Subsidized and Unsubsidized, Direct Subsidized and Unsubsidized loan debt, lacking the

13    expressly represented federal benefits "placement services for program completers" and

310

1    CIP code 51.2101 for Dr. Abazari, so that Dr. Abazari would not be "capable of servicing

2    [his] loan debt," where in a quid pro quo relationship, DOE and Navient jointly billed Dr.

3    Abazari extra payments—now $110,174.09—above and beyond the average debt of

4    $162,660 represented to "Incoming Podiatry Students" for RFUMS Podiatry program, in

5    exchange for RFUMS being granted the ability to skirt 20 U.S.C. §1085a(2)(A)-(B),

6    through misrepresenting or concealing its actual cohort default rates by reporting students

7    as "deferment" and "forbearance" pursuant to 20 USC §1087bb (g)(E)(IV).

8        630.    Naivent and DOE had the intent and willingness to engage in an additional

9    scheme to defraud Dr. Abazari, by sponsoring RFUMS's misrepresentations of the

10   "quality of the podiatric medical education program and the continued commitment of the

11   institution to support the educational program," in the distributing, dispensing,

12   transacting, and generating of Stafford Subsidized and Unsubsidized, Direct Subsidized

13   and Unsubsidized loans for RFUMS's podiatry scam, where in a quid pro quo

14   relationship, DOE and Navient jointly billed Dr. Abazari extra payments—now

15   $110,174.09—above and beyond the average debt of $162,660 represented to "Incoming

16   Podiatry Students" for RFUMS Podiatry program, in exchange for RFUMS being granted

17   the ability to skirt 20 U.S.C. §1085a(2)(A)-(B), through misrepresenting or concealing its

18   actual cohort default rates by reporting students as "deferment" and "forbearance"

19   persuant to 20 USC §1087bb (g)(E)(IV)

20       631.    Navient and DOE had the intent and willingness to engage in a scheme to

21   prevent the Dr. Abazari from controlling his risk of loss by distributing , dispensing,

22   transacting, and generating Stafford Subsidized and Unsubsidized, Direct Subsidized and

23   Unsubsidized $200,000 in loan debt, lacking the expressly represented federal benefits

1   "placement services for program completers" and CIP code 51.2101 for Dr. Abazari,

2   despite statutory mandates 20 USC §1094(a)(1), 20 USC §1094(a)(17), 18 U.S.C.

3   §245(b)(1)(E), 20 U.S.C. §1087e (h), 20 USC §1092(a)(1)(M), pursuant to 20 USC

4   §1094(a)(7), 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7), 20 USC

5   §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7), 20 USC §1094(a)(21), 20 USC

6   §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7), where in a quid pro quo relationship,

7   DOE and Navient jointly billed Dr. Abazari extra payments—now $110,174.09—above

8   and beyond the average debt of $162,660 represented to "Incoming Podiatry Students"

9   for RFUMS Podiatry program, in exchange for RFUMS being granted the ability to skirt

10  20 U.S.C. §1085a(2)(A)-(B), through misrepresenting or concealing its actual cohort

11  default rates by reporting students as "deferment" and "forbearance" pursuant to 20 USC

12  §1087bb (g)(E)(IV).

13      632.   As noted by screen shots from RFUMS's electronically transmitted

14  syllabus, pursuant to the auspices of governing federal regulation, 20 USC §1094(a)(1),

15  20 USC §1094(a)(17), 18 U.S.C. §245(b)(1)(E), 20 U.S.C. §1087e (h), 20 USC

16  §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(J), pursuant to 20

17  USC §1094(a)(7), 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7), 20

18  USC §1094(a)(21), 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7), RFUMS

19  expressly admits to "100% of graduates will be placed in a CPME approved residency

20  program" and "Graduates will be capable of servicing their student loan debt":

312

# PRAD 601 A+B
# Principles of Podiatric
# Radiology

*Dr. William M. Scholl College of Podiatric Medicine*
*Department of Radiology*

## 2009 Academic Year

**Casimir Strugielski, BS, RT(R), ASRT**
*Course Coordinator and Instructor of Record*
*Office: Clinics Rosalind Franklin University of Medicine and Science*
*Phone: 847-578-8435*
*Hours: Monday-Friday by appointment (contact Ms. Ulrich x8432)*

**Lecturers:**
**Dr. Robert Baron**
**Dr. Daniel Evans**
**Dr. Adam Fleischer**

1 _____

**PROGRAMMATIC OUTCOMES:**

1. Graduates will pass the National Board of Podiatric Medical Examiners Part I and Part II examinations with an overall pass rate above the national average.
2. 100% of graduates will be placed in a CPME approved residency program.
3. The College will graduate students that have the necessary knowledge, skills. and attitudes for entry into residency training.
4. The College will graduate at least 90% of matriculated students.
5. Graduates will be capable of servicing their student loan debt.
6. The College will graduate students that understand the need for and have participated in community service.

2 _____

3      633.   Dr. Abazari is not "capable of servicing [his] loan debt," in the clear and

4 present fact Dr. Abazari actually has $272, 834.09 in federal loan debt, $110,174.09

5 above and beyond the anticipated loan debt, as represented $162,000 by RFUMS upon

6 entering:



7

8      634.   Dr. Abazari is not "capable of servicing [his] loan debt," in the clear and

9 present fact Dr. Abazari actually has $272, 834.09 in combined subsidized and

1   unsubsidized federal loan debt, $97,502.09 above and beyond the anticipated combined

2   subsidized and unsubsidized "[l]oan limits" of $175,332 represented by RFUMS upon

3   entering:



4

5       635.    DOE was placed on notice that Dr. Abazari's right or privilege was being

6   interfered with, denied, curtailed, or infringed upon, in a benefit, within a program or

7   activity receiving federal financial assistance, that expressly represents "placement

8   services for program completers," and CIP Code 51.2101, and has 20 U.S.C. §1087e (h)

9   Federal loan discharge rights, on November 12, 2015, by and through Borrower Defense:

10



1

2    636.    In the clear and present fact Dr. Abazari was not provided federal benefits

3  of "placement services for program completers" and CIP code 51.2101 for Dr. Abazari,

4  and thereupon lacked the express "capab[ility] of servicing [his] loan debt," the DOE

5  withheld Dr. Abazari's right to discharge pursuant to 20 U.S.C. §1087e(h) at bay, while it

6  knowingly and willingly continued to distribute, dispense, transact, and generate Stafford

7  Subsidized and Unsubsidized, and Direct Subsidized and Unsubsidized in federal loan

8  debt:

9  Principal Balance 152,289.08 July 5, 2015; Outstanding Interest $16,160.71
10  Principal Balance 225,139.23 June 2, 2016; Unpaid Interest $2,540.93
11  Principal Balance 225,139.23 June 2, 2017; Unpaid Interest $17,524.86
12  Principal Balance 225,139.23 June 2, 2018; Unpaid Interest $32,554.30
13  Principal Balance 225,139.23 June 2, 2019; Unpaid Interest $47,694.86.
14
15    636.    Navient withheld Dr. Abazari's right to discharge pursuant to 20 U.S.C.

16  §1087e(h) at bay, while it knowingly and willingly continued to distribute, dispense,

1    transact, and generate Stafford Subsidized and Unsubsidized, and Direct Subsidized and

2    Unsubsidized in federal loan debt:

3    Principal Balance 152,289.08 July 5, 2015; Outstanding Interest $16,160.71
4    Principal Balance 225,139.23 June 2, 2016; Unpaid Interest $2,540.93
5    Principal Balance 225,139.23 June 2, 2017; Unpaid Interest $17,524.86
6    Principal Balance 225,139.23 June 2, 2018; Unpaid Interest $32,554.30
7    Principal Balance 225,139.23 June 2, 2019; Unpaid Interest $47,694.86.
8
9         637.    In the clear and present fact Dr. Abazari was not provided federal benefits

10   of "placement services for program completers" and CIP code 51.2101 for Dr. Abazari,

11   and thereupon lacked the express "capab[ility] of servicing [his] loan debt," and despite

12   being placed on of a "Borrower Defense to Repayment," and statutory mandates persuant

13   to 20 USC §1094(a)(1), 20 USC §1094(a)(17), 18 U.S.C. §245(b)(1)(E), 20 U.S.C.

14   §1087e (h), 20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7), 20 USC

15   §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(G)(i)-(ii), pursuant

16   to 20 USC §1094(a)(7), 20 USC §1094(a)(21), 20 USC §1092(a)(1)(R), pursuant to 20

17   USC §1094(a)(7), Navient and DOE knowingly and willingly continued to distribute,

18   dispense, transact, and generate Stafford Subsidized and Unsubsidized, and Direct

19   Subsidized and Unsubsidized in federal loan debt:

20   Principal Balance 152,289.08 July 5, 2015; Outstanding Interest $16,160.71
21   Principal Balance 225,139.23 June 2, 2016; Unpaid Interest $2,540.93
22   Principal Balance 225,139.23 June 2, 2017; Unpaid Interest $17,524.86
23   Principal Balance 225,139.23 June 2, 2018; Unpaid Interest $32,554.30
24   Principal Balance 225,139.23 June 2, 2019; Unpaid Interest $47,694.86.
25
26        638.    As noted by Screen Shots from 29, 2010 email wire communication from

27   SCPM 2013 President, to secure the full tuition amount, RFUMS systematically and with

28   calculated effect, employs the assistance of Student Officers to lull students such as Dr.

29   Abazari into a false sense of security by directing them to ""TRUST THE SYSTEM,

1    TRUST YOUR FACULTY" (capital letters emphasizing screaming) and "[faculty] will

2    not mislead us" ("mislead" emphasizing use of legal term of art "mislead") and "when

3    someone tells you to do something, simply do it":

From: **Class Officers SCPM 2013** <co-scpm2013@rfums.org>
Date: Wed, Sep 29, 2010 at 9:37 AM
Subject: CLASS UPDATES
To: SCPM2013 <SCPM2013@rosalindfranklin.edu>

Hello Everyone:

Attached to this email is a group of updates regarding the issues that were brought up in the last class meeting. Please read it and if you have any questions, please feel free to contact me.

Have a wonderful day!

Brian

1 File    16.7kB

        Letter to the Class.docx
        17kB

4

> a.  There was one comment that was mentioned in each of the meetings that I
>     attended over the past week; TRUST THE SYSTEM, TRUST YOUR
>     FACULTY. This school has been around longer than any of us have been
>     alive and is now the leading school for podiatric medical education.  They
>     must be doing something right, and we need to trust that they are doing
>     everything in order to make us the best physicians that we can be. There
>     will be challenges and they will make us work for it, but they will not
>     mislead us or deny us of any information that is essential to our education.
>     Therefore, when someone tells you to do something, simply do it,
5 >     knowing that in some way, it will make you a better doctor.

6        639.    In the clear and present fact of misrepresentations of "100% of graduates

7    will be placed in a CPME approved residency program" and "Graduates will be capable

8    of servicing their student loan debt", despite statutory mandates 20 USC §1094(a)(1), 20

9    USC §1094(a)(17), 18 U.S.C. §245(b)(1)(E), 20 U.S.C. §1087e (h), 20 USC

10   §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(J), pursuant to 20

11   USC §1094(a)(7), 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7), 20

12   USC §1094(a)(21), 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7), Naivent

13   and DOE continue to sponsor RFUMS's misrepresentations of the "quality of the

14   podiatric medical education program and the continued commitment of the institution to

1    support the educational program" by continuing to distribute, dispense, transact, and

2    generate Stafford Subsidized and Unsubsidized, and Direct Subsidized and Unsubsidized

3    loans for RFUMS's podiatry program.

4        640.    In the clear and present fact of false representations of "100% of graduates

5    will be placed in a CPME approved residency program" and "Graduates will be capable

6    of servicing their student loan debt," despite statutory mandates 20 USC §1094(a)(1), 20

7    USC §1094(a)(17), 18 U.S.C. §245(b)(1)(E), 20 U.S.C. §1087e (h), 20 USC

8    §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7), 20 USC §1092(a)(1)(J), pursuant to 20

9    USC §1094(a)(7), 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7), 20

10   USC §1094(a)(21), 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7), Naivent

11   and DOE continue to sponsor RFUMS's false representations of the "quality of the

12   podiatric medical education program and the continued commitment of the institution to

13   support the educational program" by continuing withhold Dr. Abazari's right to discharge

14   pursuant to 20 U.S.C. §1087e(h), while further victimizing Dr. Abazaari's in increasing

15   his debt:

16   Principal Balance 152,289.08 July 5, 2015; Outstanding Interest $16,160.71
17   Principal Balance 225,139.23 June 2, 2016; Unpaid Interest $2,540.93
18   Principal Balance 225,139.23 June 2, 2017; Unpaid Interest $17,524.86
19   Principal Balance 225,139.23 June 2, 2018; Unpaid Interest $32,554.30
20   Principal Balance 225,139.23 June 2, 2019; Unpaid Interest $47,694.86.
21
22       641.    In every possible manner herein alleged, the Navient, DOE, RFUMS, and

23   State of Illinois sought to capitalize on Dr. Abazari's weakened physical condition, in

24   calculated and coordinated attacks, to increase physiological harm, and to overpower Dr.

25   Abazari objections, using force and inducing emotional submission—through a

26   psychological state of learned helplessness:



1

2    (Left—On or around February 7, 2016)   (Right—On or around November 14-2010)

3         642.    Navient and DOE are financially benefiting from the scheme to defraud in

4    extracting additional payments—in the amount of $110,174.09—above and beyond the

5    average debt of $162,660 represented to "Incoming Podiatry Students" for RFUMS

6    Podiatry program.

7         643.    Dr. Abazari's right or privilege to a benefit, within a program or activity

8    receiving federal financial assistance, by the "placement services for program

9    completers," CIP Code 51.2101, and 20 U.S.C. §1087e (h) Federal loan discharge, has

10   been expressly secured to him under mandate of 20 USC §1094(a)(17).

11        644.    Dr. Abazari's right or privilege to a benefit, within a program or activity

12   receiving federal financial assistance, by the "placement services for program

13   completers," CIP Code 51.2101, and 20 U.S.C. §1087e (h) Federal loan discharge, has

14   been expressly secured to him under mandate of 20 USC §1092(a)(1)(R), pursuant to 20

15   USC §1094(a)(7).

16        645.    Dr. Abazari's right or privilege to a benefit, within a program or activity

17   receiving federal financial assistance, by the "placement services for program

18   completers," CIP Code 51.2101, and 20 U.S.C. §1087e (h) Federal loan discharge, has

19   been expressly secured to him under mandate of 20 USC §1094(a)(21).

1    646.    Dr. Abazari's right or privilege to a benefit, within a program or activity

2    receiving federal financial assistance, by the "placement services for program

3    completers," CIP Code 51.2101, 20 U.S.C. §1087e (h) Federal loan discharge, has been

4    expressly secured to him under mandate of 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20

5    USC §1094(a)(7).

6    647.    Dr. Abazari's right or privilege to a benefit, within a program or activity

7    receiving federal financial assistance, by the "placement services for program

8    completers," CIP Code 51.2101, and 20 U.S.C. §1087e (h) Federal loan discharge, has

9    been expressly secured to him under mandate of 20 USC §1092(a)(1)(J), pursuant to 20

10   USC §1094(a)(7).

11   648.    Dr. Abazari's right or privilege to a benefit, within a program or activity

12   receiving federal financial assistance, by the "placement services for program

13   completers," CIP Code 51.2101, and 20 U.S.C. §1087e (h) Federal loan discharge, has

14   been expressly secured to him under mandate of 20 USC §1092(a)(1)(M), pursuant to 20

15   USC §1094(a)(7).

16   649.    Dr. Abazari's right or privilege to a benefit, within a program or activity

17   receiving federal financial assistance, by the "placement services for program

18   completers," CIP Code 51.2101, and 20 U.S.C. §1087e (h) Federal loan discharge, has

19   been expressly secured to him under mandate of 20 USC §1094(a)(1).

20   650.    Dr. Abazari's right or privilege to a benefit, within a program or activity

21   receiving federal financial assistance, by the "placement services for program

22   completers," CIP Code 51.2101, and 20 U.S.C. §1087e(h) Federal loan discharge, has

23   been expressly secured to him under mandate of 20 USC §1094(a)(17).

1      651.    Dr. Abazari's right or privilege to a benefit, within a program or activity

2    receiving federal financial assistance, by the "placement services for program

3    completers," CIP Code 51.2101, and 20 U.S.C. §1087e (h) Federal loan discharge, has

4    been expressly secured to him by 18 U.S.C. §245(b)(1)(E).

5      652.    Dr. Abazari's right or privilege to a benefit, within a program or activity

6    receiving federal financial assistance, by the "placement services for program

7    completers," CIP Code 51.2101, and 20 U.S.C. §1087e (h) Federal loan discharge, has

8    been expressly secured to him by 20 U.S.C. §1087e (h).

9      653.    Navient and DOE specifically chose the information "placement services

10    for program completers" and CIP code 51.2101, in order to influence Dr. Abazari and

11    other students selection of federal loans over other loan providers.

12      654.    Navient and DOE intended and willingly defrauded Dr. Abazari and other

13    students by providing material support, in the form of federal loans, and non-

14    enforcement, to RFUMS and other colleges in support of a rigging of a shortage of

15    residencies, where RFUMS acted to increase enrollments:

| Time of Enrollment | Total RFUMS Fall Podiatry Enrollment |
| --- | --- |
| 2001 | 248 |
| 2002 | 264 |
| 2003 | 263 |
| 2004 | 298 |
| 2005 | 305 |
| 2006 | 328 |
| 2007 | 356 |

| 2008 | 359 |
|------|-----|
| 2009 | 380 |
| 2010 | 387 |

1

2    655.    Navient and DOE intended and willingly defrauded Dr. Abazari and other

3    students by providing material support, in the form of federal loans, and non-

4    enforcement, RFUMS and other colleges rigging a shortage of residencies, where

5    Podiatry enrollments markedly increased from 475, from pre-APMA Workforce study

6    levels, to 687, for post-Workforce study levels:

| Podiatry Year | Total Enrollment Number At Colleges |
|---------------|-------------------------------------|
| 2000-2001 | 475 |
| 2006-2007 | 647 |
| 2007-2008 | 666 |
| 2008-2009 | 626 |
| 2009-2010 | 687 |

7

8    656.    Navient and DOE intended and willingly defrauded Dr. Abazari and other

9    students by providing material support, in the form of federal loans, and non-

10   enforcement, RFUMS and other colleges rigging a shortage of residencies, where at the

11   time of Dr. Abazari's enrollment in 2009, the podiatry colleges enrolled 687 students into

12   the podiatry colleges when only 496 residency positions were available or in existence.

13   657.    Navient and DOE intended and willingly defrauded Dr. Abazari and other

14   students by providing material support, in the form of federal loans, and non-

1   enforcement, to RFUMS and other colleges in support of a rigging of a shortage of

2   residencies, where the APMA admits "[t]here are currently enough slots for students who

3   are graduating from schools of podiatric medicine" in response to a question regarding

4   the "availability of podiatric residencies" being an "issue":

**Q. Is the availability of podiatric residencies an issue?**
**A.** There are currently enough slots for students who are graduating from schools of podiatric medicine. There are fewer applicants to the colleges, which may be reflected later on. Surpluses in residency positions may exist in the future as fewer students attend the colleges. (See "In the News," p. 14).

5

6                                    **CAUSE OF ACTION 16:**

7              **(RICO 18 U.S.C. §1962(c)—APMA, RFUMS, Navient and DOE)**

8        658.    Dr. Abazari repeats and realleges each and every allegation contained in

9   paragraphs 1 through 657 as if fully set forth herein.

10       659.    Navient, APMA, RFUMS and DOE formed a union, association or group

11  for the purpose of a joint venture to induce Dr. Abazari into federal loan obligations,

12  without the specified means or "capab[ility] of servicing [his] loan debt" through the

13  benefits and service of "placement services for program completers," and CIP code

14  51.2101.

15       660.    Navient, Department of Education, RFUMS, APMA, operated the

16  enterprise as a joint venture—to induce Dr. Abazari into federal loan obligations, without

17  the specified means or "capab[ility] of servicing [his] loan debt"—like a manager

18  managed liability Corporation (LLC).

19       661.    Navient, Department of Education, RFUMS, APMA ongoing and

20  continuing relationship, where the DOE and Navient would bill Dr. Abazari for extra

21  payments—now $110,174.09—above and beyond the average debt of $162,660

22  represented to "Incoming Podiatry Students" for RFUMS Podiatry program, in exchange

1    for RFUMS being granted the ability to skirt 20 U.S.C. §1085a(2)(A)-(B), and continue

2    to profit from the William D. Ford loan program participation, through misrepresenting

3    or concealing its actual cohort default rates, in reporting students as "deferment" and

4    "forbearance" pursuant to 20 USC §1087bb (g)(E)(IV).

5        662.    Navient, Department of Education, RFUMS, APMA ongoing and

6    continuing relationship, where the APMA in conjunction with RFUMS, created and

7    adopted a new residency system which required "fewer case number requirements in the

8    new model as opposed to the old model," to generate more residency positions so that

9    they could hide the number of graduates left unplaced by the rigged shortage of

10    residencies:

---

**Beth Jarrett**                                    September 24, 2012  8:35 AM
To: d-scpm2014@rosalindfranklin.edu,   d-scpm2013@rosalindfranklin.edu        Details
PMS vs PMSR programs

Hello all-
I am still getting some questions about the residency types.  Remember that the "PMS" model (PMS24 or PMS36) is the old model.  The PMSR (PMSR or PMSR/RRA) is the new model.  All programs will have converted to the new model by July 1, 2013.  Most PMS24 programs will convert to PMSR programs.  Nearly all PMS36 programs will convert to the PMSR/RRA (or PMSR with CERT) programs.  The only difference between a PMS 36 and a PMSR with RRA is a change in the medicine and biomechanics requirements, as well as slightly **fewer** case number requirements in the new model as opposed to the old model.
Let me know if you have any questions.
Dr. Jarrett

---

12        663.    Navient, Department of Education, RFUMS, and APMA divided the work

13    in the operation of the enterprise —inducing Dr. Abazari into federal loan obligations,

14    without the specified means or "capab[ility] of servicing [his] loan debt"—where the

15    Department of Education serves as manager and Federal compliance officer, and

16    Financer; APMA serves as manager of department of marketing and recruiting; Navient

17    is manager of billing and accounting; and RFUMS is manager of facility operations.

18        664.    The APMA knowingly and willingly participated in inducing Dr. Abazari

19    into federal loan obligations, without the specified means or "capab[ility] of servicing

20    [his] loan debt, in admitting there needed to be "enough slots for students who are

1    graduating from schools of podiatric medicine" for the "availability of podiatric

2    residencies" to not be an "issue":

> **Q. Is the availability of podiatric residencies an issue?**
> **A.** There are currently enough slots for students who are graduating from schools of podiatric medicine. There are fewer applicants to the colleges, which may be reflected later on. Surpluses in residency positions may exist in the future as fewer students attend the colleges. (See "In the News," p. 14).

3

4        665.    The APMA knowingly and willingly participated as marketing manager in

5    an enterprise—inducing Dr. Abazari into federal loan obligations, without the specified

6    means or "capab[ility] of servicing [his] loan debt—where as a result of a "expected

7    shortfall" in "number of available residency positions," the APMA, in conjunction with

8    RFUMS, directs contacts to Dr. Abazari and other students via surveys, to collect student

9    information regarding the "expected shortfall" in "number of available residency

10   positions" for the Residency Balance Committee:



11

12       666.    The APMA knowingly and willingly participated as marketing manager in

13   an enterprise—inducing Dr. Abazari into federal loan obligations, without the specified

14   means or "capab[ility] of servicing [his] loan debt—where as a result of a "expected

15   shortfall" in "number of available residency positions," the APMA, in conjunction with

1   RFUMS, directs contacts to Dr. Abazari and other students via surveys, to collect student

2   information regarding the "expected shortfall" in "number of available residency

3   positions" for the Residency Balance Committee:

**APMSA**                                     September 30, 2010  12:03 PM
To:  SCPM2012,   SCPM2013
* Reminder: Residency Survey Responses Needed *                    Inbox - Google

SCPM 2012 and 2013:

For those that have not done so already, please complete the following survey today. We would like at least 20 more responses before sending our results to the Residency Balance Committee.

http://www.surveymonkey.com/s/9l86VSYZ

APMSA

4

5       667.    The APMA knowingly and willingly directs "recruitment projects" for

6   RFUMS, as part of its marketing and recruitment in inducing students like Dr. Abazari

7   into federal loan obligations, without the specified means or "capab[ility] of servicing

8   [his] loan debt" through the benefits and service of "placement services for program

9   completers," and CIP code 51.2101:

**APMA Assist** ✎                            September 1, 2010  5:09 PM
Your alma mater, E

Attn:  APMA Members

Yesterday, you may have received the email below. **This is a legitimate APMA email.** Unfortunately, the email address that you were asked to respond to was not operating yesterday. I am providing you with a link to respond at apma_assist@apma.org. You can use this to provide us with the information requested.

*Yesterday's email:*
*In updating our APMA records, we have noted that your undergraduate college information is not listed.  We are sending this email to rectify that.  Would you be so kind as to respond to this email and give us your college name and the year of your graduation?  We hope to be able to work with this information for marketing and student recruitment projects now and in the future. If you have specific questions regarding this request, please feel free to send an email to this same address provided.   Thank you for your time.*
*APMA*

Once again, if you care to respond (and we hope you will) you can click on this link (apma_assist@apma.org) to do so. We apologize for any confusion. Thank you.

Betsy M. Herman
Marketing & Career Development Specialist
American Podiatric Medical Association
9312 Old Georgetown Rd.
Bethesda, MD  20814
800-275-2762 ext. 280
301-581-9280 (direct)
301-530-2752 (fax)
bherman@apma.org



10

1    668.    The United States Department of Education funds the operation to induce

2    Dr. Abazari into federal loan obligations, without the specified means or "capab[ility] of

3    servicing [his] loan debt" through the benefits and service of "placement services for

4    program completers," and CIP code 51.2101, despite federal statutory mandates persuant

5    to 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C.

6    §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC

7    §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant

8    to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20

9    USC §1094(a)(7):



10

11    669.    The United States Department of Education funds the operation to induce

12    Dr. Abazari into federal loan obligations, without the specified means or "capab[ility] of

13    servicing [his] loan debt" through the benefits and service of "placement services for

14    program completers," and CIP code 51.2101, despite federal statutory mandates persuant

15    to 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C.

16    §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC

17    §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant

18    to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20

19    USC §1094(a)(7):



1

2    670.    On November 12, 2015, DOE was placed on Notice of Dr. Abazari's

3    rights under 20 U.S.C. §1087e (h) to a Federal loan discharge for fraud, persuant to 20

4    USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h);

5    20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J),

6    pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC

7    §1094(a)(7); 20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC

8    §1094(a)(7):



**ARMIN ABAZARI--APPLICATION BORROWER"S DEFENSE TO REPAYMENT LOAN DISCHARGE** arminabazari@ya.../Sent

Armin Abazari <arminabazari@yahoo.com> Nov 12, 2015 at 3:12 PM
To: FSAOperations@ed.gov <FSAOperations@ed.gov>

To Whom It May Concern,

If I could please, I would to submit my Application For Borrower's Defense To Repayment Loan Discharge to the United States Department of Education.

Order of Attached Files:
1) Application For Borrower's Defense To Repayment Loan Discharge
2) State Document: NOTICE OF INTENT under Oath
3) State Document, IBHE Board Action: December 9, 2003 on Podiatry Degree Authorization
4) Federal Document: IPEDS checked box "Placement Services for Program Completers" 2008-2014
5) Scholl College 2008-2009 Viewbook: False and Deceptive
6) Letter to Alan Tinkleman from COTH/APMA/CPME
7) Dean of Rosalind Franklin's Podiatry College, Nancy Parsley Lobbying on Behalf of American Podiatric Medical Association
8) APMA IRS 990 FORM: This Political Organization Gave Money To Defendants, a 501(c) organization, as a "College Advisor Program Grant"
9) A picture is worth a thousand words
10) First Amended Complaint
11) Motion For Reconsideration (Petition for Rehearing)
12) Date of Enrollment
13) Degree

Sincerely,
Armin Abazari

14 Files 17.9MB

APPLICATION FOR BORROWER'S DEFENSE TO REPAYMENT LOAN DISCHARGE.docx
108kB
NOI-Podiatry.pdf
64kB
Scholl New Operating And/or Degree-Granting Authority For Independent Institutions IBHE.pdf
275kB
2008-09.pdf
217kB
2009-10.pdf
207kB
2010-11.pdf
224kB
2011-12.pdf
207kB
2012-13.pdf

228kB
2013-14.pdf
229kB
2008-09 SCPM Viewbook copy.pdf
2MB
APMACPMECOTH memo.pdf
52kB
Nancy Lobbying.pdf
411kB
AbazariBrief (dragged).pdf
13MB
Degree.pdf
189kB

671. The DOE knowingly and willingly serves as manager and Federal compliance officer of the enterprise to induce Dr. Abazari into federal loan obligations, without the specified means or "capab[ility] of servicing [his] loan debt"—where the DOE, with knowledge and intent, directs the withholding of Dr. Abazari's right of discharge, pursuant to 20 U.S.C. §1087e (h), to further Dr. Abazari's debt burden by sitting on Dr. Abazari's rights 1 year and 7 months after being informed in November of 2015:

From: "U.S. Department of Education" <noreply@studentloans.gov>
Date: June 19, 2017 at 11:05:35 AM PDT
To: armnabazari@yahoo.com
Subject: Borrower Defense Claim Status Update



Dear Armin,

This email is being sent to update you on the current status of your claim for borrower defense to repayment. We are continuing to evaluate your claim but have not yet made a decision if the claim will be approved. Once a decision has been made on your claim, you will be notified of the decision. If it is determined that additional information is needed, we will reach out to request that information from you then.

If you have chosen to have your loans placed on forbearance or stop collection activity while your claim is reviewed, we will continue to notify your servicer to extend that status until your claim has been decided.

Sincerely,

U.S. Department of Education

Connect with us:

  

1

2          672.    As admitted to by Navient, through its communication with Dr. Abazari

3   on August 7, 2014, Sallie Mae formed Naivent and Navient became "[Dr. Abazari's]

4   servicer of federal loans":

5



673.     Navient knowingly and willingly serves as manager of billing and

accounting, in an enterprise to induce Dr. Abazari into federal loan obligations, without

the specified means or "capab[ility] of servicing [his] loan debt," by directing the billing

of interest on Dr. Abazari's account, in disregard of Dr. Abazari's right to federal loan

discharge pursuant to 20 U.S.C. §1087e (h) for fraud, despite statutory mandates pursuant

to 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C.

§1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC

§1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant

to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20

USC §1094(a)(7):

Principal Balance 152,289.08 July 5, 2015; Outstanding Interest $16,160.71
Principal Balance 225,139.23 June 2, 2016; Unpaid Interest $2,540.93
Principal Balance 225,139.23 June 2, 2017; Unpaid Interest $17,524.86
Principal Balance 225,139.23 June 2, 2018; Unpaid Interest $32,554.30
Principal Balance 225,139.23 June 2, 2019; Unpaid Interest $47,694.86.

674. DOE and Navient knowingly and willingly serve as managers in an enterprise to induce Dr. Abazari into federal loan obligations, without the specified means or "capab[ility] of servicing [his] loan debt," by forcing Dr. Abazari to actually acquire $272, 834.09 in combined subsidized and unsubsidized federal loan debt, $97,502.09 above and beyond the expected combined subsidized and unsubsidized "[l]oan limits" of $175,332 represented by RFUMS upon entering.

675. Navient serves as manager of billing and accounting, in an enterprise to induce Dr. Abazari into federal loan obligations, without the specified means or "capab[ility] of servicing [his] loan debt," by directing the concealment of records in order to further obstruct Dr. Abazari's investigation into and of his right to federal loan discharge pursuant to 20 U.S.C. §1087e (h):

NAVIENT | Department of Education Loan Servicing

My Inbox | My Account

**Correspondence Summary**

**Documents We Sent to You** provides access to correspondence that contains non-public, personal information (NPI data) which was recently referenced in an email to you. These documents will be available online at this website for 12 months.

**Documents You Sent to Us** provides access to any correspondence you or your cosigner may have provided to Navient that does not contain non-public, personal information (NPI data) such as a Driver's License or Social Security card for someone other than yourself. You can view these documents online at this website for 7 days.

If you would like to retain a permanent copy of a document, it should be saved to your computer. The documents listed below are in Adobe Reader format. If you wish to view the correspondence and have not already installed Adobe Reader, please install it first. A free copy of Adobe Reader is available for download at http://get.adobe.com/reader/otherversions/. If you have any questions or if you would like us to mail you copies of any of these documents, please contact us at (800) 722-1300.

Documents We Sent to You | Documents You Sent to Us

| DATE | MAIL SUBJECT | CORRESPONDENCE | | | |
|---|---|---|---|---|---|
| 22-Feb-2019 | New document ready to view! | The Customer Advocate Unit received your inquiry | PDF | IMG | |
| 06-Feb-2019 | New document ready to view! | The Customer Advocate Unit received your inquiry | PDF | IMG | |
| 22-Jan-2019 | Change in Loan Terms | Change in Terms Letter | PDF | IMG | |
| 20-Jan-2019 | What you need to know about your repayment | Payment Schedule Options | PDF | IMG | HTML |
| 20-Jan-2019 | Change in Loan Terms | Change in Terms Letter | PDF | IMG | |
| 10-Jan-2019 | New document ready to view! | We?re researching your request | PDF | IMG | |
| 10-Jan-2019 | New document ready to view! | The Customer Advocate Unit received your inquiry | PDF | IMG | |
| 03-Dec-2018 | Your Interest Statement is Available | Your semi-annual interest statement | PDF | IMG | HTML |
| 02-Jun-2018 | Quarterly Interest Statement Available | Your quarterly forbearance statement is available | PDF | IMG | HTML |
| 03-Apr-2018 | Quarterly Interest Statement Available | Quarterly Interest Statement | PDF | IMG | HTML |
| 20-Mar-2018 | New document ready to view! | Administrative Forbearance Processed | PDF | IMG | |
| 03-Mar-2018 | Quarterly Interest Statement Available | Your quarterly forbearance statement is available | PDF | IMG | HTML |

Logout

About SSL Certificates

About Us | Terms of Use | Protecting Your Privacy | Social Media Policies | Contact Us
Accessibility | About Our Ads | Site Map

© 20192019 Navient Solutions, LLC. All rights reserved. Navient and the Navient logo are the service marks of Navient Solutions, LLC.
Navient Corporation and its subsidiaries, including Navient Solutions, LLC, are not sponsored by or agencies of the United States of America.

676.   RFUMS knowingly and willingly serve as manager of facility operations, in an enterprise to induce Dr. Abazari into federal loan obligations, without the specified means or "capab[ility] of servicing [his] loan debt," by directing false representations to students in regards to a "100% of graduates will be placed in a CPME approved residency program," to reflect that RFUMS will provide "placement services for program completers," and CIP Code 51.2101 for federal funds, through 16 of its faculty members, on at least 6 separate occasions, by express statements, and where RFUMS additionally funded residencies in course of ordinary business.

677.   RFUMS knowingly and willingly serve as manager of facility operations, in an enterprise to induce Dr. Abazari into federal loan obligations, without the specified means or "capab[ility] of servicing [his] loan debt," by directing Class Officers to lull students such as Dr. Abazari into a false sense of security by directing them to ""TRUST THE SYSTEM, TRUST YOUR FACULTY" (capital letters emphasizing screaming) and "[faculty] will not mislead us" ("mislead" emphasizing use of legal term of art "mislead") and "when someone tells you to do something, simply do it."

678.   Navient, APMA, RFUMS and DOE knowingly and willingly formed a union, association or group for the purpose of a joint venture—to induce Dr. Abazari into federal loan obligations, without the specified means or "capab[ility] of servicing [his] loan debt" through the benefits and service of "placement services for program completers," and CIP code 51.2101—where the DOE and Navient would bill Dr. Abazari for extra payments—now $110,174.09—above and beyond the average debt of $162,660 represented to "Incoming Podiatry Students" for RFUMS Podiatry program, in exchange for RFUMS being granted the ability to skirt 20 U.S.C. §1085a(2)(A)-(B), and continue

1    to profit from the William D. Ford loan program participation, through misrepresenting

2    or concealing its actual cohort default rates, in reporting students as "deferment" and

3    "forbearance" pursuant to 20 USC §1087bb (g)(E)(IV).

4          679.    Navient, APMA, RFUMS and DOE knowingly and willingly formed a

5    union, association or group for the purpose of a joint venture—to induce Dr. Abazari into

6    federal loan obligations, without the specified means or "capab[ility] of servicing [his]

7    loan debt" through the benefits and service of "placement services for program

8    completers," and CIP code 51.2101—where, the APMA in conjunction with RFUMS,

9    directed the creation of a new residency system which required "fewer case number

10    requirements in the new model as opposed to the old model," to generate more residency

11    positions so that they could hide the number of graduates left unplaced by the rigged

12    shortage of residencies:

> **Beth Jarrett**                                         September 24, 2012  8:35 AM
> To: d-scpm2014@rosalindfranklin.edu   d-scpm2013@rosalindfranklin.edu            Details
> PMS vs PMSR programs
>
> Hello all-
> I am still getting some questions about the residency types.  Remember that the "PMS" model (PMS24 or PMS36) is the old model.  The PMSR (PMSR or PMSR/RRA) is the new model.  All programs will have converted to the new model by July 1, 2013.  Most PMS24 programs will convert to PMSR programs.  Nearly all PMS36 programs will convert to the PMSR/RRA (or PMSR with CERT) programs.  The only difference between a PMS 36 and a PMSR with RRA is a change in the medicine and biomechanics requirements, as well as slightly **fewer** **case number requirements in the new model as opposed to the old model.**
> Let me know if you have any questions.
> Dr. Jarrett

13

14          680.    The enterprise has entered into operations on or around 2008 and remains

15    currently in operation.

16          681.    The enterprise has and continues to charge and acquire benefits from Dr.

17    Abazari's loan interests that are accruing and compounding.

18          682.    Without any one link in the enterprise —inducing Dr. Abazari into federal

19    loan obligations, without the specified means or "capab[ility] of servicing [his] loan

20    debt"—performed by Navient, Department of Education, RFUMS, APMA, in divided

1   operations, the enterprise could not function to direct and reach its purpose, beyond the

2   State of Illinois's borders, across five States, into the State of California, to victimize Dr.

3   Abazari, as a resident of the State of California:

**Armin Abazari-Monday Interview Barry University**                                      arminabazari@ya.../Sent

Armin Abazari <arminabazari@yahoo.com>                                                   Nov 29, 2008 at 9:34 PM
To: Rodriguez, Amy E <AERodriguez@mail.barry.edu>

Good Evening  Mr. Marc Weiner,

I appreciate the interview invite that Barry has offered me. I recieved acceptances from both Chicago and Philidelphia Pod schools but I was still very intersted in visiting Barry's School of Podiatric Medicine and Surgery. Unfortunately however I cannot afford to travel outside of California at this time due to financial bindings. I am certain that Barry provides a quality education for its students and I am sadened that I cannot make the trip. I appreciate your time and consideration.

Best,
Armin Abazari

4

5          683.   Without any one link in the enterprise —inducing Dr. Abazari into federal

6   loan obligations, without the specified means or "capab[ility] of servicing [his] loan

7   debt"—performed by Navient, Department of Education, RFUMS, APMA, in divided

8   operations, the enterprise could not function to direct and reach its purpose, beyond the

9   State of Illinois's borders, across five States, into the State of California, to victimize Dr.

10  Abazari, as a resident of the State of California:

From: "Meinhardt, Mandy" <Mandy.Meinhardt@rosalindfranklin.edu>
To: Armin Abazari <arminabazari@yahoo.com>
Cc: "Young, Kimberly J." <Kimberly.Young@rosalindfranklin.edu>
Sent: Monday, November 24, 2008 8:16 AM
Subject: RE: Armin Abazari-Scholl Inquiry ( Hello Mandy)

Hi Armin,

I am happy to extend your due date for Scholl College.  If your interview at CSPM is on 12-5, why don't you let us know by the end of the following week - December 12, 2008.  If you have any questions between now and then, please let me know.

As for your scholarship, all decisions made by the Scholarship Committee are final.  We believe Scholl College offers the best educational experience available to podiatry students and provide outstanding services to help you manage your debt after graduation.  Last year, Scholl College had a 0% default rate for student loans and our 10-year average is 0.3%.  This is well below the national average of approximately 4-5% for medical school students.  Scholl offers the largest scholarship program of all podiatric medical colleges.  Last year we awarded in excess of $600,000 for students in their 2nd,3rd and 4th years of study with us.

Please let me know if you have any other questions!
Best,
Mandy

11

12         684.   Navient, RFUMS, DOE, and APMA conducted the union, group,

13  association and joint venture, for the common purpose of inducing Dr. Abazari into

14  federal loan obligations, without the specified means or "capab[ility] of servicing [his]

15  loan debt," through a series and arrangement of criminal acts defined by statute, in

1   violations of or attempted violations of 18 U.S.C. §1341, performed by Navient and

2   DOE, and in violations of or attempted violations of 18 U.S.C. §1341 performed by

3   APMA and RFUMS, despite statutory mandates: 20 USC §1094(a)(1); 20 USC

4   §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M),

5   pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC

6   §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC

7   §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

8   685.   Navient and DOE are financially benefiting from the unlawful agreement

9   in extracting additional payments—in the amount of $110,174.09—above and beyond the

10   average debt of $162,660 represented to "Incoming Podiatry Students" for RFUMS

11   Podiatry program.

12   686.   RFUMS is financially benefiting from the unlawful agreement in being

13   allowed to evade accountability for victimizing countless students, while still remaining

14   eligible to participate in the William D. Ford Direct loan program pursuant to 1085(a)(1),

15   to victimize even more students.

16   687.   The violations of or attempted violations of 18 U.S.C. §1341, performed

17   by Navient and DOE, and in violations of or attempted violations of 18 U.S.C. §1341

18   performed by APMA and RFUMS, all have resulted in Dr. Abazari accruing federal loan

19   debt—now $110,174.09—above and beyond the average debt of $162,660 represented to

20   "Incoming Podiatry Students" for RFUMS Podiatry program.

21   688.   The violations of or attempted violations of 18 U.S.C. §1341, performed

22   by Navient and DOE, and in violations of or attempted violations of 18 U.S.C. §1341

23   performed by APMA and RFUMS, all have resulted in physiological harm, and to

1 overpower Dr. Abazari objections, using force and inducing emotional submission—

2 through a psychological state of learned helplessness:



3

4  689. The enterprise's activities directly affect interstate commerce by draining

5 the National Treasury of funds and contributing to a ballooning national student loan

6 debt.

7  690. As noted by a screen shot of the report by the Board of Governors of the

8 Federal Reserve System, student loans debt has a direct effect on the national economy:



9

10       **CAUSE OF ACTION 17:**

11     **(CONSPIRACY TO VIOLATE 18 U.S.C. §1962(c):**

12 **18 U.S.C. §1962(d) and 42 U.S.C. §1985(3)—APMA, RFUMS, NAVIENT and DOE)**

13  691. Dr. Abazari repeats and realleges each and every allegation contained in

14 paragraphs 1 through 690 as if fully set forth herein.

1  692.   Navient, RFUMS, DOE, and APMA formed an agreement, on or around

2  2008, to conduct a union, group, association or joint venture, for the common purpose of

3  inducing Dr. Abazari into federal loan obligations, without the specified means or

4  "capab[ility] of servicing [his] loan debt," through a series and arrangement of criminal

5  acts defined by statute, in violations of or attempted violations of 18 U.S.C. §1341,

6  performed by Navient and DOE, and in violations of or attempted violations of 18 U.S.C.

7  §1341 performed by APMA and RFUMS.

8  693.   Navient, Department of Education, RFUMS, and APMA divided the work

9  in the operation of the enterprise —inducing Dr. Abazari into federal loan obligations,

10  without the specified means or "capab[ility] of servicing [his] loan debt"—where the

11  Department of Education serves as manager and Federal compliance officer, and

12  Financer; APMA serves as manager of department of marketing and recruiting; Navient

13  is manager of billing and accounting; and RFUMS is manager of facility operations.

14  694.   The APMA joined and intended to participate in the agreement to form an

15  enterprise with a common purpose—inducing Dr. Abazari into federal loan obligations,

16  without the specified means or "capab[ility] of servicing [his] loan debt—where as a

17  result of a "expected shortfall" in "number of available residency positions," the APMA,

18  in conjunction with RFUMS, directs contacts to Dr. Abazari and other students via

19  surveys, to collect student information regarding the "expected shortfall" in "number of

20  available residency positions" for the Residency Balance Committee.

21  695.   The APMA joined and intended to participate in the agreement to form an

22  enterprise with a common purpose—inducing Dr. Abazari into federal loan obligations,

23  without the specified means or "capab[ility] of servicing [his] loan debt—where it

1    knowingly and willingly directs "recruitment projects" for RFUMS, as part of its

2    marketing and recruitment.

3       696.    As noted by this only screenshot, the APMA participated in the agreement

4    to form an enterprise with a common purpose—inducing Dr. Abazari into federal loan

5    obligations, without the specified means or "capab[ility] of servicing [his] loan debt—

6    where the APMA created "a blog by APMA Executive Director and CEO Glenn B.

7    Gastwirth, DPM" to specifically lull students into false sense of security in making the

8    statement:



9

10      697.    As noted by this only screenshot, the APMA participated in the agreement

11   to form an enterprise with a common purpose—inducing Dr. Abazari into federal loan

12   obligations, without the specified means or "capab[ility] of servicing [his] loan debt—

13   where the APMA created "a blog by APMA Executive Director and CEO Glenn B.

14   Gastwirth, DPM" to specifically lull students into false sense of security in making the

15   statement, where on December 20, 2010, the APMA knowingly and willingly makes the

16   statement:

17          "APMA recognizes the potential severity of this situation in the
18          short term, although we are uncertain that there would be residency

1       position shortages for 2013 graduates....As I'm sure you are aware,
2       the council has frozen class sizes at all the accredited colleges of
3       podiatric medicine."
4
5       698.    The APMA participated in the agreement to form an enterprise with a

6  common purpose—inducing Dr. Abazari into federal loan obligations, without the

7  specified means or "capab[ility] of servicing [his] loan debt—where it deletes the "blog

8  by APMA Executive Director and CEO Glenn B. Gastwirth, DPM" where it specifically

9  lulled students into false sense of security:

10     "A classmate of mine commented on a blog of the
11     APMA's Dr. Gastwirth in 2011 – voicing concerns
12     about a residency shortage and the disconnect
13     between the colleges, the APMA and the CPME
14     concerning the large numbers of students
15     matriculating. My colleague expressed fears of
16     there being as many as 100 too few residency spots
17     by 2013 (incredibly prophetic as time would show),
18     to which Dr. Gastwirth replied that it was unknown
19     whether there would be any shortage of residency
20     spots for the class of 2013. This thread has since
21     been removed from the APMA website."
22
23     699.    The DOE joined and intended to participate in the agreement to form an

24  enterprise with a common purpose—inducing Dr. Abazari into federal loan obligations,

25  without the specified means or "capab[ility] of servicing [his] loan debt—where, despite

26  being placed on Notice of Dr. Abazari's rights under 20 U.S.C. §1087e (h) to a Federal

27  loan discharge for fraud on November 12, 2015, the DOE directs the withholding of Dr.

28  Abazari's right of discharge, pursuant to 20 U.S.C. §1087e (h), to further Dr. Abazari's

29  debt burden by sitting on Dr. Abazari's rights 1 year and 7 months after a borrow defense

30  application was filed:



**ARMIN ABAZARI--APPLICATION BORROWER"S DEFENSE TO REPAYMENT LOAN DI SCHARGE** arminabazari@ya.../Sent

Armin Abazari <arminabazari@yahoo.com> Nov 12, 2015 at 3:12 PM
To: FSAOperations@ed.gov <FSAOperations@ed.gov>

To Whom It May Concern,

If I could please, I would to submit my Application For Borrower's Defense To Repayment Loan Discharge to the United States Department of Education.

Order of Attached Files:
1) Application For Borrower's Defense To Repayment Loan Discharge
2) State Document: NOTICE OF INTENT under Oath
3) State Document: IBHE Board Action December 9, 2003 on Podiatry Degree Authorization
4) Federal Document: IPEDS checked box "Placement Services for Program Completers" 2008-2014
5) Scholl College 2008-2009 Viewbook: False and Deceptive
6) Letter to Alan Tinkleman from COTH/APMA/CPME
7) Dean of Rosalind Franklin's Podiatry College, Nancy Parsley Lobbying on Behalf of American Podiatric Medical Association
8) APMA IRS 990 FORM: This Political Organization Gave Money To Defendants, a 501(c) organization, as a "College Advisor Program Grant"
9) A picture is worth a thousand words
10) First Amended Complaint
11) Motion For Reconsideration (Petition for Rehearing)
12) Date of Enrollment
13) Degree

Sincerely,
Armin Abazari

**14 Files** 17.9MB

APPLICATION FOR BORROWER'S DEFENSE TO REPAYMENT LOAN DISCHARGE.docx
108kB

NOI-Podiatry.pdf
64kB

Scholl Now Operating And/or Degree-Granting Authority For Independant Institutions IBHE.pdf
375kB

2008-09.pdf
217kB

2009-10.pdf
207kB

2010-11.pdf
224kB

2011-12.pdf
227kB

2012-13.pdf

228kB

2013-14.pdf
229kB

2008-09 SCPM Viewbook copy.pdf
2MB

APMACPMECOTH memo.pdf
52kB

Nancy Lobbying.pdf
411kB

AbazariBrief (dragged).pdf
13MB

Degree.pdf
168kB

700. The DOE joined and intended to participated in the agreement to form an enterprise with a common purpose—inducing Dr. Abazari into federal loan obligations, without the specified means or "capab[ility] of servicing [his] loan debt—where the DOE withholds Dr. Abazari's right of discharge, pursuant to 20 U.S.C. §1087e (h), to further Dr. Abazari's debt burden by sitting, despite statutotory mandates: 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC

1    §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20

2    USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20

3    USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

4         701.    Navient joined and intended to participate in the agreement to form an

5    enterprise with a common purpose—inducing Dr. Abazari into federal loan obligations,

6    without the specified means or "capab[ility] of servicing [his] loan debt—where it

7    directed the billing of interest on Dr. Abazari's account, in disregard of Dr. Abazari's

8    right to federal loan discharge pursuant to 20 U.S.C. §1087e (h) for fraud, despite

9    statutory mandates pursuant to 20 USC §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C.

10   §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC

11   §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC

12   §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC §1094(a)(21); 20 USC

13   §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7):

14        Principal Balance 152,289.08 July 5, 2015; Outstanding Interest $16,160.71
15        Principal Balance 225,139.23 June 2, 2016; Unpaid Interest $2,540.93
16        Principal Balance 225,139.23 June 2, 2017; Unpaid Interest $17,524.86
17        Principal Balance 225,139.23 June 2, 2018; Unpaid Interest $32,554.30
18        Principal Balance 225,139.23 June 2, 2019; Unpaid Interest $47,694.86.
19

20        702.    RFUMS joined and intended to participate in the agreement to form an

21   enterprise with a common purpose—inducing Dr. Abazari into federal loan obligations,

22   without the specified means or "capab[ility] of servicing [his] loan debt—where it

23   directed false representations to students in regards to a "100% of graduates will be

24   placed in a CPME approved residency program," to reflect that RFUMS will provide

25   "placement services for program completers," and CIP Code 51.2101 for federal funds,

26   through 16 of its faculty members, on at least 6 separate occasions, by express

1    statements, and where RFUMS additionally funded residencies in course of ordinary

2    business.

3        703.    RFUMS joined and intended to participate in the agreement to form an

4    enterprise with a common purpose—inducing Dr. Abazari into federal loan obligations,

5    without the specified means or "capab[ility] of servicing [his] loan debt—where RFUMS

6    and other colleges rigged the shortage of residencies, at the time of Dr. Abazari's

7    enrollment in 2009, the podiatry colleges enrolled 687 students into the podiatry colleges

8    when only 496 residency positions were available or in existence.

9        704.    RFUMS, APMA, DOE, and Navient actions actually resulted in at least

10   seventeen of cheated students not being placed into residency from RFUMS:

From: Nancy Bryant <nancy.bryant@rosalindfranklin.edu>
Date: March 26, 2013 at 8:15:19 AM PDT
To: "Abazari, Armin" <armin.abazari@my.rfuma.org>, "Campbell, Thomas3"
<thomas.campbell@my.rfuma.org>, "Castelein, Bryant" <bryant.castelein@my.rfuma.org>,
"Ciotola, Nicholas" <Nicholas.Ciotola@my.rfuma.org>, "Delara, Marc3"
<marc.delara@my.rfuma.org>, "Deutsch, Gloria3" <gloria.deutsch@my.rfuma.org>, "Domaas,
Mark3" <mark.domaas@my.rfuma.org>, "Hall, Samuel3" <samuel.hall@my.rfuma.org>, "Hare,
Daniel" <daniel.hare@my.rfuma.org>, "Husnain, Syed3" <syed3.husnain@my.rfuma.org>,
"Kapila, Tania" <tania.kapila@my.rfuma.org>, "Kramer, Nathan3"
<nathan.kramer@my.rfuma.org>, "Landers, Sabrina" <sabrina.landers@my.rfuma.org>,
"Luczkowski, Ernest Paul" <ernest.luczkowski@my.rfuma.org>, "Musser, Bret3"
<bret.musser@my.rfuma.org>, "Richason, Jessica3" <jessica.richason@my.rfuma.org>,
"Schroeder, Christopher" <c.schroeder@my.rfuma.org>, "Valabov, Jacob"
<jacob.valabov@my.rfuma.org>
Subject: Updated Preceptorship Information

Hello,

Just a fyi...

AAPPM updated their preceptorship info (attached).

Also, Weil Foot & Ankle is accepting preceptor applications. If you are interested contact Harriet
Kass hkass@weil4feet.com or 847.627.4962.

11

12

13       705.    RFUMS, APMA, DOE, and Navient actions actually resulted in at least

14   ten of those cheated students who lost money from non-placement into residency to then

15   seek legal council against Defendant RFUMS:

On Fri, Jun 28, 2013 at 12:11 PM, Usman Akram <utakram@gmail.com> wrote:
Hello again,

I communicated with Dr. Kansky recently.  He was meeting with two lawyers this week regarding the residency issue.

He also reported that ten people had contacted him from Scholl.

I urge the rest of you to contact him as well.

His email is: larry.kansky@gmail.com

Thanks and have a great weekend,

Usman Akram, DPM

Confidentiality Notice: DO NOT read, copy or disseminate this communication unless you are the intended addressee. This e-mail communication (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C Sections 2510-2521, contains confidential and/or privileged information intended only for the addressee. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender immediately via email to that you have received the communication in error. Please, delete it and any and all copies.

1

2      706.    RFUMS, DOE, Navient, and APMA knowingly and willingly sought to

3   carry out enterprise objective to induce Dr. Abazari into federal loan obligations, without

4   the specified means or "capab[ility] of servicing [his] loan debt," where the DOE and

5   Navient would bill Dr. Abazari for extra payments—now $110,174.09—above and

6   beyond the average debt of $162,660 represented to "Incoming Podiatry Students" for

7   RFUMS Podiatry program, in exchange for RFUMS being granted the ability to skirt 20

8   U.S.C. §1085a(2)(A)-(B), and continue to profit from the William D. Ford loan program

9   participation, through misrepresenting or concealing its actual cohort default rates, in

10  reporting students as "deferment" and "forbearance" pursuant to 20 USC §1087bb

11  (g)(E)(IV).

12     707.    Dr. Abazari's accruing $272, 834.09 in combined subsidized and

13  unsubsidized federal loan debt, $97,502.09 above and beyond the expected combined

14  subsidized and unsubsidized "[l]oan limits" of $175,332 represented by RFUMS upon

15  entering, constituted a red flag to RFUMS, DOE, Navient, and APMA as to the

16  legitimacy of the education transaction:

344



1

2    708.    The DOE, Navient, RFUMS, and APMA believed it was highly likely that

3    they were in an agreement to carry out an enterprise with the objective to induce Dr.

4    Abazari into federal loan obligations, without the specified means or "capab[ility] of

5    servicing [his] loan debt," and took steps to avoid the truth, where Dr. Abazari's accrued

6    $272, 834.09 in combined subsidized and unsubsidized federal loan debt, $97,502.09

7    above and beyond the expected combined subsidized and unsubsidized "[l]oan limits" of

8    $175,332 represented by RFUMS for entering students.

9    709.    Dr. Abazari's having accrued $272, 834.09 in combined subsidized and

10    unsubsidized federal loan debt, an amount $110,174.09 above and beyond the average

11    debt of $162,660 represented to "Incoming Podiatry Students" for RFUMS Podiatry,

12    constitutes a red flag to RFUMS, DOE, APMA, and Navient regarding the legitimacy of

13    the education transaction:



14

345

710.    The DOE, Navient, RFUMS, and APMA believed it was highly likely that they were in an agreement to carry out an enterprise with the objective to induce Dr. Abazari into federal loan obligations, without the specified means or "capab[ility] of servicing [his] loan debt," and took steps to avoid the truth, where Dr. Abazari's accrued $272, 834.09 in combined subsidized and unsubsidized federal loan debt, an amount $110,174.09 above and beyond the average debt of $162,660 represented to "Incoming Podiatry Students" for RFUMS Podiatry students.

711.    The actual result of 86 students nationally being left without residency constituted a red flag to the DOE, Navient, RFUMS, and APMA regarding the legitimacy of the education transaction:



712.    The DOE, Navient, RFUMS, and APMA believed it was highly likely that they were in an agreement to carry out an enterprise with the objective to induce Dr. Abazari into federal loan obligations, without the specified means or "capab[ility] of servicing [his] loan debt," and took steps to avoid the truth, where 86 students nationally being left without residency.

713.    The creation of a new residency system which required "fewer case number requirements in the new model as opposed to the old model," to generate more residency positions, in an effort to hide the number of graduates left unplaced by the

1    rigged shortage of residencies, constituted a red flag to RFUMS, DOE, Navient, and

2    APMA regarding the legitimacy of the transaction:

> **Beth Jarrett**                                                    September 24, 2012  8:35 AM
> To:  d-scpm2014@rosalindfranklin.edu,   d-scpm2013@rosalindfranklin.edu        Details
> **PMS vs PMSR programs**
>
> Hello all-
> I am still getting some questions about the residency types.  Remember that the "PMS" model (PMS24 or PMS36) is the old model.  The PMSR (PMSR or PMSR/RRA) is the new model.  All programs will have converted to the new model by July 1, 2013.  Most PMS24 programs will convert to PMSR programs.  Nearly all PMS36 programs will convert to the PMSR/RRA (or PMSR with CERT) programs.  The only difference between a PMS 36 and a PMSR with RRA is a change in the medicine and biomechanics requirements, as well as slightly **fewer** case number requirements in the new model as opposed to the old model.
> Let me know if you have any questions.
> Dr. Jarrett

3

4         714.    The DOE, Navient, RFUMS, and APMA believed it was highly likely that

5    they were in an agreement to carry out an enterprise with the objective to induce Dr.

6    Abazari into federal loan obligations, without the specified means or "capab[ility] of

7    servicing [his] loan debt," and took steps to avoid the truth, where a new residency

8    system was created which required "fewer case number requirements in the new model as

9    opposed to the old model," to generate more residency positions, in an effort to hide the

10   number of graduates left unplaced by the rigged shortage of residencies.

11        715.    Navients concealment of records in order to further obstruct Dr. Abazari's

12   investigation into and of his right to federal loan discharge pursuant to 20 U.S.C. §1087e

13   (h), constituted a red flag to RFUMS, DOE, Navient, and APMA regarding the

14   legitimacy of the transaction:



NAVIENT | Department of Education Loan Servicing

My Inbox | My Account

**Correspondence Summary**

**Documents We Sent to You** provides access to correspondence that contains non-public, personal information (NPI data) which was recently referenced in an email to you. These documents will be available online at this website for 12 months.

**Documents You Sent to Us** provides access to any correspondence you or your cosigner may have provided to Navient that does not contain non-public, personal information (NPI data) such as a Driver's License or Social Security card for someone other than yourself. You can view these documents online at this website for 7 days.

If you would like to retain a permanent copy of a document, it should be saved to your computer. The documents listed below are in Adobe Reader format. If you wish to view the correspondence and have not already installed Adobe Reader, please install it first. A free copy of Adobe Reader is available for download at http://get.adobe.com/reader/otherversions/. If you have any questions or if you would like us to mail you copies of any of these documents, please contact us at (800) 722-1300.

Documents We Sent to You | Documents You Sent to Us

| DATE | MAIL SUBJECT | CORRESPONDENCE | | | |
|---|---|---|---|---|---|
| 22-Feb-2019 | New document ready to view! | The Customer Advocate Unit received your inquiry | PDF | IMG | |
| 06-Feb-2019 | New document ready to view! | The Customer Advocate Unit received your inquiry | PDF | IMG | |
| 22-Jan-2019 | Change in Loan Terms | Change in Terms Letter | PDF | IMG | |
| 20-Jan-2019 | What you need to know about your repayment | Payment Schedule Options | PDF | IMG | HTML |
| 20-Jan-2019 | Change in Loan Terms | Change in Terms Letter | PDF | IMG | |
| 10-Jan-2019 | New document ready to view! | We?re researching your request | PDF | IMG | |
| 10-Jan-2019 | New document ready to view! | The Customer Advocate Unit received your inquiry | PDF | IMG | |
| 03-Dec-2018 | Your Interest Statement is Available | Your semi-annual interest statement | PDF | IMG | HTML |
| 02-Jun-2018 | Quarterly Interest Statement Available | Your quarterly forbearance statement is available | PDF | IMG | HTML |
| 03-Apr-2018 | Quarterly Interest Statement Available | Quarterly Interest Statement | PDF | IMG | HTML |
| 20-Mar-2018 | New document ready to view! | Administrative Forbearance Processed | PDF | IMG | |
| 03-Mar-2018 | Quarterly Interest Statement Available | Your quarterly forbearance statement is available | PDF | IMG | HTML |

Logout

About SSL Certificates

About Us | Terms of Use | Protecting Your Privacy | Social Media Policies | Contact Us
Accessibility | About Our Ads | Site Map

© 20132019 Navient Solutions, LLC. All rights reserved. Navient and the Navient logo are the service marks of Navient Solutions, LLC. Navient Corporation and its subsidiaries, including Navient Solutions, LLC, are not sponsored by or agencies of the United States of America.

716. The DOE, Navient, RFUMS, and APMA believed it was highly likely that they were in an agreement to carry out an enterprise with the objective to induce Dr. Abazari into federal loan obligations, without the specified means or "capab[ility] of servicing [his] loan debt," and took steps to avoid the truth, where Navient conceals records in order to further obstruct Dr. Abazari's investigation into and of his right to federal loan discharge pursuant to 20 U.S.C. §1087e (h).

717. The DOE, Navient, RFUMS, and APMA believed it was highly likely that they were in an agreement to carry out an enterprise with the objective to induce Dr. Abazari into federal loan obligations, without the specified means or "capab[ility] of servicing [his] loan debt," and took steps to avoid the truth, where Dr. Abazari right to federal loan discharge pursuant to 20 U.S.C. §1087e (h) was not granted, despite

1    represented federal benefits "placement services for program completers" and CIP code

2    51.2101 for Dr. Abazari where not provided in violation of 20 USC §1094(a)(1); 20 USC

3    §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M),

4    pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC

5    §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7); 20 USC

6    §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7).

7         718.    Dr. Abazari right to federal loan discharge pursuant to 20 U.S.C. §1087e

8    (h) was not granted, despite represented federal benefits "placement services for program

9    completers" and CIP code 51.2101 that were not provided in violation of 20 USC

10   §1094(a)(1); 20 USC §1094(a)(17); 18 U.S.C. §245(b)(1)(E); 20 U.S.C. §1087e (h); 20

11   USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant

12   to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i)-(ii), pursuant to 20 USC §1094(a)(7);

13   20 USC §1094(a)(21); 20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7),

14   constituted a red flag to RFUMS, DOE, Navient, and APMA regarding the legitimacy of

15   the education transaction.

16        719.    RFUMS directing Class Officers to lull students such as Dr. Abazari into a

17   false sense of security by directing them to ""TRUST THE SYSTEM, TRUST YOUR

18   FACULTY" (capital letters emphasizing screaming) and "[faculty] will not mislead us"

19   ("mislead" emphasizing use of legal term of art "mislead") and "when someone tells you

20   to do something, simply do it," constituted a red flag to RFUMS, DOE, Navient, and

21   APMA regarding the legitimacy of the transaction.

22

349

720.    The DOE, Navient, RFUMS, and APMA believed it was highly likely that they were in an agreement to carry out an enterprise with the objective to induce Dr. Abazari into federal loan obligations, without the specified means or "capab[ility] of servicing [his] loan debt," and took steps to avoid the truth, where RFUMS directing Class Officers to lull students such as Dr. Abazari into a false sense of security by directing them to ""TRUST THE SYSTEM, TRUST YOUR FACULTY" (capital letters emphasizing screaming) and "[faculty] will not mislead us" ("mislead" emphasizing use of legal term of art "mislead") and "when someone tells you to do something, simply do it."

721.    APMA, Navient, DOE, RFUMS acted in furtherance of and during an unlawful agreement to conduct a union, group, association or joint venture, for the common purpose of inducing Dr. Abazari into federal loan obligations, without the specified means or "capab[ility] of servicing [his] loan debt," through a series and arrangement of criminal acts, where Navient and DOE each violated or attempted to violate 18 U.S.C. §1341, and APMA and RFUMS each violated or attempted to violated 18 U.S.C. §1341.

722.    The violations of or attempted violations of 18 U.S.C. §1341, performed by Navient and DOE, and in violations of or attempted violations of 18 U.S.C. §1341 performed by APMA and RFUMS, all have resulted in physiological harm, and to overpower Dr. Abazari objections, using force and inducing emotional submission— through a psychological state of learned helplessness:



1

2     (Left—On or around February 7, 2016)  (Right—On or around November 14-2010)

3        723.    The enterprise's activities directly affect interstate commerce by draining

4   the National Treasury of funds and contributing to a ballooning national student loan

5   debt.

6        724.    As noted by a screen shot of the report by the Board of Governors of the

7   Federal Reserve System, student loans debt has a direct effect on the national economy:



8

9                    **CAUSE OF ACTION 18:**

10                  **(DECLARATORY ACTION)**

11        725.    Dr. Abazari repeats and realleges each and every allegation contained in

12   paragraphs 1 through 724 as if fully set forth herein.

13        726.    There currently exists between Dr. Abazari and Defendants an actual,

14   present, and justiciable controversy based on Defendants failure to grant: Federal Loan

15   Discharge; "placement services for program completers"; CIP Code 51.2101; "100% of

16   graduates will be placed in a CPME approved residency program"; "Graduates will be

1    capable of servicing their student loan debt"; anticipated caped student loan debt at or

2    around $162,660 as represented by RFUMS upon time of entrance; anticipated combined

3    subsidized and unsubsidized "[l]oan limits" of $175,332 as represented by RFUMS as

4    represented by RFUMS upon time of entrance. Whereby Dr. Abazari filed a Borrower

5    Discharge on November 12, 2015 and the DOE has sat on Dr. Abazari's rights so that he

6    incurs more interest, Dr. Abazari requests that the court cancel of all of Dr. Abazari's

7    federal loans pursuant to 20 U.S.C. §1087e(h), pursuant to 5 U.S.C. §706(1); and further

8    declare RFUMS in violation of:

9         a)  20 USC §1094(a)(1)

10        b)  20 USC §1094(a)(17)

11        c)  20 U.S.C. §1087e (h)

12        d)  20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7)

13        e)  20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7)

14        f)  20 USC §1092(a)(1)(G)(i), pursuant to 20 USC §1094(a)(7)

15        g)  20 USC §1092(a)(1)(G)(i) (ii), pursuant to 20 USC §1094(a)(7)

16        h)  20 USC §1094(a)(21)

17        i)  20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7);

18        727.    An order declaring the State of Illinois and Department of Education are in

19    violation of their fiduciary obligations to uphold the benefits and protections of Title IV

20    of the Higher Education Act of 1965, as amended, 20 U.S.C. §§1070 et seq. ("Title IV,

21    HEA programs"), for persons so specified as Dr. Abazari, under the auspices and

22    protections of said federal laws of the United States;

352

1    728.   Dr. Abazari additionally requests that the court order the United States

2    Department of Education to pay the full amount of loan debt, as damages—last observed

3    at $272,834.09.

4    729.   Dr. Abazari further requests that the court order specified performance of

5    federal benefits and services Defendants to provide "placement services for program

6    completers"; CIP Code 51.2101; "100% of graduates will be placed in a CPME approved

7    residency program" to Dr. Abazari, and to all podiatry students nationally, hereafter—to

8    protect all podiatry students and ensure repayment of taxpayer funded loans.

9    730.   Dr. Abazari further requests that the court order, pursuant to Family

10   Education Rights & Privacy Act ("FERPA"), 20 U.S.C. 1232(g), regulations 34 CFR Part

11   99, commanding RFUMS to surrender all of Dr. Abazari's records, including, but not

12   limited to, RFUMS withholding of documentation that was distributed in private

13   meetings with Christine Rasinski, on or around 2010-11, and to which remained in the

14   exclusive possession of RFUMS, and to which therein sought to procure from Dr.

15   Abazari, through deception, a signed agreement to release RFUMS of liability for non

16   placement of Dr. Abazari into residency upon graduation;

17   731.   Dr. Abazari further requests that the court order, pursuant statutory

18   authority of Family Education Rights & Privacy Act ("FERPA"), 20 U.S.C. 1232(g),

19   regulations 34 CFR Part 99, to use the aid of the court to probe into the matter of

20   concealment and destruction of evidence performed by RFUMS to evade and obstruct

21   justice.

22   //

23   //

## **PRAYER FOR RELIEF**

1

2   **WHEREFORE**, Dr. Armin Abazari respectfully requests that the Court enter

3   judgment as follows:

4       732.   Enter judgment for Dr. Abazari on the counts named herein;

5       733.   A judgment to cancel, or a judgment commanding the cancelling of, or an

6   order of discharge of, all of Dr. Abazari's federal loans pursuant to 20 U.S.C. §1087e(h)

7   Federal Loan Discharge, pursuant to 5 U.S.C. §706(1);

8       734.   An award against the United States Department of Education in the full

9   federal loan amount of Dr. Abazari—last observed at $272,834.09—pursuant to 20

10  U.S.C. §1087e(h) Federal Loan Discharge;

11      735.   An order adjudging that RFUMS violated:

12          a.   20 U.S.C. §1094(a)(1);

13          b.   20 USC §1094(a)(17);

14          c.   20 U.S.C. §1087e (h);

15          d.   20 USC §1092(a)(1)(M), pursuant to 20 USC §1094(a)(7);

16          e.   20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7);

17          f.   20 USC §1092(a)(1)(G)(i), pursuant to 20 USC §1094(a)(7);

18          g.   20 USC §1092(a)(1)(G)(i) (ii), pursuant to 20 USC §1094(a)(7);

19          h.   20 USC §1094(a)(21);

20          i.   20 USC §1092(a)(1)(R), pursuant to 20 USC §1094(a)(7);

21      736.   An order adjudging that State of Illinois and Department of Education are

22  in violation of their fiduciary obligations to uphold benefits and protections of Title IV of

23  the Higher Education Act of 1965, as amended, 20 U.S.C. §§1070 et seq. ("Title IV,

1   HEA programs"), for persons under the auspices and protections of said federal laws of

2   the United States;

3       737.    A judgment ordering the paid for specified performance of the federal

4   benefit, entitlement, and service "placement services for program completers"; CIP Code

5   51.2101—"a program that prepares individuals for the independent professional practice

6   of podiatric medicine, involving the prevention, diagnosis, and treatment of diseases,

7   disorders, and injuries to the foot and lower extremities"; and "100% of graduates will be

8   placed in a CPME approved residency program"; pursuant to 20 USC §1094(a)(1); 20

9   USC §1094(a)(17); 20 U.S.C. §1087e (h); 20 USC §1092(a)(1)(M), pursuant to 20 USC

10  §1094(a)(7); 20 USC §1092(a)(1)(J), pursuant to 20 USC §1094(a)(7); 20 USC

11  §1092(a)(1)(G)(i), pursuant to 20 USC §1094(a)(7); 20 USC §1092(a)(1)(G)(i) (ii),

12  pursuant to 20 USC §1094(a)(7) ; 20 USC §1094(a)(21); 20 USC §1092(a)(1)(R),

13  pursuant to 20 USC §1094(a)(7);

14      738.    An order adjudging that RFUMS violated the Family Education Rights &

15  Privacy Act ("FERPA"), 20 U.S.C. 1232(g), regulations 34 CFR Part 99, and ordering of

16  production of all Dr. Abazari records, including, but not limited to, those withheld upon

17  formal written request and specified herein;

18      739.    An order of damages of $7,740,000 against the State of Illinois;

19      740.    An order of damages of $7,740,000 against RFUMS;

20      741.    An order of damages of $7,740,000 against Navient;

21      742.    An order of damages of $7,740,000 against APMA;

22      743.    An order of damages of $7,740,000 against DOE;

1    744.    An order awarding full tuition and associated expenses of $272,834.09

2    against each Defendant;

3    745.    Award special damages against each defendant, suffered by Dr. Abazari,

4    due to lost earnings as a Practitioner of Podiatric Medicine at $150,000 Per Annum, for

5    the duration of 6 years, to a total amount of $900,000;

6    746.    Award special damages against each defendant, suffered by Dr. Abazari,

7    due to lost of earnings as Resident at $55,000 Per Annum, for the duration of 3 years, to a

8    total amount of $165,000;

9    747.    Award attorney fees and full cost of this suit, against each defendant,

10    including but not limited to, full cost of law school attendance—a total amount of

11    $175,000—the pursuing by which, furthered the pursuit of actions herein alleged,

12    pursuant to 18 U.S.C. §1964(c);

13    748.    A judgment trebling damages pursuant to 18 U.S.C. §1964(c) against each

14    defendant;

15    749.    Punitive damages of $100 million dollars against each defendant;

16    750.    Pain, suffering and loss of amenity of $100 million dollars against each

17    defendant;

18    751.    Damages pursuant and associated with 42 U.S.C. §1985(3) and 42 U.S.C.

19    §1983 against each defendant;

20    752.    Restitutionary relief against each Defendant and in favor of Dr. Abazari,

21    including disgorgement of wrongfully obtained profits and any other appropriate relief;

22    753.    Any other remedies to which Dr. Abazari is entitled.

23

356

1    Dated: July 27, 2019              Respectfully Submitted,

2                                      /s/ Armin Abazari

3                                      Dr. Armin Abazari
                                       DPM | JD Candidate
4                                      arminabazari@yahoo.com
                                       14 National Place
5                                      Irvine California 92602
                                       Telephone: (714) 930 5251
6                                      Pro Se

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1          **DEMAND FOR JURY TRIAL**

2     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, and Local Rule 38-1, Dr.

3     Abazari respectfully demands a jury trial of all issues triable to a jury in this action.

4

5     Dated: July 27, 2019              Respectfully Submitted,

6                                      /s/ Armin Abazari

7                                      Dr. Armin Abazari
                                       DPM | JD Candidate
8                                      arminabazari@yahoo.com
                                       14 National Place
9                                      Irvine California 92602
                                       Telephone: (714) 930 5251
10                                     Pro Se